DAVID D. LAWRENCE, State Bar 123039
PAUL B. BEACH, State Bar No. 166265
JIN S. CHOI, State Bar No. 180270
JUSTIN W. CLARK, State Bar No. 235477
jclark@lbaclaw.com
LAWRENCE BEACH ALLEN & CHOI, PC
100 West Broadway, Suite 1200
Glendale, California 91210-1219
Telephone No. (818) 545-1925
Facsimile No. (818) 545-1937

Attorneys for Defendants
County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Leroy D. Baca, Captain John H. Clark, Timothy Cornell, Dennis Burns, Gerald K. Cooper, Daniel Cruz, and Stacy L. Lee

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY AMADOR, et al., | Case No. CV 10-01649 SVW (JEMx) |
| Plaintiffs, | Honorable Stephen V. Wilson |
| vs. | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AS TO THE CERTIFIED F.R.C.P. RULE 23(b)(2) INJUNCTIVE RELIEF CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| SHERIFF LEROY D. BACA, etc., et al., | |
| Defendants. | [Local Rule 56-1] |
| | *[Separate Statement of Undisputed Facts and Conclusions of Law, Declarations and Exhibits, and [Proposed] Judgment filed concurrently herewith]* |
| | Date: July 11, 2016<br>Time: 1:30 p.m.<br>Crtm: 6 |

TO THE HONORABLE COURT, ALL PARTIES, AND TO THEIR COUNSEL OF RECORD:

///

1

Pursuant to the Court's instructions at the May 9, 2016 hearing and this Court's May 13, 2016 Order (Docket No. 299), Defendants County of Los Angeles, Los Angeles County Sheriff's Department, Sheriff Leroy D. Baca, Captain John H. Clark, Timothy Cornell, Dennis Burns, Gerald K. Cooper, Daniel Cruz, and Stacy L. Lee (collectively, "Defendants") hereby move for summary judgment as to the F.R.C.P., Rule 23(b)(2) class certified for purposes of injunctive relief. The grounds for this motion are:

- There have been substantial and material changes to the practices and procedures at CRDF regarding visual body cavity searches that address all the conditions Plaintiffs seek to enjoin, rendering Plaintiffs' claim for injunctive relief moot;
- Plaintiffs do not contend that the current practices and procedures regarding body scanner and visual body cavity searches at CRDF are unconstitutional; and
- The LASD has no plans to discontinue the use of the body scanners at CRDF and/or revert to the strip search procedures that had been in place prior to the installation of the body scanners, nor is there any evidence, admissible or otherwise, to support such an assertion.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declarations and Exhibits, the Separate Statement of Uncontroverted Material Facts and Conclusions of Law, and the

///
///
///
///
///
///
///

1 Court's file in this matter, and upon such other and further matters as may
2 properly come before the Court.

3

4 Dated: May 31, 2016          LAWRENCE BEACH ALLEN & CHOI, PC

5

6          By     /s/ Justin W. Clark
7               Paul B. Beach
              Justin W. Clark
8               Attorneys for Defendants
9               County of Los Angeles,
              Los Angeles County Sheriff's
10               Department, Sheriff Leroy D. Baca,
11               Captain John H. Clark, Timothy
              Cornell, Dennis Burns, Gerald K.
12               Cooper, Daniel Cruz, and Stacy L. Lee

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1
I.    INTRODUCTION ............................................................................. 1
II.   STATEMENT OF FACTS ................................................................ 2
      A.   Installation and Use of Body Scanners ................................... 3
      B.   Current Strip Search Procedures ............................................. 6
      C.   Plaintiffs Admit That the Current Search Practices at
           CRDF are Constitutional .......................................................... 6
III.  STANDARD OF REVIEW ............................................................... 7
IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
      BECAUSE PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF IS
      MOOT ................................................................................................ 8
      A.   Substantial Changes to the Practices and Procedures Regarding
           Searches of Inmates at CRDF Have Addressed the Conditions
           Plaintiffs Seek to Enjoin ........................................................... 9
      B.   The LASD Has No Plans To "Revert" To Previous Strip
           Search Practices And Procedures Nor Is There Any Evidence
           Suggesting Anything Of The Kind ......................................... 10
V.    CONCLUSION ............................................................................... 12

# TABLE OF AUTHORITIES

**Cases**          **Pages**

*Amador v. Baca*,
  299 F.R.D. 618 (C.D. Cal. 2014) .................................................................... 2

*Anderson v. Liberty Lobby*,
  477 U.S. 242 (1986) ........................................................................................ 7

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  2012 WL 3762440 (S.D. Cal. 2012) ............................................................. 11

*Barnes v. Healy*,
  980 F.2d 572 (9th Cir. 1992) .......................................................................... 8

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ........................................................................................ 7

*County of Los Angeles v. Davis*,
  440 U.S. 625 (1979) ........................................................................................ 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services,*
  528 U.S. 167 (2000) ........................................................................................ 8

*Hendrickson v. eBay Inc.,*
  165 F. Supp. 2d 1082 (C. D. Cal. 2001) ......................................................... 8

*Kohler v. In-N-Out Burgers,*
  2013 WL 5315443 (C.D. Cal. 2013) ............................................................ 11

*Lewis v. Cont'l Bank Corp.*,
  494 U.S. 472 (1990) ........................................................................................ 8

*Pickern v. Best Western*,
  194 F. Supp. 2d 1128 (E. D. Cal. 2002) ......................................................... 9

*Rodriguez v. City of Fresno*,
  819 F. Supp.2d 937 (E.D. Cal. 2011) ............................................................. 7

*Roy v. State,*
  2006 WL 120328 (D. Ariz. 2006) ................................................................ 11

*United States v. Geophysical Corp. of Alaska*,
   732 F.2d 693 (9th Cir. 1984) .............................................................................. 8

*Wolfson v. Brammer*,
   616 F.3d 1045 (9th Cir. 2010) ............................................................................ 8

**<u>Statutes</u>**

Article III of the United States Constitution ........................................................... 8

**<u>Rules</u>**

Fed.R.Civ.P. 23(b)(2) ........................................................................................ 1, 2

Fed.R.Civ.P. 56(b), (c), (d) ..................................................................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION.**

On May 9, 2016, this Court held a hearing regarding Defendants' Motion for Summary Judgment regarding the constitutionality of the Los Angeles County Sheriff's Department ("LASD")'s policies and procedures governing visual body inspections of female inmates at the Century Regional Detention Facility ("CRDF"). During that hearing, the Court noted significant changes to both the physical location used for searches and the implementation of revised policies governing the searches themselves. Based on those changes, the Court instructed Defendants to file a Motion for Summary Adjudication as to Plaintiff's injunctive relief claims, which is this Motion.

As set forth in greater detail below, the undisputed material facts establish that Plaintiffs' claim for injunctive relief is now moot and unnecessary for three reasons. First, body scanners have been installed and are now utilized as the primary means for conducting searches of inmates at CRDF, eliminating, in large part, the need to conduct visual body cavity searches ("strip searches") unless necessitated by an inmate's physical condition or an inmate's explicit refusal to go through the body scanner. Second, in the limited circumstances when a strip search must be performed, the installation of heaters and privacy curtains has eliminated any reasonable dispute regarding an alleged lack of privacy or thermal comfort. **In fact, Plaintiffs have already conceded that that they do not contend that the present practices and procedures at CRDF regarding the body scanners and strip searches are unconstitutional**. (Declaration of Justin W. Clark ("Clark Decl."), ¶ 2.) Finally, the LASD has expended considerable time, energy, and resources into installing and implementing the body scanners at CRDF (as well as the physical construction in the bus bay), and as such, there is no plan to discontinue the use of the body scanners at CRDF and revert to the strip search procedures that were in place prior to the installation of the body

1

scanners. Any claim by Plaintiffs to the contrary is nothing more than a red herring.

Accordingly, Plaintiffs' claim for injunctive relief is now moot and summary judgment should be entered against Plaintiffs.

## II. STATEMENT OF FACTS.

On March 12, 2014, this Court certified a class for injunctive relief under Federal Rules of Civil Procedure 23(b)(2) that included:

> all present or future women inmates of the Los Angeles County Jail who, upon their admission or return to the Century Regional Detention Facility from outside of the facility, are being or will be subjected to a visual body cavity search in a group with other inmates in an outside bus stall.

(Docket No. 232 at 33:26-34:2; *Amador v. Baca*, 299 F.R.D. 618, 628-29 (C.D. Cal. 2014).) On December 18, 2014, this Court denied Plaintiff's renewed motion to expand the scope of the injunctive class, but granted the motion to certify a weather subclass, including "[w]omen who were exposed to extreme weather (hot, cold, rain) or whose health or safety was threatened by virtue of the policy or practice." (Docket 262 at 17:5-13; 12:22-24.)

Until October 2014, all inmates returning from court were strip searched upon returning to CRDF before being sent to housing locations within the facility. (*See* Defendants' Separate Statement of Undisputed Facts ["SS"] 1-4.) The large majority of these strip searches were conducted in Bus Bay #3, a location at CRDF that was converted permanently into a dedicated room used for conducting group searches of inmates. (SS 5.) Plaintiffs challenge the constitutionality of the group strip searches performed in the bus bay, arguing that additional privacy and comfort should have been provided to the inmates. Plaintiffs also seek injunctive relief on behalf of themselves and the proposed class, to enjoin the LASD from performing the group searches in the bus bay without privacy, and to

2

enjoin searches from being conducted in the bus bay when the temperature is too cold.

### A. Installation and Use of Body Scanners.

In October 2014, a Smiths Detection B-SCAN 16 HR LD 250 scanner (hereinafter, "B-SCAN" or "body scanner") was installed at CRDF in Bus Bay #3, which reduced, to a substantial degree, the need for strip searches. (SS 6-7, 10, 31-34.) The B-SCAN screening system uses x-ray technology to detect objects hidden internally (i.e. in body cavities) or externally on the body (i.e. beneath clothing). (SS 16.) Given the x-ray capabilities, the B-SCAN screening system does not require an inmate to undress to be scanned. (SS 16-30.)

Most recently in April 2016, a second B-SCAN screening system was installed at CRDF to facilitate faster screenings of inmates, as the two body-scanners can now be operated simultaneously which has greatly reduced the amount of time required to screen inmates before they can be sent to permanent housing locations. (SS 7.) Since the installation of the body-scanners (and absent mechanical breakdown), only those inmates who are pregnant (designated as K-8s), unable to be scanned because of special needs or physical disability (i.e. necessitate a wheelchair), or who explicitly refuse to be body-scanned are strip searched. (SS 32.) **Thus presently, approximately 98% (or more) of inmates at CRDF are now screened by the B-SCAN operating system**. (SS 33.) In fact, most recently in May 2016, out of approximately 3800 inmates screened from May 1, 2016 through May 21, 2016, only approximately thirty inmates necessitated a strip search because of pregnancy or disability. (SS 34.) Moreover, no inmates explicitly refused the B-SCAN screening system during this period. (SS 34.)

The two B-SCAN screening systems are located and operated in Bus Bay #3 at CRDF, the same location used for strip searches when necessary. (SS 10.) Due to space limitations, the number of inmates being processed into CRDF on

any given day, and logistical issues associated with other parts of the facility, LASD has determined that Bus Bay #3 is the best available location at CRDF to house the body-scanners and conduct screenings of inmates returning to CRDF. (SS 11.)

The screening process is as follows:

- Twelve (12) inmates at a time are escorted from the holding cells to the screening area in Bus Bay #3. As the inmates enter the screening area, their wristbands are scanned to record the date, time, and location of the commencement of the screening in the Defendant Inmate Movement Management System (DIMMS) (SS 24-25.);
- The inmates are then instructed to proceed into Bus Bay #3 and line up, facing the left hand wall, in a single file line in the marked, separately designated squares, which are separately numbered from one to twelve (SS 26.);
- Next, the inmates are instructed to turn around, and remove anything from their pockets, their shoes and socks, and place all property in a basket located on a table directly in front of them. Custody personnel then proceed to search the property of the inmates, and once done, the inmates are instructed to put their socks and shoes back on and await further instruction (SS 27.);
- When the B-SCAN screening operator is ready, custody personnel direct inmates, one at a time, through the screening process. Inmates first present their wristband for scanning in the Consolidated Criminal History Reporting System (CCHRS), which pulls up their most recent booking photograph to ensure the inmate is correctly identified (SS 28.);

- The inmate is then instructed to step up on the treadmill, stand with their hands to their sides, turn their heads to the left, and prepare for the treadmill to move them through the screening system.  Once the inmate is moved through the screening system and a head-to-toe image is obtained, the inmate is next instructed to step off the treadmill, recover their property, and proceed toward the entrance of the screening area where they must wait until the B-SCAN screening system processes the scan and clears the inmate (SS 29.);
- Once an inmate is cleared, the inmate's wristband is then scanned once again to record the date, time and location of the completion of the screening process in DIMMS, and the inmate is then returned back to a holding cell to await escort to their housing location (SS 30.).

Given the overall success in implementing the B-SCAN screening system into the search procedures at CRDF, there are no plans at CRDF to discontinue the use of the body scanners and revert to the strip search procedures that had been in place prior to the installation of the B-SCAN screening system and there is no evidence, admissible or otherwise, to the contrary.  (SS 8-9.)  The LASD has invested heavily in installing and implementing the body scanners at CRDF and there is legitimate reason why the LASD would suddenly abandon such capital improvements.  (SS 8-9.)  The installation of both body scanners was a time-consuming, labor-intensive and costly process, which included permanently securing the machines in place, as well as the installation of electrical wiring and dedicated computer terminals to operate the machines.  (SS 9.)  As such, there is no expectation or plan to revert back to the strip search procedures that were in place at CRDF prior to the installation of the body scanners.  (SS 8-9.)

///

### B. Current Strip Search Procedures.

While the vast majority of inmates are searched using the body scanner, there are limited situations that require inmates to be strip searched. (SS 32, 35.) Consistent with LASD policy, all strip searches are conducted in a manner to provide the inmates with as much privacy as practicable and without causing them any undue distress or embarrassment. (SS 36, 42.) First, given that the necessity to perform a strip search only arises very infrequently, the strip searches are now often simply conducted with only one or two inmates. (SS 45.) Second, privacy curtains have been installed to allow for a small degree of privacy, as once the curtains are drawn (which extend approximately 18 inches from the wall), the curtains prevent the inmate from being seen to the left or right side of the designated area by other inmates. (SS 48.) Third, the searches are conducted only by the necessary number of female jail personnel (it is against LASD policy to allow personnel of the opposite sex to participate in strip searches), and all sides of the enclosed bus bay are covered to prevent any unauthorized jail personnel and inmates from viewing inside the enclosed bus bay. (SS 37-38.) And finally, strip searches in the bus bay are only conducted when the temperature is 70 degrees or above, and if it is colder, the installation of the heaters in February 2014 now allows the temperature of the bus bay to be easily raised to above 70 degrees. (SS 40-41.)

### C. Plaintiffs Admit That the Current Search Practices at CRDF are Constitutional.

Given that there have been significant changes at CRDF that address the allegations raised by Plaintiffs in this action, Defendants discussed with Plaintiffs the possibility of dismissal of their injunctive relief claim as a means of avoiding this Motion. (Clark Decl., ¶ 2.) Despite the controlling, material undisputed facts, Plaintiffs refused to voluntarily dismiss the injunctive relief claim due to, as stated by Plaintiffs' counsel, the possibility that the LASD would "revert" back to

the prior strip search practices and procedures. (Clark Decl., ¶ 2.) There is no such reasonable possibility (SS 8-9), and just as importantly, Plaintiffs' counsel admitted that the LASD's current search practices at CRDF (as articulated herein) are constitutional. (Clark Decl., ¶ 2.) Based on this admission alone, this Motion should be granted.

### III. STANDARD OF REVIEW.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party discharges its initial burden by showing "that there is an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Thereafter, the burden shifts to the nonmoving party to designate specific facts showing there is a **genuine** issue for trial on those claims for which the opposing party will bear the burden of proof at trial. *Id.* at 324. "If the evidence is merely colorable, or is **not significantly probative**, summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-250 (1986) (emphasis added); *Rodriguez v. City of Fresno*, 819 F. Supp.2d 937, 944 (E.D. Cal. 2011) ("[T]o establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.").

If summary judgment is not granted on the entire action, a court may render partial summary judgment on individual issues as to which there remains no genuine issue of material fact. Fed.R.Civ.P. 56(b), (d).

///
///
///
///

## IV. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFFS' CLAIM FOR INJUNCTIVE RELIEF IS MOOT.

Plaintiffs' claim for injunctive relief must be dismissed as moot because CRDF now uses body-scanners as the primary means of searching inmates for contraband, and the LASD has no intention to discontinue the use of the body scanners and revert to the strip search procedures that had been in place prior to the installation of the B-SCAN screening system. (SS 8-9.)

Article III of the United States Constitution limits federal court jurisdiction to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "A case or controversy must exist at all stages of review, not just at the time the action is filed." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010). If "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome", the case is moot. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (citation omitted); *see also United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 698 (9th Cir. 1984) ("[a] claim is moot if it has lost its character as a present, live controversy.")

With respect to a claim for injunctive relief, a defendant's voluntary cessation of an alleged wrongful activity will moot a claim for an injunction against that activity if "(1) there is no reasonable expectation that the [alleged] wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992). In other words, a claim becomes moot when it is clear that the allegedly wrongful behavior could not reasonably be expected to recur. *Friends of the Earth, Inc. v. Laidlaw Environmental Services,* 528 U.S. 167, 190 (2000); *see e.g., Hendrickson v. eBay Inc.,* 165 F. Supp. 2d 1082, 1095 (C. D. Cal. 2001) (summary judgment on Lanham Act claim for injunctive relief where defendant ceased running allegedly infringing advertisements and had no

intention of running the advertisements in the future); *Pickern v. Best Western*, 194 F. Supp. 2d 1128, 1130 (E. D. Cal. 2002) (summary judgment where defendants' remedial efforts rendered plaintiff's claim for injunctive relief moot).

Where, as here, the undisputed material facts establish that the alleged conduct is reasonably certain not to recur, injunctive relief serves no meaningful purpose and the Court should dismiss such claims as moot.

### A. Substantial Changes to the Practices and Procedures Regarding Searches of Inmates at CRDF Have Addressed the Conditions Plaintiffs Seek to Enjoin.

Here, the undisputed material facts establish that injunctive relief is unnecessary in this case because body scanners have replaced visual body cavity searches ("strip searches") at CRDF as the primary means for conducting screening of inmates, thus rendering Plaintiffs' request for injunctive relief moot.

The overwhelming majority of inmates are now searched by way of the B-SCAN screening system, which uses x-ray technology to detect objects hidden both in body cavities and underneath clothing. The body scan does not require an inmate to be undressed in order for the LASD to conduct a search for contraband. Given these capabilities, aside from requiring an inmate to remove their shoes and socks for an initial search of these items, inmates at CRDF who are searched by way of the B-SCAN screening system are no longer required to remove any of their clothing, undress themselves, or expose themselves in order to be searched upon returning from court or outside facilities. Thus, the privacy concerns raised by Plaintiffs have been largely eliminated given that approximately 98% or more of inmates are now searched solely by the body scanners.

With respect to strip searches, they are now conducted very infrequently at CRDF, and only when necessitated by an inmate being pregnant or physically disabled, or when an inmate specifically refuses to be screened by the body scanner. Yet even when strip searches are conducted, the conditions challenged

9

by Plaintiffs as unconstitutional are indisputably non-existent. With the installation of the body scanners, the size of the group searches have been reduced drastically, and it is now more often the case that when an inmate is required to be strip searched, the strip search is conducted with only one or two other inmates present. Even so, the installation and utilization of privacy curtains dispels the privacy concerns raised by Plaintiffs in this action, as the privacy curtains prevent the inmate from being seen to the left or right side of the designated area by other inmates. Moreover, the comfort concerns raised by Plaintiffs have also been addressed by recent changes at CRDF, as the installation of heaters now allows CRDF personnel to easily raise the temperature in the bus bay to above 70 degrees, the threshold temperature that must exist for a strip search to occur.

Simply put, even Plaintiffs do not challenge the constitutionality of the current CRDF search procedures. Plaintiffs' acknowledgment and their injunctive relief claim cannot be reconciled. Plaintiffs' injunctive relief claim, and the certified injunctive relief class, therefore, have been rendered moot, mandating summary judgment.

**B.  The LASD Has No Plans To "Revert" To Previous Strip Search Practices And Procedures Nor Is There Any Evidence Suggesting Anything Of The Kind.**

Plaintiffs have represented that they are unwilling to dismiss the injunctive relief claim due to the possibility that the LASD may "revert" back to prior practices and procedures. This assertion is nothing more than a red herring and importantly, other than Plaintiffs' counsel pure speculation, there is no evidence, admissible or otherwise, to support this "fact." On the contrary, the undisputed evidence establishes that the LASD has no plans whatsoever to discontinue the use of the body scanners and revert back to prior strip search practices.

///

Reverting back to the previous strip search procedures would require a significant further investment in time and money to undo all the most recent changes to Bus Bay #3. Indeed, the B-SCAN screening systems would have to be uninstalled, disconnected and physically removed from the bus bay, and the heaters and privacy curtains would have to be physically uninstalled and removed as well. Under these circumstances, any argument by Plaintiffs that Defendant would invest the time and money to revert back to the former strip search procedure is insufficient to establish a live controversy for purposes of negating mootness. *See e.g., Antoninetti v. Chipotle Mexican Grill, Inc.*, 2012 WL 3762440, at *3 (S.D. Cal. 2012) ("the notion that Defendant would invest the time and money to reconstruct its high counter walls at some future date—simply because, as Plaintiffs assert, it still thinks it can—is insufficient to constitute a live controversy."); *Roy v. State*, 2006 WL 120328, at *6 (D. Ariz. 2006) ("any suggestion that the [defendants] will revert to the old policy once the threat of litigation has been removed is but a 'speculative contingency.'"); *Kohler v. In-N-Out Burgers*, 2013 WL 5315443, at *7 (C.D. Cal. 2013) (holding that ADA claim for injunctive relief was moot after the defendant had remedied the physical problems and "shown that it makes no sense for it to spend more money to revert to non-compliance, especially where there is no evidence that [d]efendant would derive any benefit from such reversion.").

As such, there is no expectation or plan to revert back to the strip search procedures that were in place at CRDF prior to the installation of the body scanners.

///
///
///
///
///

11

## V. CONCLUSION.

For the foregoing reasons, Defendants respectfully submit that the Court grant summary judgment as to the Rule 23(b)(2) injunctive relief class.

Dated: May 31, 2016               LAWRENCE BEACH ALLEN & CHOI, PC


                                  By _____/s/  Justin W. Clark_____
                                      Paul B. Beach
                                      Justin W. Clark
                                      Attorneys for Defendants
                                      County of Los Angeles,
                                      Los Angeles County Sheriff's
                                      Department, Sheriff Leroy D. Baca,
                                      Captain John H. Clark, Timothy
                                      Cornell, Dennis Burns, Gerald K.
                                      Cooper, Daniel Cruz, and Stacy L. Lee