UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

| Present: The Honorable | STEPHEN V. WILSON, U.S. DISTRICT JUDGE |
|---|---|

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** IN CHAMBERS ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [343] [346]

## I.   INTRODUCTION

Seven years ago, Plaintiffs filed this class action complaint alleging that Defendants instigated unconstitutional strip search polices at Century Regional Detention Facility ("CRDF") in Lynwood, California. On November 18, 2016, this Court granted Plaintiffs' renewed motion for class certification. Dkt. 327. The class period runs from March 1, 2008 to January 1, 2015. *See id.* On December 19, 2016, Plaintiffs filed the operative Fourth Amended Complaint. Dkt. 334. On March 10, 2017, the parties filed cross motions for summary judgment as to Plaintiff's 42 U.S.C. § 1983 claim that Defendants violated the Fourth Amendment rights of female inmates who were strip searched at Bus Bay #3. Dkts. 343, 346.

Plaintiffs do not challenge Defendants' right to institute a blanket strip search policy against inmates without individualized suspicion, since that issue has long been settled by the Supreme Court. *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Plaintiffs argue that the conditions of the search, executed without penological justification, give rise to their § 1983 claim. Further, though the class certification order separates Plaintiffs into two classes and multiple subclasses, Plaintiffs argue that the "core

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

conditions" common to every class establishes their claim. The Court agrees, and GRANTS Plaintiff's motion for summary judgment.[1] Accordingly, the Court DENIES Defendants' motion on these grounds. Defendants also moved for summary judgment against the individual and official capacity claims against individual defendants. The Court GRANTS Defendants' motion for summary judgment on claims against individual defendants.

## II. FACTUAL BACKGROUND[2]

Since 2006, the Los Angeles County Sheriff's Department ("LASD") primarily housed the female inmates at CRDF. Inmates who are transported to court are subject to a visual body cavity ("VBC") search upon their return to CRDF. The vast majority of these searches occurred at Bus Bay #3. These searches were conducted in groups of at least twenty inmates, and sometimes exceeding forty.

Though particular details of any given strip search may vary, LASD issued a strip search script in 2013 which the parties agree describe common elements of the search from 2008 to 2015. *See* dkt. 345-1, exh. H; dkt. 284-32, exh. 312.1.[3] The guards instructed the inmates to disrobe down to their panties, and place their clothes and personal items on a table in front of them. The inmates then lifted their arms above their head, lifted their breasts, and ran their fingers through the waistline of their underwear. They were then told to drop their underwear to their knees and leave them there, and to open their belly buttons and lift their stomach and any skin folds. They were then told to lift their underwear and turn around to face the wall.

---

[1] The Court notes that the "core conditions" of the search are common to both classes and all subclasses. Therefore, members of a subclass that may have experienced even harsher conditions, due to cold weather, menstruation while being searched, larger group size, or other factors, were all subject to the core conditions and thus the summary judgment order applies to subclasses without needing to consider the additional allegations of the subclasses.

[2] Unless otherwise noted, the Court's statement of facts is taken from the undisputed statements in the parties' separate statements of material facts. *See* dkts. 350, 354. If the Court states a fact was not disputed but the subject of an objection, the Court overrules the objection.

[3] The Court notes that the script includes reference to several changes that LASD made throughout the years, such as painting squares on the floor and installing tables for inmates to put their clothes on, and thus is not indicative of every female inmate's experience. However, the Court finds these differences inconsequential to the liability analysis.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

At this point the guards asked if any inmates were on her period. If so, they were instructed to remove their tampon or pad and were given a new pad, but told not to put it on. The guards then ordered the following:

> [P]ull down your underwear, take a half step back, spread your feet wide, and bend at your waist, not at your knees. Reach behind with your hands, spread open your vagina lips, and cough. Look between your legs so you can see when we tell you to get up. Cough until you are told to get up. When you are told to get up, face the wall and put your hands behind your back. You should not be talking or looking around.

Dkt. 345-1, exh. H; dkt. 284-32, exh. 312.1. Inmates who requested a pad were then told they could put it on. The guards then searched the clothing on the table, and then the inmates got dressed and exited.

The parties do dispute the extent to which the inmates viewed each other during this search. *See* dkt. 350 ¶ 41. The Court accepts Defendants' factual contentions that inmates were "not forced to watch other women", dkt. 345-3, exh. "X" (Cholewiak Depo.) at 398:8-16, and that the deputies stood in the middle of the room between the two lines partially obstructing the view. Defendants produce no evidence, however, that rebuts Plaintiffs' common sense assertion that the inmates *could not avoid* seeing each other's bare bodies.[4]

The layout of Bus Bay #3 and the amount of individuals searched at a time changed throughout the years. The Court finds some of these changes important to the analysis:

- In April, 2013, 24 numbered squares were painted on the floor Bus Bay #3.

---

[4] Defendants' argument that inmates were "instructed" not to look at each other is misplaced. First, as a factual matter, this does not contradict the assertion that inmates did see each other's bare bodies both during the initial disrobing and during the VBC inspection, and thus that assertion remains undisputed. *See Young v. County of Cook*, 616 F.Supp.2d 834, 850 n. 9 (N.D. Ill. 2009) (finding that no reasonable fact finder could infer that a group of inmates being strip searched without privacy screens could avoid observing other inmates' naked bodies). Second, as a legal matter, the burden is not on the inmates to fix their gaze in a constitutionally appropriate manner. Rather, the burden is on the Defendants to secure the inmates' privacy—unless there a penological purpose or other justification for not doing so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

- On July 20, 2013, CDRF implemented a written policy limiting strip searches to a maximum of 24 inmates at a time.
- In October, 2014, a body scanner machine was installed for purposes of searching inmates. Since that time, only inmates who refuse to be body-scanned are strip searched.
- 24 privacy curtains were installed in February, 2015.

The particular strip search at issue, a VBC, is considered to be more invasive than a strip search that does not include a body cavity inspection. Further, a VBC in which the female inmate is told to manually spread her vagina for inspection ("labia lift") is more invasive than the alternative "squat-and-cough" procedure. It is undisputed that the search conducted by LASD is not the standard practice used by other correctional facilities. *See* dkt. 350 ¶¶ 113, 116 (Defendants object but do not dispute). Plaintiff's expert, Wendy Still, is not aware of any other jail that conducts this type of invasive search in a group setting without individualized privacy (regardless of whether the jail uses the "labia lift" or "squat-and-cough" procedure). *Id.* ¶ 117 (Defendants object but do not dispute).[5]

### III.  LEGAL STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial

---

[5] Defendants' objections to these last two points is that "correctional practices of another institution are irrelevant to a determination of whether the strip search procedures at CRDF, specifically, were constitutional." Dkt. 350 ¶¶ 116, 117. As discussed further below, the question is not simply whether or not the strip search "infringes" the constitutional rights of Plaintiffs, but also whether the infringing elements of the search are reasonably related to a legitimate penological interest. *See Bell*, 441 U.S. at 547 ("[E]ven when an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security."); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). Courts have consistently found the practice of other institutions to be relevant under the second inquiry (whether the infringing element is reasonably related to a valid penological purpose). *See Morrison v. Hall*, 261 F.3d 896, 905 (9th Cir. 2001); *see also*, dkt. 356, Pl. Reply, at n. 4 (collecting cases).

The Court further notes that Defendants' objections to Wendy Still are targeted towards her lack of personal knowledge of CRDF. *See* dkt. 355, Def. Reply, at 10. Defendants do not object to her knowledge of standard practices at other correctional facilities. Further, Defendants have not challenged Still's qualifications as an expert and have not requested a *Daubert* hearing.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | | Date | June 7, 2017 |
|---|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | | |

responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**IV.   APPLICABLE LEGAL FRAMEWORK**

    **A.   *Turner v. Safley***

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court considered the constitutionality of several inmate regulations promulgated by the Missouri Division of Corrections. The Court began by describing "the principles that necessarily frame our analysis of prisoners' constitutional claims." *Id.* at 84. Among other things, the Court observed:

> [C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. . . . [T]he problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. . . . Where a state penal system is involved, federal courts have, as we indicated in Martinez, additional reason to accord deference to the appropriate prison authorities.

*Id.* (internal citations and quotation marks omitted). Furthermore:

 

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

> [J]udgments regarding prison security are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Id.* at 86 (internal citations and quotation marks omitted).

In light of these guiding principles, the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. Specifically, the *Turner* Court listed four factors in determining the reasonableness of the regulation at issue. "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* at 89 (internal quotation marks omitted). Second, courts should consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. "A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* "Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation. By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.*[6]

### B. *Bell v. Wolfish*

In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court held that conducting a visual body cavity search of all inmates who had a contact visit with visitors, without probable cause to believe the inmates were concealing contraband, was constitutional. In its decision, the Court set forth the applicable legal framework that must be applied where, as here, an inmate challenges a strip-search policy under the Fourth Amendment:

---

[6] The Court cautioned that "[t]his is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint. But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 90-91 (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559. The Court concluded that VBC inspections could be conducted with less than probable cause, but specifically reaffirmed that such searches "must be conducted in a reasonable manner." *Id.* at 560.

### C. *Bull v. City & County of San Francisco* and *Florence v. Bd. of Chosen Freeholders*

In *Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc), an en banc panel of the Ninth Circuit held that the VBC inspection of pre-arraignment arrestees, without any individualized reasonable suspicion that they were concealing contraband, was constitutional.

The court reasoned that "[b]ecause the purpose of the search policy at issue was to further institutional security goals within a detention facility, the principles articulated in *Bell v. Wolfish* [cite], and *Turner v. Safley* [cite], govern our analysis." *Id.* at 971. The court further noted that "[a]lthough *Bell* continues to provide definitive guidance for analyzing detention-facility strip searches under the Fourth Amendment, *Turner v. Safley* is also relevant to our analysis." *Id.* at 973. The court emphasized the substantial deference that must be given to prison officials in this context, reiterating that

> even if we "disagree[] with the judgment of [corrections] officials about the extent of the security interests affected and the means required to further those interests," *Bell*, 441 U.S. at 554, we may not engage in "an impermissible substitution of [our] view on the proper administration of [a corrections facility] for that of the experienced administrators of that facility." *Block*, 468 U.S. at 589.

*Id.* at 975. Under this deferential standard, the court found that the suspicionless VBC inspection of inmates was constitutional under both *Bell* and *Turner*. Shortly after the Ninth Circuit's decision in *Bull*, the Supreme Court reached essentially the same result in *Florence v. Bd. of Chosen Freeholders*, 566 U.S.

| | : |
|---|---|
| | Initials of Preparer |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

318 (2012), upholding the constitutionality of visual body cavity searches, without reasonable suspicion, of inmates entering the general population of a jail. In so holding, the Court reaffirmed the deference owed to corrections officials in this context:

> In addressing this type of constitutional claim courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of jail security.

*Id.* at 322–23. However, the Court acknowledged that "there may be legitimate concerns" about the manner in which strip searches are conducted, but found that "[t]hese issues are not implicated on the facts of this case". *See id.* at 339.

V. **ANALYSIS**

The *Bell* Court put forth four factors to analyze the reasonableness of a particular search: "Courts must consider [A] the scope of the particular intrusion, [B] the manner in which it is conducted, [C] the justification for initiating it, and [D] the place in which it is conducted." *Bell*, 441 U.S. at 559. The factors in *Turner* are also relevant to the analysis. *See Bull* 595 F.3d at 973. Thus, the Court will also consider whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence [or existence] of ready alternatives." *Turner*, 482 U.S. at 89.

A. **The Scope of the Intrusion**

The VBC inspections in this case involved no touching by jail personnel and were only conducted by female correctional officers. Similar strip searches have been held constitutionally permissible by the Ninth Circuit and Supreme Court. *See, e.g., Florence*, 566 U.S. 318 (2012); *Bull*, 595 F.3d 964 (9th Cir. 2010) (en banc). The Court notes, however, that *Florence* specifically dealt with a "squat-and-cough" inspection. *See Florence*, 566 U.S. at 324. It is not clear what type of inspection was at issue in *Bull*, likely because the district court decided that the details of the strip search were inconsequential to the analysis of whether a blanket strip search policy without individualized suspicion was constitutional. *See Bull v. City*

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

*& Cty. of San Francisco*, No. C 03-01840 CRB, 2006 WL 449148, at *1 n. 2 (N.D. Cal. Feb. 23, 2006) (noting a "spectrum of possible search practices" but finding "the distinctions . . . of searches make no difference in the analysis."). The Supreme Court in *Bell* briefly described the procedure for males, but was more ambiguous as to the procedure for females. *See Bell*, 441 U.S. at 558 n. 39 ("If the inmate is a male, he must lift his genitals and bend over to spread his buttocks for visual inspection. The vaginal and anal cavities of female inmates also are visually inspected.").

      As Defendants point out, the search at issue here seems similar to *Bell* and further similar to the search this Court reviewed in *Solis v. Baca*, Case No. CV 06-1135 SCW(CTx) ("*Solis*"). Defendants note that this more invasive form of a VBC inspection did not change the constitutional analysis in those cases. The Court agrees that the difference between the "labia lift" and "squat-and-cough" searches is not constitutionally significant on its own; however, when accessing the overall reasonableness, this difference should be taken into account. As this Court further notes, Defendants provide no reason why they used a "labia lift" procedure instead of "squat-and-cough" and do not dispute that the "labia lift" is not standard practice at correctional facilities. The Court must consider, under *Turner*, the existence of ready alternatives and the impact to the Defendants in instituting these alternatives. Here, the "squat-and-cough" was undeniably a ready alternative and undeniably less invasive, and Defendants fail to provide any reason for failing to use this approach and fail to state any negative impact that would result from this alternative.

      The scope of the intrusion of the VBC inspection at issue is an important factor, even if it is constitutionally permissible under certain conditions. Thus, this factor alone may not render the search unconstitutional, but the use of a highly invasive search is intertwined with the other factors in an overall reasonableness analysis.

    **B. The Manner in Which it is Conducted**

      Plaintiffs do not argue that VBC inspections are *per se* unconstitutional. Nor do they argue that group strip searches are *per se* unconstitutional. Rather, the Plaintiffs' claims rely on the manner in which these particular VBC inspections were conducted—particularly the intrusiveness of the search combined with the group setting and the lack of individualized privacy. Plaintiffs argue the particular manner of this search was unconstitutionally invasive for the following reasons:

                                                                  :

Initials of Preparer
                                                          PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

- Inmates would face the wall, undress down to their underwear, and then be ordered to turn and face the center with their bare breasts exposed.
- In view of the group, they would raise their arms and lift their breasts.
- They would then lower their underwear to their knees and lift their stomachs and rolls of fat.
- The inmates were then ordered to face the wall, bend at the waist, reach behind their bodies, pull apart their labia, and cough. Specifically, the script for the search memorialized in July 2013 reflects that inmates were told to "spread open your vagina lips."
- They were ordered to look between their legs, not at the wall, so that they could see when an officer signaled them to stand up.
- Further, Plaintiffs argue the intrusiveness is heightened by the lack of privacy, and argue a readily available alternative could have easily accommodated the constitutional errors with little burden on Defendants.

Before the Court analyzes whether the manner of these particular searches were reasonable, the Court notes that Defendants' arguments in this regard miss the point.

Defendants extensively argue that the initiation of the search at issue was reasonable to combat the known contraband problems in jail. However, Plaintiffs concede that it is constitutionally permissible to conduct suspicionless strip searches of all detainees returning to the prison facility. Thus, Defendants' reliance on cases that merely hold group strip searches are not *per se* unconstitutional, or that a particular group search—dissimilar to the search in this case—was not unconstitutional, are unpersuasive to this Court's inquiry. *See, e.g., Powell v. Barrett*, 541 F.3d 1298, 1313 (11th Cir. 2008) (finding constitutional a blanket policy of non-body cavity group strip searches that were "no more intrusive on privacy interests than those upheld in the *Bell* case"); *Green v. Portillo*, 2015 WL 5092679, at *4–5 (D. Nev. August 27, 2015) (finding group strip searches of culinary workers constitutional by deferring to prison officials' judgment that they did not have enough officers to conduct private searches and because employment in the culinary was voluntary); *Wagner v. Thomas*, 608 F.Supp. 1095, 1103-04 (N.D. Tex. 1095) (finding group strip search constitutional due to: (1) "severe security risks in attempting to conduct individual strip-searches"; (2) the random searches would be rendered useless unless all inmates are removed from their cells simultaneously; and (3) the court found the searches were conducted in the "most effective and

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

efficient" manner); *Fernandez v. Rapone*, 926 F. Supp. 255, 262 (D. Mass. 1996) (finding group strip searches constitutional due to, in part, "the fact that it is the policy and practice at the institution for an officer to comply with an inmate's request to be searched alone."). Defendants' strip search policy is distinguishable from all these cases.

The cases Defendants rely on are both distinguishable, and bely Defendants' contention that Plaintiffs' "ready alternative" arguments are a red herring. Several of these cases at least partially base their decision in analyzing the proffered ready alternatives, and ultimately rejecting them for various reasons. *See Thompson v. Souza*, 111 F.3d 694, 701 (9th Cir. 1997) (in finding defendants protected by qualified immunity, the court rejected plaintiff's proffered alternative of a "more private location" due to officer safety concerns and the potential for prisoners to "discard contraband on the way to the separate area"); *Elliott v. Lynn*, 38 F.3d 188, 192 (5th Cir. 1994) (in upholding constitutionality of emergency jail-wide strip search, the court found that plaintiff's proffered alternative of individual searches in private areas would have been "extremely time consuming" when applied to "3,000 individuals" and "would have defeated the purpose of the swift institution-wide shakedown"); *Franklin v. Lockhart*, 883 F.2d 654, 656–57 (8th Cir. 1989) (upholding constitutionality of group VBC searches due to "security concerns" of plaintiff's proffered alternatives, including testimony that prisoners could dispose of contraband on the way to private locations and that portable screens would block the view of security cameras—and specifically noting that its holding is "limited to the facts established in this case and should not be read to constitute a carte blanche approval of all VBC searches").[7] Thus, despite Defendants' objections, it is in

---

[7] Defendants also cite to three S.D.N.Y. cases with questionable persuasive value. *See Montgomery v. Hall*, 2013 WL 1982920 (S.D.N.Y. May 15, 2013) *report and recommendation adopted*, 2013 WL 3816706 (S.D. N.Y. July 22, 2013); *Smith v. City of New York*, No. 2015 WL 3929621 (S.D.N.Y. June 17, 2015); *Israel v. City of New York*, 2012 WL 4762082 (S.D.N.Y. 2012). These opinions are conclusory and involve judgments against *pro se* plaintiffs. In *Smith* the court granted Defendants judgment *on the pleadings* because the plaintiff failed to "allege facts suggesting that the search did not serve a legitimate penological purpose." 2015 WL 3929621, at *2. In *Israel*, the court granted defendant's *unopposed* motion for summary judgment finding the initiation of the strip searches constitutional without analyzing the manner in which they were conducted. 2012 WL 4762082. In *Montgomery*, the court refused to analyze plaintiff's argument that privacy partitions were a readily available alternative by explaining that "the constitutionality of a strip search is not negated by the presence of other inmates and employees of the facility." 2013 WL 1982920, at *4. Inexplicably, the court's opinion never cited to *Turner* and thus unsurprisingly failed to analyze "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the absence [or existence] of ready alternatives." *Turner*, 482 U.S. at 89. Similarly, Defendants rely on *Gipson v. Wilkinson*, No. 1:10-CV-00524, 2015 WL 4395031 (W.D. La. July 16,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

fact a mandatory inquiry for the Court to consider the impact of accommodations that secure constitutional rights, and the absence or existence of ready alternatives.[8]

### 1. "Ready Alternatives" and the Impact of Accommodation

In *Young v. County of Cook*, 616 F.Supp.2d 834 (N.D. Ill. 2009), a case very similar to the case before this Court, plaintiffs alleged that their Fourth and Fourteenth Amendment rights were violated while they were detained at Cook County Jail. *Id.* at 837. Male plaintiffs were alternatively subject to a "bend-and-spread" search, in which they would bend over and spread their buttocks, or a "squat-and-cough" search. *Id.* at 839. They were searched in large groups without individualized privacy. *Id.* at 840–41.[9] Similar to the case before this Court, the *Young* plaintiffs likewise "concede[d] that it is proper for [Cook County Jail] to conduct strip searches . . . in groups. [However,] [t]hey challenge the manner in which those groups searches were conducted." *Id.* at 850. The *Young* court concluded that

> [B]efore the privacy screens were installed . . . [the strip searches] were unreasonable and violated the Fourth Amendment as a matter of law. During that period, the class members, who were undergoing one of the most intrusive types of searches the government may permissibly conduct, were subjected to conditions that greatly enhanced their discomfort and humiliation. They were herded together with dozens of other men and forced to strip and bend over or squat in front of a large group, with less than a foot of space between them.

*Id.* at 851.

---

2015). The court granted judgment against a *pro se* plaintiff who challenged his strip search in a group by a homosexual male guard. *Id* at *4. The court did not cite *Turner* nor consider proffered alternatives.
[8] If Defendants meant to argue that the search itself does not impinge on Plaintiffs' constitutional rights and therefore does not trigger *Turner* analysis, this argument can be easily dismissed. "[T]he Fourth Amendment does apply to the invasion of bodily privacy in prisons." *Bull*, 595 F.3d at 974–75 (citing *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988)).
[9] Female detainees, however, were searched in cubicles that provided privacy, and always through the "squat-and-cough" approach. *Young*, 616 F.Supp.2d at 840.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

Plaintiffs here also argue that privacy screens should have been installed in Bus Bay #3. They argue that, accepting the search itself served a penological purpose, depriving Plaintiffs of individualized privacy during "one of the most intrusive types of searches the government may permissibly conduct", *see id.*, did not serve a penological purpose nor would it have been too burdensome to accommodate. Ultimately, Plaintiff argues that failure to provide such a simple accommodation, with no justification, is conclusive evidence that the manner of the strip search was unconstitutional as a matter of law.[10]

The reasons that Defendants offer for not installing privacy curtains sooner can be summarized as follows:

- Installing these curtains did not become feasible until the department installed a body scanner in October, 2014, because use of the body scanner greatly reduced the number of inmates being strip searched at any given time. Dkt. 345, Gutierrez Decl., ¶ 23.[11]
- Privacy curtains obstructed a guard's view of inmates. *Id.*
- The search procedure, as implemented without privacy curtains, was the most "cost-effective" method of conducting strip searches. *Id.* at ¶ 24.
- The search procedure, as implemented without privacy curtains, posed "the least amount of safety concerns" without compromising the effectiveness of the search. *Id.*

---

[10] As an initial matter, this case is distinguishable from the Court's previous decision in *Solis*. In *Solis*, plaintiffs likewise offered partitions or curtains as a ready alternative to ameliorate privacy concerns. The Court rejected this, citing defendants' response that partitions would cause safety issues and be logistically impractical due to cost concerns and the fact they would impede the flow of traffic through the corridor in which the search was conducted. None of these concerns are present here. It is undisputed that installing the curtains costs the Defendants less than $8,000, and that the installation was "simple." *See* dkt. 350 ¶¶ 141–43 (noting Defendants' "dispute" on other grounds). Further, unlike *Solis*, the Bus Bay was primarily used to search inmates and thus Defendants do not argue the curtains impede a normal flow of traffic or are otherwise incompatible with the space. Lastly, Defendants point to no "safety concerns" with the use of privacy curtains—but instead only conclusory state, for the first time in their opposition papers via a single paragraph in a declaration by Cmdr. Gutierrez, that they considered "safety concerns" when instituting their overall search procedure.

[11] Defendants provide no explanation—financial or logistic—why the body scanner itself could not have been installed earlier. *See* dkt. 284-38, Still Decl. ¶ 58, exh. 605 (noting that Cook County prisons installed body scanners in 2011). However, this issue was not briefed by the parties and thus will not be relied on by this Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

**2. Analysis**

Prison officials are undoubtedly afforded great deference in their determinations of how to conduct strip searches that serve a legitimate penological purpose. *See Bull*, 595 F.3d at 977; *Turner*, 482 U.S. at 90. However, this deference is not absolute. *Walker v. Sumner*, 917 F.2d 382, 385 (9th Cir. 1990) ("[D]eference does not mean abdication."). Therefore, courts can reject weak justifications when compared to the significant constitutional rights at issue. *See, e.g., Jordan v. Gardener*, 986 F.2d 1521, 1530 (9th Cir. 1993) (in finding that cross-gender clothed pat-down searches violated the Eighth Amendment, the court rejected excuses that males needed to perform the search to avoid interrupting lunch periods of female guards. The concurring opinion analyzed the case under the Fourth Amendment and applied *Turner* deference, yet nonetheless found a constitutional violation and rejected defendants' weak justifications, *see id.* at 1536, 1538).[12] Further, courts must reject contradictory evidence, illogical proclamations, and proffered justifications unsupported by evidence. *See, e.g., Hrdlicka v. Reniff*, 631 F.3d 1044, 1054–55 (9th Cir. 2011) (noting a "marked contrast" between the "general statements" offered to show a valid penological purpose and the "weak" and "contradictory" evidence offered to support those statements);[13] *see also Young*, 616 F.Supp.2d at 852 (finding defendants' argument that privacy partitions were not feasible was "undermined" by their later installation and "use[] without problems"). This case involves all of the above.

Defendant's main contention is that installing privacy curtains was not feasible until they installed the body scanner since prior to the body scanner they had to search many more women at any given time and thus could not provide curtains for all of them in the same amount of space, as it would have been more difficult to monitor every woman and would have taken longer. There are several issues with this excuse. The first and most important issue with this proffered justification is the fact that Defendants began searching inmates in groups of 24 over a year before the body scanner was installed. *See* dkt. 345, De La Torre Decl. ¶ 13 (stating that from July 2013 onward "[o]nly 24 inmates could be searched at one time."). For over a year, between July 2013 and October 2014, every search was conducted with only 24

---

[12] The fact that the *Jordan* majority rested its decision on the Eighth Amendment helps Plaintiffs' argument, since an Eighth Amendment violation is more difficult to establish than a Fourth Amendment violation.

[13] The Court notes that *Hrdlicka* dealt with a constitutional claim under the First Amendment. However, this Court finds no reason why *Hrdlicka*'s analysis of *Turner* in rejecting weak and contradictory justifications would be different in the Fourth Amendment context.

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

women present and *without a body scanner*. Thus, Defendants' own evidence shows that they could—and did—search only 24 inmates at a time before the body scanners were installed. By definition, it was feasible. Defendants do not attempt to explain this discrepancy and give no reason why the privacy curtains could not have been installed at least as early as July 2013.[14] Further, if reducing the search group size to 24 women without a body scanner was less efficient and took more time, Defendants should have evidence from July 2013 to October 2014 to show this Court that searches took longer. Yet, Defendants produce no evidence that the searches during this time took longer, were difficult to manage, were unsafe, or were otherwise problematic. *See Young*, 616 F.Supp.2d at 852. The Court recognizes that it should give great deference to the justifications of prison officials. However, accepting this contradictory justification would create a rule of *absolute* deference, which no courts has found appropriate. *See, e.g., Hrdlicka*, 631 F.3d at 1054–55 (rejecting general justifications that relied on contradictory evidence). Deference should be given to "informed" decisions. *See Turner*, 482 U.S. at 90. Plaintiffs contend that Defendants failed to even consider privacy curtains until recently. *See, e.g.*, dkt. 284-22, Cmdr. Gutierrez Dep., exh. 180, 146:2–25 ("if that thought [of privacy curtains] would have come up 20 years ago we wouldn't probably be here today."). Defendants do not specifically state when they first considered adding curtains, but instead simply declare "[t]he installation of such curtains, prior to the installation of the body-scanner, was not a viable option." *See* dkt. 276, Hausser Decl., ¶ 16. Accepting that Defendants considered and rejected privacy curtains, there is no basis on which this Court can find the decision was "informed" and thus the Court cannot be deferential to this decision.

The explanation that these curtains would obstruct the guard's view of inmates is also unfounded. Privacy curtains have been used for over two years prior to this summary judgment motion. Yet, Defendants provide no real world evidence that the curtains have unreasonably obstructed the guard's view of inmates. *See* dkt. 284-22, Cmdr. Gutierrez Dep., exh. 180, 153:4–20 ("Q: . . . [I]n your personal opinion, if you had a ratio of three to one and you had had the curtains installed, it would have gone fine . . . A: I think that an attentive, observant employee is definitely going to be able to do a good job."). Again, the Court cannot give deference to a single conclusory explanation accompanied with no evidence or explanation of potential consequences.

---

[14] The Court also notes that Defendants give no reason why they did not reduce the search group size to 24 women from the beginning of the class period.

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

The excuse that the search as implemented was the most "cost-effective" is belied by the fact that installing curtains costs under $8,000. *See* dkt. 350 ¶¶ 141–43 (noting Defendants' "dispute" on other grounds). Certainly it was $8,000 cheaper to not install privacy curtains, yet this is the epitome of a weak justification when compared to the significant constitutional rights at issue. *See, e.g., Jordan*, 986 F.2d at 1530. The excuse that the search, before installing curtains, provided the least amount of safety concerns is also unaccompanied with evidence or explanation as to the consequences. There is no evidence that in the two years since curtains have been implemented there has been any safety concerns. S*ee Young*, 616 F.Supp.2d at 852.[15]

The heart of Defendants' defense cannot be that accommodating Plaintiffs' constitutional rights was not feasible or impractical. They did it. It was feasible. The question, then, is whether Defendants were ignorant of the need to provide such accommodations. However, Defendants cannot reasonably argue that they were unaware of the obvious alternative of privacy curtains. *See, e.g.*, dkt. 284-22, Cmdr. Gutierrez Dep., exh. 180, 146:2–25 ("if that thought [of privacy curtains] would have come up 20 years ago we wouldn't probably be here today."). The issue of privacy partitions was initially plead and litigated in *Solis*, a case which involved the same Defendants, same defense counsel, and same plaintiff's counsel. *See Solis*, Case No. CV 06-1135 SCW(CTx), dkt. 76 at ¶¶ 70, 72–73 (this document, filed in 2008, discusses other California jails that use either partitions or curtains to provide privacy to inmates being strip searched). Thus, Defendants were well aware of this alternative. *See also* Still Decl., ¶ 61 (acknowledging that the Federal Bureau of Prisons installed privacy partitions in all of its prisons in 1987); *Young*, 616 F.Supp.2d at 852 (finding in 2009 that the nonuse of privacy screens during strip searches without justification was a Fourth Amendment violation). This is not a case where the required accommodation was extraordinary or unreasonable. In this case, the accommodation was obvious, cheap, and "simple", *see* dkt. 350 ¶ 143, and Defendants knew it was a ready alternative at *least* as far back as 2008—two years before this case was filed.

---

[15] Further belying Defendants' contention that privacy curtains were unfeasible is the fact that Plaintiffs' expert, Wendy Still, is unaware of any other jail that conducts invasive strip search without individualized privacy. *See* dkt. 350 ¶ 117. Defendants also do not cite another jail that does so. As noted, *see supra* n. 5, this fact is relevant to the Court's analysis as to whether Defendants' actions served a penological purpose or were otherwise justified. Though LASD may have had unique obstacles that prevented them from conforming to the standard practices of other jails, Defendants do not provide evidence that these obstacles existed or that CRDF is unique.

| | : |
|---|---|
| | Initials of Preparer |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

### C. The Justification for Initiating the Search

Plaintiffs essentially do not dispute that Defendants are within their right to initiate these searches. Plaintiffs do provide evidence, however, that there is minimal justification for the invasive VBC search. *See* dkt. 156 ¶¶ 153–59 (noting that Plaintiffs are supervised at all times when at court, are only out of handcuffs when in a holding tank, go through pat down searches at the court, and otherwise have minimal contact with the public). However, this Court accepts Defendants' justification that the searches are necessary to combat the contraband problem in LASD. *See* dkt. 345, Gutierrez Decl., ¶¶ 5, 7, 16-21, 24; *see also*, Arroyo Decl., ¶ 13; Diaz Decl., ¶ 13; Estrada Decl., ¶ 13; Hausser Decl., ¶ 13; Ponce Decl., ¶ 13; Shambaugh Decl., ¶ 13; Vargas Decl., ¶ 13.

### D. The Place in Which it is Conducted

The conditions of Bus Bay #3 are greatly disputed by the parties. Since the Court is granting summary judgment as to the core conditions, *see supra* n. 1, the Court can accept—for purposes of this summary judgment order only—that Bus Bay #3 was a suitable location for the searches.

### E. Totality of the Circumstances

Based on the totality of the circumstances, the Court concludes that Plaintiffs' Fourth Amendment rights were violated. This conclusion is based on the invasiveness of the search (i.e. use of the "labia lift" despite less intrusive alternatives), which is one of the most invasive procedures conducted in penological institutions, the group setting of the search, in which inmates could not avoid viewing each other, the lack of privacy within that group setting, and—most importantly—the lack of a penological purpose or informed justification for not providing individualized privacy. There is substantial evidence in the record that the manner of the search was an "unnecessary [and] unjustified response to problems of jail security." *Florence*, 566 U.S. at 322–23.

### F. Conclusion

There is no question that Defendants had the right to conduct a VBC search on Plaintiffs. However, under *Turner*, Defendants must justify their refusal to adopt ready alternatives. They have not

:
_____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-01649-SVW-JEM | Date | June 7, 2017 |
|---|---|---|---|
| Title | *Mary Amador v. Leroy D. Baca, et al.* | | |

produced any evidence explaining why they conducted these searches, in this fashion, for seven years. To the contrary, the evidence shows that what Defendants claim was not feasible, was in fact feasible, available, and inexpensive. Since there were readily available alternatives, with minimal costs of accommodation, on this record the Court GRANTS summary judgment in Plaintiffs' favor.

**VI.    QUALIFIED IMMUNITY**

Plaintiffs' complaint also named eight individual defendants in their personal and official capacity who are current or former high-ranking LASD officials. Defendants moved for summary judgment against these claims arguing that the official capacity claims are duplicative of the *Monell* claim against the County, *see Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985) (official capacity suit against an individual defendant is to be treated as a suit against the employing public entity), and that the individual claims should be dismissed due to qualified immunity.

Plaintiff did not oppose either of these arguments. The Court finds a suit against individual defendants in their official capacity for damages is duplicative of a *Monell* claim, and thus GRANTS summary judgment against these claims. *See id.*; *see also Paeste v. Gov't of Guam*, 798 F.3d 1228, 1235–6 (9th Cir. 2015) (reiterating that individuals sued in their official-capacity for damages, as opposed to injunctive relief, are not "persons" within the meaning of § 1983).

As to the individual capacity claims, the complaint makes no allegations as to the actions these individual defendants engaged in. Defendants state, and Plaintiffs do not dispute, that the individual defendants did not conduct any of the unconstitutional searches themselves. As to their role in creating the search policy, there are no allegations as to which defendant created or implemented any aspect of the policy or even which time period these defendants maintained their high-ranking positions within LASD. Thus, the Court cannot discern any individual activity in which any of these defendants would be personally liable, and therefore GRANTS summary judgment in their favor.

Accordingly, the Court GRANTS summary judgment in favor of Plaintiffs on its Fourth Amendment claim and GRANTS summary judgment in favor of the individual Defendants.

                                                           :

Initials of Preparer        PMC