**Exhibit A**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY AMADOR, *et al*., | Case No. CV 10-01649 SVW (JEMx) |
| Plaintiffs, | [Honorable Stephen V. Wilson] |
| vs. | **SETTLEMENT AGREEMENT** |
| COUNTY OF LOS ANGELES, *et al*., | |
| Defendants. | |

Plaintiffs Mary Amador, Lora Barranca, Diana Paiz, Diane Vigil, Alisa Battiste, Felice Cholewiak, Evangelina Madrid, Myeshia Williams, and Nancy Briseño (individually and on behalf of the classes previously certified in this case (*see*, Doc. No. 327) (collectively "Plaintiffs") and Defendants County of Los Angeles ("the County"), the Los Angeles Sheriff's Department, its prior Sheriff, Leroy Baca, and Sammy Jones, Timothy Cornell, John H. Clark, Stacey Lee, Dennis Burns, Gerald K. Cooper and Daniel Cruz (collectively "Defendants"), by and through their respective counsel, hereby submit the following Settlement Agreement ("Settlement Agreement").  Plaintiffs and Defendants are referred to collectively herein as "the Parties."

1

# I.   RECITALS

Plaintiffs are former inmates at the Century Regional Detention Facility ("CRDF"), a jail facility operated by the Los Angeles County Sheriff's Department ("LASD"), which houses female convicted inmates and pretrial detainees.

Plaintiffs filed this action in the United States District Court for the Central District of California ("Court") on behalf of themselves and a class of similarly situated inmates on March 5, 2010.

Plaintiffs alleged various violations of the Federal and State Constitutions, of 42 U.S.C. §1983, and California Civil Code §52.1 associated with the LASD's strip/visual body cavity search practices at CRDF during the class period.

The District Court, after multiple hearings and several class certification orders that went through a number of iterations, certified the class on November 18, 2016. *See*, Doc No. 327 (Order Granting Renewed Motion For Class Certification). The certification was for liability only under Fed.R.Civ.P Rule (c)(4).

On June 6, 2017, the District Court granted summary judgment on liability issues to the Plaintiff class on their claim for *Monell* liability under the Fourth Amendment, and dismissed claims against the individual Defendants, finding qualified immunity applied. . *See*, Doc No. 361. The District Court's liability summary judgment ruling found it unnecessary to address changed conditions at CRDF because the searches violated the Fourth Amendment for the whole Class Damages Period. The changes in conditions are nonetheless factored into this Settlement.

Subsequently, the Parties entered into a protracted arm's length mediation process with the assistance of Retired United States District Judge George King, including three in-person mediation sessions with Judge King and numerous telephonic sessions (both the Parties separately with Judge King and among the Parties and Judge King).

The Parties have reached a proposed Settlement subject to the approval of the Court. It is understood and agreed that this Settlement is the compromise of

2

disputed claims by the Named Plaintiffs and Class Members, and that the payments made are not to be construed as an admission of liability by any of the Defendants. The Defendants deny liability, preserve all defenses they have asserted or could present in these proceedings or any future appeal, and intend merely to avoid the expense of further litigation.

In summary, this Settlement provides for dismissal of this case with prejudice in exchange for a non-reversionary Class Fund of $53 Million, from which costs of administration, litigation costs and attorney's fees will be paid, and the remainder of which would be distributed to Class Members who make viable claims subject to certain requirements for a minimum number of claims made (or a portion of funds would go to *cy pres* distributions as defined herein).

As a form of indirect compensation to absent Class Members, up to $3 million of the Class Fund will be used to fund contracts between the County of Los Angeles, on the one hand, the Moss Group and the Center for Gender and Justice ("CGJ"), on the other hand (the "Moss/CGJ Contracts"). Both organizations have significant experience in assisting local, state, and national correctional agencies in the development of gender-responsive and trauma-informed practices, programming, and services. The purpose of the contracts shall be to help develop a strengthened model of gender-responsive policy and operational practice at all LASD facilities that house female inmates (including CRDF and Twin Towers), while enhancing the culture of safety and respect for both staff and the inmate population. The contracts will include preliminary assessment/evaluation, and may also include the provision of expertise, leadership, technical assistance, and services in the following areas: system analysis/operations, policy review and development, strategic planning, program development/inmate services, training/culture, and ongoing assessment. The Moss/CGJ contracts shall be secured in furtherance of the Los Angeles County Board of Supervisors' effort to facilitate the design and implementation of gender-responsive systems within the Los Angeles County criminal justice system, as reflected in the Board of Supervisors' February 2019

3

motion titled "Building a Gender-Responsive Criminal Justice System."

## II.  DEFINITIONS

The listed terms used throughout this Settlement Agreement are intended to have the following meanings:

1. "Administrator" means the Class Administrator, as agreed upon (or to be agreed upon) by the Parties and appointed by the Court to review and determine the validity and amount of claims submitted by a Settlement Class Member ("SCM") (as defined herein), according to the procedures set forth herein.

2. The "Bar Date" is the date by which any Class Member who wishes to receive payment pursuant to the Settlement Agreement and therefore is a Settlement Class Member ("SCM") as defined below must file his/her Proof of Claim and Release Form, file objections to this Settlement Agreement, or request to be excluded from the class (opt-out). The Bar Date shall be calculated as the close of business on the 150th day after the last day of mailing of the Class Notice (or, for those whose initial notice is by email and text message, the day that they were to be sent such electronic notice in lieu of regular mail, as provided in Section X), which is up to occur within two consecutive business days from beginning to end, as is addressed in ¶ 39, i.e., the Administrator must mail all notices within a two day period).

3. "Class Counsel" herein refers to Barrett S. Litt and Lindsay Battles of KAYE, McLANE, BEDNARSKI & LITT.

4. "Class Counsel Attorney's Fees" refers to the amount awarded by the Court as Class Counsel's attorney's fees in this case, to be approved by the Court upon motion by Class Counsel.

5. "Class Counsel Litigation Costs" refers to the amount of costs awarded by the Court upon motion by Class Counsel.

6. The "Class Fund" refers to the amount of $53 Million as damages compensation to the Class, to be paid by Defendants to the Administrator,

4

and out of which the costs of Administration, Plaintiffs' counsel expert/consulting, litigation and mediation fees, incentive awards and compensation to Class Members will be paid.

7.  The "Class Damages Period" refers to the period between March 5, 2008 (two years before the filing of the complaint) and January 1, 2015 (the date scanners or privacy partitions were available for all CRDF strip searches).

8.  A "Class Member" means any member of the certified Damages Classes. Although the Court certified two damages classes, one from March 2008 through June 30, 2011, and one from July 1, 2011 through January 1, 2015 (because scanners were then being used for all strip searches unless the inmate requested a strip search in its place), for purposes of this settlement and because summary judgment was granted to both classes, the Damages Class is defined for settlement purposes as "any female inmate at CRDF inmate who, upon their admission or return to CRDF, were visual body cavity searched in groups, without individual privacy between March 5 2008 (two years before the filing of the complaint) and January 1, 2015."

9.  The "Class Notice" means the notice to be sent to Class Members regarding this Settlement, in a form substantially similar to that attached hereto as Exhibit B, or as otherwise approved by the Court, and such other summary notice to be published in accordance with the terms of this Settlement Agreement.

10. The "Class Member List" is a list of Class Members.  It is based solely on the records of the LASD. Only persons appearing on that list qualify as Class Members.

11. The "Database" is the information provided in electronic form to the Administrator which information has been compiled from the electronic records of the LASD, as filtered to identify those meeting the class definition by the Parties' experts.

12. The "Defendants" are the County of Los Angeles, the Los Angeles Sheriff's Department, its prior Sheriff Leroy Baca, Sammy Jones, Timothy Cornell, John H. Clark, Stacey Lee, Dennis Burns, Gerald K. Cooper and Daniel Cruz.

13. The "Effective Date" is the date on which the District Court issues an Order granting final approval of the Settlement Agreement, except that if any objections to the settlement were submitted to the Court, the Effective Date is the date of the final resolution of any appeal of the Final Approval of this Settlement Agreement, or if no such appeal is filed, the expiration of the deadline for filing a Notice of Appeal.

14. The "Fairness Hearing" is the hearing on the fairness of this Settlement, which date will be set by the Court.

15. The "Final Order of Approval and Settlement" is the Order finally approving the settlement, entered by the Court (which may also be referred to herein as "Final Order").

16. The "Lawsuit" refers to the action styled *Amador et al. v. Baca et al.*, Case No. CV 10-01649 SVW (JEMx)..

17. The "Motion for Attorney's Fees and Costs" is Class Counsel's application for Attorneys' Fees and Costs.

18. The "Named Plaintiffs" or "Class Representatives" refers to the plaintiffs named in the Fourth Amended Complaint to this suit, who are Mary Amador, Lora Barranca, Alisa Battiste, Nancy Briseño, Felice Cholewiak (Vargas), Evangelina Madrid, Diana Paiz, Diane Vigil and Myeshia Williams. While Lora Barranca, Diana Paiz and Diane Vigil were named solely as injunctive relief plaintiffs under §1983, they were damages plaintiffs under state law and Class Members. For purposes of this Settlement, no distinction is made between or among the Named Plaintiffs.

19. "Preliminary Approval" is the Court's determination that the Settlement is within the range of possible approval and therefore that Class Notice should

6

be sent to Class Members and a Fairness Hearing should be set by the Court.

20. The "Preliminary Approval Order" is an order entered by the Court preliminarily approving the Settlement, after which Class Notice, the opportunity to object and Opt Out, and entry of a Final Order of Approval and Settlement would occur.

21. An "Opt-Out" is any Class Member who files a timely request for exclusion, pursuant to the terms of this Settlement Agreement, to be excluded from the Settlement Class. (If used as a verb, it refers to the process of filing such exclusion.)

22. The "Proof of Claim Form" means the Proof of Claim and Release Form required to be used in order to make a claim for payment under this Settlement. A copy of the proposed Proof of Claim Form is attached as Exhibit C. The pre-prepared Claim forms shall be bar coded to link with the Class Member's Database information and shall contain the damages to which the Class Member is entitled if s/he were to receive the full damages provided for in this agreement.

23. "Released Person" means the Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with all past, present and future officials, employees, representatives, attorneys, outside counsel, and/or agents of Los Angeles County. "Released Person" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons.

24. "Remainder" refers to the amount in the Class Fund after payment of Class Counsel's Attorney Fees, Class Counsel's Litigation Costs, mediation costs, and the Moss/CGJ Contracts. The "Minimum Remainder" is a figure used for purposes of determining whether *cy pres* payments are made and is based on the estimate of the maximum fees to be sought (1/3 of the $53 Million Fund), estimated litigation and class administration costs ($1.5

7

Million), and the Moss/CGJ Contracts (maximum $3 Million); thus the Minimum Remainder is estimated to amount to $30,883,000, which the Parties agree to round up to $31,000,000.

25. The "Settlement" refers to this agreement.

26. A "Settlement Class Member" ("SCM") means any Class Member as defined above (whether or not she files a Timely Claim form), including representatives, successors and assigns, who does not file a valid and timely Request for Exclusion as provided for in this Settlement Agreement.

27. The "Settlement Fund" is the fund established by the Administrator with funds transferred from Defendants from which the damages to the Class Representatives and Class Members will be paid. The Defendants will pay all moneys they are obligated to pay under the Preliminary Approval Order, and the settlement approved by the Court, if any, into the Settlement Fund.

28. "Strip Search" means a search conducted by LASD personnel on a Class Member (as defined above) in which the person was required to remove her clothing, including underwear, in the presence of a corrections officer and/or expose her breasts, genitals or body cavities for a visual inspection. All persons appearing on the Class Member List were subjected to a strip search as defined herein.

29. A "Timely Claim" is one filed a) within the 150-day window provided by the notice to be sent to the class, and b) to the extent the Court approves, late claims (i.e., claims filed after the Class Notice period) that are filed prior to the Final Approval Hearing.

### III.   DISCLAIMER OF LIABILITY

1.      The Parties acknowledge and agree that all undertakings and agreements contained in this Settlement Agreement have been agreed to solely for the purpose of finally compromising all questions, disputes and issues between them relating to the litigation. This Settlement Agreement and any proceedings taken pursuant hereto shall not in any event be construed as, interpreted as, or

8

deemed to be evidence of an admission or concession by either party for any purpose, or deemed to constitute a waiver of any legal position or any defenses or other rights which the Parties might otherwise assert in any context. Neither this Settlement Agreement nor any provision contained therein, nor any documents related hereto, nor any negotiations, statements or testimony taken in connection herewith may be offered or received as evidence, or used for any other purpose, or in any suit, action or legal proceeding which either of them have or in the future may have with any other person, as an admission or concession of liability or wrongdoing on the part of either party, except in connection with any action or legal proceeding to enforce this Settlement Agreement. The Parties have reached this Settlement through arms-length negotiations and to avoid the costs and delays of further disputes, litigation and negotiations among them and after extensive negotiations with an independent mediator, subject to approval by the Court. This Settlement Agreement has been entered into without any concession of liability or non-liability whatsoever and has no precedential or evidentiary value whatsoever.

## IV.  FINANCIAL TERMS OF SETTLEMENT AGREEMENT AND CLASS DAMAGES ALLOCATION FORMULA

2.      The Class Fund is the amount of $53,000,000. The class administration costs shall be paid out of that fund, as will any incentive awards to the Class Representatives as approved by the Court. (Class Counsel's Litigation Costs will be addressed in Class Counsel's Motion for Attorney's Fees and Costs.) The Remainder of the Class Fund shall be distributed to the Class Members (including Named Plaintiffs/Class Representatives) under the formula terms provided in this Agreement.

3.      Subject to approval of the Court at the hearing regarding the Final Order of Approval and Settlement, the following incentive awards shall be paid to the Named Plaintiffs (in addition to the share of the Class Fund to which they are entitled as Class Members). Class Counsel represent that they have no prior agreement with any Named Plaintiff to seek such awards, nor do they have any

9

commitment to propose them. They are proposed at the initiative of Class Counsel and are intended to reflect Named Plaintiffs' commitment to, and active assistance in advancing, this Lawsuit since it was filed in 2010:

| NAME | INCENTIVE AWARD |
|---|---|
| Mary Amador | $10,000 |
| Lora Barranca | $10,000 |
| Alisa Battiste | $10,000 |
| Nancy Briseño | $10,000 |
| Felice (Cholewiak) Vargas | $10,000 |
| Evangelina Madrid | $10,000 |
| Diana Paiz | $10,000 |
| Diane Vigil | $10,000 |
| Myeshia Williams | $10,000 |
| **TOTAL** | **$90,000** |

4.      It is not currently possible to determine the amount of the Remainder before the hearing regarding the Final Order of Approval and Settlement, where the final amount of Class Counsel's Attorney's Fees and Costs awards, class administration costs, and the Moss/CGJ Contracts will be determined.

5.      The formula for distribution of the Remainder has been developed by Class Counsel and, if approved by the Court, will be summarized in the Class Notice to be sent to Class Members. The formula is designed to account for the fact that the alleged severity of challenged conditions varied depending on the time period the Strip Search occurred (with the most intrusive conditions before July 2011 and least intrusive conditions after February 2014 when the bus bay became enclosed and had heating), the number of Strip Searches an inmate experienced and the weather conditions when the Strip Search occurred.

6.      To briefly summarize, Class Counsel's assessment of these variations in conditions, which are factored into the class damages allocation formula, are as follows:

| TIME PERIOD | CONDITIONS |
|---|---|
| **2/26/2014 – 1/31/2015**<br><br>**(Core Conditions Applicable to All Class Members Regardless of Time Period)** | **Conditions:**<br><br>(1) female inmates required to participate in group Strip Searches in which the labia lift procedure was used;<br>(2) female inmates required to publicly identify if they were menstruating, remove feminine hygiene products in view of other inmates; and<br>(3) female inmates required to expose their naked body – including bare pubic region and bare breasts – in the presence of a group.<br>(4) inmates searched in groups of 24 inmates (or more, see below). |
| **4/1/2013 – 2/25/2014** | **Conditions:**<br><br>• All above conditions<br>*plus*<br>• Group Strip Searches occurred in a converted bus garage with a chain link fence roof with a tarp on it and no heaters. |
| **7/1/2011 – 3/30/2013**[1] | **Conditions:**<br><br>• All above conditions<br>*plus*<br>• Inmates searched in groups larger than 24 inmates<br>• Inmates required to put clothing directly on the ground. |
| **3/5/2008 – 6/30/2011** | **Conditions:**<br><br>• All above conditions<br>*plus*<br>• Deputies simultaneously searched both lines of female inmates so that inmates were directly viewing each other during the Strip |

---

[1] This subclass was because LASD reduced its class sizes to a maximum of 25 and installed tables on which clothes could be placed in April 2013.

AMADOR CLASS ACTION SETTLEMENT AGREEMENT

| TIME PERIOD | CONDITIONS |
|---|---|
|  | Search. |

7.      Based on the above considerations, Class Counsel have devised a distribution model in which Class Members are compensated based on the number of Strip Searches they endured, with searches weighted based on the time period in which they occurred (which, in turn, corresponds to the severity of conditions). Each Strip Search is assigned a point-value which will translate to a per-diem dollar value at the time of distribution.  Class Members receive the designated number of points based on the number of Strip Searches in each category.

8.      The chart below shows the categories, conditions associated with each category, and points assigned to each category.

| Time Period | Points Per Strip Search |
|---|---|
| 3/8/2008 – 6/30/2011 | 100 |
| 7/1/2011 – 3/31/2013 | 90 |
| 4/1/2013 – 2/25/2014 | 80 |
| 2/26/2014 – 1/31/2015 | 70 |

9.      The distribution model also provides an additional 10-points for any Strip Search conducted at a temperature of 70 degrees or less.

10.      The per-search points are assigned to each Class Member, up to their 50th search. The "50-search cap" applies to less than .04% of the Class. This cap is to ensure that outliers who have outsized claims do not distort the meaningfulness of the recovery to the remaining Class Members. (Such outliers would be entitled to opt out and pursue their own claims if they so choose.)

11.      That Class Member's point total is the sum of all their assigned points. The final distribution will be based on the total points for each Class Member who filed claims, divided by individual points assigned to each claiming Class Member.

(If, for example, there is a total of 1,000,000 points for the aggregated Timely
Claims, and Class Member "X" had a total of 200 points, Class Member "X" would
receive .02% (or .0002) of the Remainder; if the Remainder is the Minimum
Remainder of $31 Million, that Class Members would receive $6,200).  These
figures are purely hypothetical and should not be considered as reflective of any
likely award. Because it is anticipated that not all Class Members will make Timely
Claims, and this is a non-reversionary fund (except as provided in Section VI,
below, for *cy pres* payments in the event of a low claim rate, which the Parties do
not anticipate), a claiming Class Member's share of the Remainder will be
determined based on that Class Member's share of the total points for Class
Members who made Timely Claims.

      12.    No Class Member who filed a Timely Claim will receive less than
$200 (the minimum will be at least $200 but may be adjusted upwards) subject to
the limit of the Class Funds available in the Remainder. The minimum provision is
designed to ensure that all Class Members who submit Timely Claims receive some
recovery.

      13.    None of the Class Fund shall revert to the County. Accordingly, as
explained above, the money per Class Member making a Timely Claim will
increase proportionately to the extent that fewer Class Members make a claim.

      14.    Class Counsel intend to submit a separate Motion for Attorney's Fees
and Costs to be heard at the hearing regarding a Final Order of Approval and
Settlement, to be analyzed under the standards for an award of fees and costs to a
prevailing plaintiff under the percentage of the fund doctrine. While the motion will
seek a percentage of the Class Fund as a fee award, subsumed within that request
will be any statutory attorney's fee to which Class Counsel would be entitled under
42 U.S.C. § 1988 or Cal. Civil Code § 52.1(h). The Class Notice will advise Class
Members of Motion for Attorney's Fees and Costs and their right to object to it.

      15.    The LASD represents that to the best of its knowledge, it has provided
all the electronic data in its possession, which it is legally authorized to produce,

regarding Class Members necessary to both identify and contact Class Members. The LASD shall provide to the Administrator, to the extent that such information has not already been provided, any such additional information in its possession which it is legally authorized to produce. Such information shall include date of birth, social security number (SSN), driver's license/state ID number, and most recent contact information (address, phone and any other available contact information). In addition, LASD shall provide to the Administrator and Class Counsel the data from the Automated Justice Information System ("AJIS") Released-to-Agency field indicating whether a Class Member was released to the custody of another law enforcement agency. This information may only be used to reach out to Class Members to ensure they receive the Class Notice and are aware of how to file a claim pursuant to this Agreement. LASD will make a written request to the California Department of Corrections and Rehabilitation ("CDCR"), which request will include a list of Class Members who were transferred to CDCR from LASD custody, and request that CDCR: (1) advise the Administrator of where and how the Class Notice to those Class Members still in CDCR physical custody should be sent; and (2) provide the Administrator with the most recent contact information in CDCR's records (including records in the Division of Adult Parole Operations, where applicable) for each Class Members who is no longer in CDCR physical custody. When making the foregoing request to CDCR, LASD will provide to CDCR any individualized identifying information in its possession that it is legally authorized to include that could assist CDCR in identifying Class Members.

If CDCR provides a response, LASD will then advise Class Counsel of CDCR's response, and if CDCR either fails to respond or refuses to provide assistance, Class Counsel may seek Court assistance in securing the cooperation of CDCR to effectuate service of the Class Notice and to obtain the most up to date contact information for Class Members. Neither the County nor the LASD will have any further obligation with respect to efforts to obtain contact information for

14

Class Members from CDCR beyond the efforts described above, except that it will engage in any reasonable follow-up requested by CDCR.  LASD will likewise have no further obligation to assist with securing cooperation regarding the provision of Class Notice to Class Members still in CDCR custody.

Nothing in this agreement precludes Plaintiffs from seeking a court order authorizing the LASD to provide CII and FBI numbers directly to CDCR as part of efforts to identify Class Members and provide Class Notice to individuals who were previously transferred to CDCR. Should Plaintiffs file such a motion, they will serve the Attorney General of the State of California and the Federal Bureau of Investigation with the motion in order to provide each with the opportunity to be heard. Plaintiffs will not seek access to such records for themselves or for the Administrator.

## V.    RELEASES AND OTHER SETTLEMENT TERMS

16.    The Parties enter into this Agreement solely for the purposes of this Settlement and implementation of the Settlement. If the Settlement fails to be approved or otherwise fails consummation, then this Settlement Agreement is hereby withdrawn.

17.    An SCM who complies with the requirements set forth in this Settlement Agreement and files a Timely Claim form will be paid specified sums determined by the distribution process set forth above, which payment shall be in full satisfaction of all claims of that SCM.

18.    The Settlement Agreement, as of the Effective Date, resolves in full all claims against the Released Persons by all of the SCMs, including the Named Plaintiffs, involving violations of law or constitutional rights, including, without limitation, their equal protection rights under federal and California law, their rights under 42 U.S.C. § 1983 and California Civil Code § 52.1, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which arise from the class-wide factual allegations alleged in the Fourth Amended Complaint, which is the operative

pleading in this matter ( "Covered Claims").

19.    When the Settlement Agreement is final, as of the Effective Date, all SCMs, including the Named Plaintiffs, waive all rights to any and all claims relating to damages or reimbursement of any kind for the Covered Claims. This waiver and release shall include a full release and waiver of unknown rights regarding the Covered Claims that may exist as of the Effective Date.

20.    As of the Effective Date, the SCMs, including the Named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by the Released Persons with respect to the Covered Claims during the class period; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code § 1542, which provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

21.    This Settlement Agreement, together with its exhibits, contains all the terms and conditions agreed upon by the Parties regarding the subject matter of the instant proceeding, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Settlement Agreement shall be deemed to exist, or to bind the Parties, or to vary the terms and conditions contained herein, except as expressly provided herein.

22.    Each SCM shall be deemed to have submitted to the jurisdiction of the Court.

23.    This Settlement Agreement is subject to and conditioned on entry by the Court of a Final Order of Approval and Settlement and the issuance of the final order of dismissal by the Court, providing the specified relief as set forth below, which relief shall be pursuant to the terms and conditions of this Settlement Agreement and the Parties' performance of their continuing rights and obligations

16

hereunder. The Final Order of Approval and Settlement shall be deemed final on the Effective Date. Such Final Order of Approval and Settlement shall:

a. Dismiss with prejudice all claims in the action as to the Released Persons including all claims for monetary damages, declaratory relief and injunctive relief, each side to bear its own costs and fees except as otherwise provided for in this Settlement Agreement;

b. Order that all SCMs are enjoined from asserting against any Released Person any and all claims that any SCM had, has or may have in the future based on the Covered Claims;

c. Release each Released Person from the claims that any SCM has, had or may have in the future against such Released Person arising out of the Covered Claims;

d. Determine that this Settlement Agreement is entered into in good faith, is reasonable, fair and adequate, and in the best interest of the Class; and

e. Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Settlement Agreement, including Defendants and SCMs, to administer, supervise, construe and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of all Parties.

24.    The Parties will take all necessary and appropriate steps to obtain preliminary and final approvals of the Settlement Agreement, and dismissal of the action with prejudice, all Parties bearing their own fees and costs unless otherwise set forth in this Settlement Agreement. If the Court gives final approval of this Settlement Agreement, and if there is an appeal from such decision, the Parties will defend the Settlement Agreement.

## VI.    CY PRES DISTRIBUTION IN THE EVENT OF A LOW CLAIM RATE

25.    In order to ensure that Class Members do not receive a windfall because there are relatively few claims filed, the Parties agree that, if the total claims do not amount to the Minimum Remainder based on the following formula, the difference between those aggregated claims and Minimum Remainder will go to

the organizations identified in ¶ 30. The formula to determine whether such *cy pres* payments are to be made (referred to as the "*Cy Pres* Formula" shall be as follows:

| CY PRES FORMULA | |
|---|---|
| **# SEARCHES** | **AMOUNT** |
| 1-3 | $5,000 |
| 4-6 | $10,000 |
| 7-10 | $15,000 |
| 11+ | $20,000 |

26.     Thus, by way of example only, if the Minimum Remainder is $31 Million, 4000 Class Members filed claims (which the Parties agree is likely a low claim rate), and the average of their claims based on the *Cy Pres* Formula amounted to $9000 per claimant, the total would be $36,000,000, and no *cy* pres distribution would apply. In contrast, if 3000 people filed claims based on the same average $9000 per claimant and same $31 Million Minimum Remainder, then $4,000,000 (the difference between the $31 Million Minimum Remainder and the $27,000,000 claimed amount based on the *Cy Pres* Formula), would go to the *Cy Pres Fund.*

27.     The foregoing formula only applies in the event that the total claims do not amount to the Minimum Remainder based on the *Cy Pres* Formula. Otherwise, the allocation formula set out in Section IV, above, applies.

28.     The *Cy Pres* funds will not be returned to the County's general fund but will instead be provided to non-profit organizations or programs which provide gender-responsive services to female inmates in LASD custody.  At the time that it is determined that any *Cy Pres* funds are to be distributed, counsel for the Parties in this case and the LA County Board of Supervisors will work in good faith to identify the organizations or programs to receive those funds.  If they cannot agree, the Parties will separately brief the Court, and the Court will determine the organizations and/or programs to which the *Cy Pres* funds will be paid.

## VII.   RESOLUTION AND PAYMENT OF CLAIMS

29.     Defendants agree to the division of funds between Incentive Awards

and the Remainder as proposed by Class Counsel subject to the approval of the
Court.

## VIII.  CLASS COUNSEL FEES

30.     Class Counsel will file a Motion for Attorney's Fees and Costs on a
percentage of the fund basis, and the payment of said fees and costs is subject to
Court approval. Class Counsel will not seek more than 1/3 of the $53 Million Class
Fund as the amount of attorney's fees requested; Class Counsel may seek less but
may not seek more. (This 1/3 cap is separate from Class Counsel's costs, i.e., Class
Counsel may request up to 1/3 of the Class Fund plus costs.)

## IX.    CLASS ADMINISTRATOR

31.     Counsel for the Parties will jointly agree on the selection of the Class
Administrator and, if they cannot so agree, will submit their suggestions to the
Court and the Court will determine the Administrator.  The Parties understand the
importance of a rapid process for choosing the Class Administrator and are
committed to reaching a joint selection as soon as practicable.

32.     The Administrator shall be responsible for taking any steps deemed
appropriate and necessary by Class Counsel to notify the Class Members of their
rights to file claims, and to assist them in doing so. Class Notice shall be issued
electronically by email and text message (for all Class Members whose email
addresses and mobile phone numbers can be and have been obtained) by the date
set in the Preliminary Approval Order for the initial mailing of Class Notice. On
that same date, Class Notice shall be provided by regular mail for all Class
Members for whom an email address and mobile phone number have not been
obtained, for all incarcerated Class Members.

33.     For those Class Members whose initial Class Notice was sent by the
combination of email and text message who have not responded by filing either a
claim or an Opt Out within 30 days, they will be sent by regular mail the Class
Notice previously provided to the other Class Members whose Class Notice was
sent by regular mail, along with a statement that they were sent by email and text

19

message a Class Notice as well, and this is being sent to ensure that they have seen the Class Notice. (*See,* ¶ 40 for elaboration.)

34.     The Administrator's duty shall include the use of normal and customary means to search for a Class Member's email addresses, mobile phone numbers and last known mailing addresses, including the use of a postal database and other specialized databases, when mail is returned. As indicated above, the Administrator shall initially send electronic copies of the Class Notice to any inmates for whom email addresses and mobile telephone numbers are ascertainable and at the same time send a hardcopy version and claim form to any Class Member whose email and mobile phone numbers are not ascertainable, as well as any Class Members who are currently incarcerated in California State prisons. (The Administrator is responsible for making reasonable efforts to determine Class Members who are now incarcerated in California state prisons). The Administrator will also propose economically viable and likely productive forms of notice through the use of social media and online advertising.

35.     Beginning when it is first retained after the Court approves its appointment, the Administrator will begin to obtain as many Class Member email addresses and mobile phone numbers as reasonably possible. Before the filing of the Motion for Preliminary Approval, the Administrator will advise the Parties and the Court of when the Administrator believes it can reasonably obtain available Class Member email addresses, phone numbers and mailing addresses, and the date for mailing the Class Notice shall be set with that time in mind.

36.     Notice shall proceed as follows:

> 1)  Initial Class Notice shall commence with email **and** text notices for all Class Members whose email addresses and/or mobile phone numbers are ascertainable (assuming both are ascertainable, Class Members will receive two forms of electronic notice; if either the email address or mobile phone number cannot be obtained, the notice will be sent via the

available means).

2) On the same day, notice by regular mail shall be sent to all Class Members for whom *either* an email address or mobile phone number or both could not be ascertained. This means that all Class Members will receive the Class Notice by either (1) email <u>and</u> text; or (2) regular mail *plus either* email or text (assuming one of the two is available); or (3) regular mail only (for those whose email and mobile phone numbers cannot be located).

3) Thirty days after the initial issuance of Class Notice, the Administrator will send notice by regular mail to all Class Members who were initially notified only by electronic means only (those who received notice by email and text) and who have not yet submitted claim forms along with the explanation that they were sent such electronic notice but this notice is being sent as well because they did not file a claim or exclude themselves from the settlement.

4) Throughout the notice period, the Administrator shall continue to send email and text notice if and when it learns additional email addresses/phone numbers for Class Members.

5) Where Class Notice is sent by email or text, the Class Administrator will periodically remind Class Members through email/text blasts to file claims. (If possible, procedures shall be implemented to remove Class Members from email/text blasts who have submitted claims).

37.    The Administrator shall complete the initial Class Notice within two consecutive business days. The second day of such mailing is the first day of the period for calculating the "Bar Date" (defined previously). That mailing shall occur as soon as practicable after the settlement has been Preliminarily Approved and no later than the date set by the Court.

38.    The Class Notice shall describe the particulars of the case, provide the class definition, provide information for claimants to contact the Administrator for a claim form, notify Class Members of establishment of a case website, and contain other usual and customary information. The proposed Class Notice is attached to this Settlement Agreement as Exhibit B.

39.    The Administrator will include in its bid a line item for the cost of obtaining from CDCR the identities of Class Members in CDCR custody to whom Class Notice should be sent at their CDCR housing location.

40.    The Parties discussed and presently do not intend to publish Class Notice in local newspapers because experience has shown that such notice is of little value in notifying Class Members. Instead, mail, email and text notice will be supplemented through summary publication in Prison Legal News (a publication widely distributed to inmates throughout the country); and through selective social media/online outreach directly targeting Class Members' Facebook and/or Instagram accounts.

41.    If specifically requested by Plaintiffs' counsel, the Defendants will seek to obtain the cooperation of CDCR (subject to the limitations set forth in Paragraph 15), and the Los Angeles County Probation Department to assist in locating Class Members, including, where Defendants believe legally permissible, providing more recent contact information for Class Members. The LASD will advise on its website of the existence of this Settlement and place a link on the website to connect viewers to the Administrator's website. The LASD will also post physical copies of the Class Notice (Exhibit "B") in CRDF Reception and Day Rooms.

42.    The request for bid to potential Administrators included requests for all such potential activities as well as suggestions for other ways of reaching potential Class Members. That request for bid also requested economically viable proposals for means by which Class Members can receive payment through electronic means rather than by check. There will also be requests to nonprofits that

22

address criminal justice reform, reentry or programs for former inmates to provide notice on their websites and to their mailing lists.

## X.   CLASS ADMINISTRATION FOR PROOF OF CLAIM FORMS AND PAYMENT SCHEDULE

43.   The Administrator shall be responsible for providing and receiving Proof of Claim Forms in paper and electronic format. The Administrator shall determine Class Membership and the amount of monies due each timely claiming Class Member based on the formula contained in Section IV.

44.   A Proof of Claim Form shall be deemed timely submitted under subsection (a) of Definition # 29 (Timely Claim) when received by the Administrator, or postmarked, on or before the Bar Date. Facsimile or electronic mail filings are acceptable and timely so long as they clearly indicate the case on which the claim is filed and are received on or before the Bar Date.

45.   If a Class Member submits a Claim Form that is deficient in some respect, the Administrator shall provide written notice by First Class Mail and a 30-day time limit to provide a proper Claim Form, which notice shall inform the Class Member of what she must do in order to submit a proper claim. Failure to cure the deficiency within the 30-day time limit will bar any further rights for consideration of eligibility to make a valid claim. So long as the original claim is received on or before the Bar Date, it shall be considered timely under sub-section (a) of Definition # 30 (Timely Claim) if any deficiency is cured within 30 days of the mailing of a notice of deficiency.

46.   Claim Forms received after the Bar Date shall be rejected. The Administrator will notify claimants of the rejection of untimely Claims.

47.   The $53 Million payment shall be made in three equal installments, the first of which shall be made 30 days after the Effective Date, the second of which shall be made twelve months after the first payment, and the third of which shall be made twelve months after the second payment.

48.   The costs of Class Administration through the Final Order of Approval

and Settlement and the first round of distribution of checks will be taken from the
first payment; 1/3 of the costs of the Moss/CGJ Contracts shall be taken (or held for
that purpose by the Administrator) from each payment.

49.     For each payment, 1/3 of the total Attorney's Fees and Costs awarded
by the Court to Class Counsel shall be paid into the KMBL Client Trust Account
and the remaining funds shall be paid to the Class Administrator for distribution
under the terms of this Agreement.

50.     The Class Administrator shall take its accrued and reasonably
projected costs of administration for that round from the second and third round of
payments.

51.     In addition to the first round of payment to qualifying Class Members,
the Administrator will advise them of the estimated time of payments to be made in
the second and third rounds and advise Class Members to keep them apprised of
any address changes.

52.     The Administrator shall make the first round of payments to SCMs
who have filed Timely Claims as ultimately determined by the Court in accordance
with this Settlement Agreement within a reasonable time not to exceed 90 days
after the Effective Date.

53.     If a check to an SCM is not cashed within three months of its mailing,
the Administrator shall hold the funds for nine additional months, during which
time it shall make reasonable efforts to contact the person to whom the uncashed
check was written to make arrangements for its cashing or reissuance. The
Administrator shall not make any payment to any SCM until all claims have been
submitted to the Administrator pursuant to the terms of this Settlement Agreement.

54.     Any SCM funds not cashed within one year of a check's initial mailing
shall be voided, and those funds ("Uncashed Funds") shall held for the next round
of payments. Where an SCM's check was not cashed within that one year period,
that SCM shall be eliminated as a qualifying Class Member, and that SCM's past
and future funds shall become part of the fund for future distribution to Class

Members, and allocated to the remaining SCM's during the next round of payments according to the Class Damages Allocation Formula contained in Section IV.

55.    Uncashed funds remaining in the Class Fund one year after the third round of payments shall be given as a donation to the *Cy Pres Fund* (see ¶ 30)*,* to be allocated equally among the qualifying organizations/ programs.

## XI.        EXCLUSION FROM SETTLEMENT CLASS—OPT OUTS

56.    Any Class Member who wishes to be excluded from this Settlement must submit a request to be excluded from the class, a process defined herein as "Opt-Out." The request for exclusion must be delivered to the Administrator, or postmarked, on or before the Bar Date or as the Court may otherwise direct.

57.    Although Named Plaintiffs are entitled to Opt-Out of the Settlement, Plaintiffs' counsel has conferred with each of them, and they all approve of and support the settlement, and have advised that they do not intend to Opt-Out.

58.    Each Class Member who chooses to Opt-Out from or object to this Settlement shall be deemed to have submitted to the jurisdiction of the Court with respect to his/her claim.

59.    Any Class Member who does not Opt-Out as set forth in this Settlement Agreement, shall be deemed conclusively to have become an SCM and to be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments herein, regardless of whether s/he files a claim form.

60.    Any Class Member who exercises an Opt-Out shall not share in any monetary benefits provided by this Settlement Agreement.

61.    The Administrator will periodically report to Defendants' counsel and Class Counsel regarding all Opt-Outs received and will determine and report to counsel the total number of Opt-Outs no later than 10 days after the Bar Date.

62.    If the total number of Opt-Outs exceeds 250 individuals, Defendants, in their sole discretion, may rescind this Settlement Agreement. In exercising this right of rescission, Defendants shall provide the Administrator and Class Counsel with written notice of rescission within 20 days after receipt of the Administrator's

25

report providing the total number of Opt-Outs. In the event Defendants exercise the right of rescission in accordance with this paragraph, any funds paid or deposited pursuant to this Settlement Agreement shall be returned to Defendants within 10 days of the rescission, less any expenses, fees and costs incurred by the Administrator.  Rescission shall return the Case to active litigation status.

## XII.   APPROVALS REQUIRED

63.    The Los Angeles County Board of Supervisors has approved the terms of this Settlement although, after Final Approval, it will have to finally approve the Final Order of Approval and Settlement.

## XIII.  DISPUTE RESOLUTION

64.    In the event of any disputes regarding implementation of the Settlement Agreement as set forth herein, they shall be resolved by the Court.

## XIV.  THE MOSS/CGJ CONTRACTS

65.    Plaintiffs and Class Counsel agree that the Moss/CGJ Contracts constitute Subsequent Remedial Measures in response to the events underlying this litigation pursuant to Rule 407 of the Federal Rules of Evidence (and similar statue statutes like California Evidence Code § 1151). Plaintiffs and Class Counsel also agree that any reports generated by the Moss Group or CGJ pursuant to contracts entered into under the terms of this Settlement Agreement are statements of those entities and do not constitute party statements of Los Angeles County or the LASD within the meaning of Rule 801 of the Federal Rules of Evidence (and similar statue statutes like California Evidence Code § 1220).

66.    The initial reports prepared by the Moss Group or CGJ paid for by funds provided under this Settlement Agreement will be provided to the Board of Supervisors and to Class Counsel. Class Counsel will also receive copies of the non-privileged portions of follow up reports back to the Board about the Moss Group/CGJ Reports or Contracts by any County agencies. All such reports provided to Class Counsel shall be confidential and will not be publicized or disclosed to any other party, except to the extent they have been made public by the Board.

67.     Any reports prepared by the Moss Group or CGJ are their analyses and recommendations. Nothing in this Agreement requires that they be accepted or implemented by Defendants, who reserve the right to decline to implement any recommendation made in the Moss/CGJ Contracts for any reasons.

## XV.   INTEGRATION

68.     This Settlement Agreement supersedes all prior communications regarding the matters contained herein between the Parties or their representatives. This Settlement Agreement is an integrated agreement and contains the entire agreement regarding the matters herein between the Parties, and no representations, warranties or promises have been made or relied on by any party hereto other than as set forth herein. This Settlement Agreement was drafted by counsel for the Parties hereto, and there shall be no presumption or construction against any party.

## XVI.  FAIRNESS HEARING AND FINAL ORDER OF APPROVAL

69.     Before this Settlement Agreement becomes final and binding on the Parties, the Court shall hold a Fairness Hearing to determine whether to enter the Final Order of Approval and Settlement. A proposed Final Order of Approval and Settlement shall be submitted to the Court incorporating the terms of this Settlement Agreement and addressing related information such as Objections and Opt-Outs.

## XVII. NO THIRD PARTY BENEFICIARIES INTENDED

70.      This Settlement Agreement does not and is not intended to create any rights with respect to any third Parties, except as otherwise provided herein.

## XVIII.    COUNTERPARTS

71.     This Settlement Agreement may be signed in counterparts.

DATED: July 15, 2019                    KAYE, MCLANE, BEDNARSKI & LITT

27

By: _____
Barrett S. Litt

By: _____
Lindsay Battles
Attorneys for Plaintiffs

DATED: _____          GLASER WEIL

By: _____
Andrew Baum
Attorneys for Defendants

By: _____
                Barrett S. Litt


By: _____
                Lindsay Battles
            Attorneys for Plaintiffs


DATED: _July 15, 2019_____          GLASER WEIL

                                     By: _____
                                                Andrew Baum
                                         Attorneys for Defendants

AMADOR CLASS ACTION SETTLEMENT AGREEMENT

LIST OF EXHIBITS TO SETTLEMENT AGREEMENT

Exhibit B          Class Notice

Exhibit C          Proof of Claim and Release Form

AMADOR CLASS ACTION SETTLEMENT AGREEMENT