1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11 | MARY AMADOR, et al.,

Case No. CV 10-01649 SVW (JEMx)

12 |            Plaintiffs,

[Honorable Stephen V. Wilson]

13 |      vs.

**[PROPOSED AMENDED]
PRELIMINARY APPROVAL ORDER;
EXHIBITS**

14

15 | SHERIFF LEROY D. BACA, etc., et al.,

16

**Date: _____December 2, 2019
Time: ____ _1:30 P.M._
Place:      Courtroom 10A__**

17 |            Defendants.

18
19
20
21
22
23
24
25
26
27
28

The parties have submitted this joint Preliminary Approval Order of the Class Settlement for the Court's review, including the following exhibits: the Executed, Revised Settlement Agreement (Exhibit A hereto) (the "Revised Settlement Agreement"), the Red-Lined Draft Revised Settlement Agreement (Exhibit B hereto), the amended Class Notice (Exhibit C hereto), the Claim Form (Exhibit D hereto),and the Class Administrator bid (Exhibit E hereto). Counsel for the parties, who signed the Revised Settlement Agreement, represent that their respective clients have approved the settlement.

The Named Plaintiffs/Class Representatives are Mary Amador, Lora Barranca, Diana Paiz, Diane Vigil, Alisa Battiste, Felice Cholewiak, Evangelina Madrid, Myeshia Williams, and Nancy Briseño. Plaintiffs are former (or current at the time of the filing of the complaint) inmates of the Los Angeles Sheriff's Department's ("LASD") women's jail known as Century Regional Detention Facility (hereafter "CRDF"). Plaintiffs contended that the LASD routinely subjected female inmates to highly invasive body cavity inspections, in large groups (often over 40 women), without individual privacy, and despite the absence of a penological justification and the ready availability of alternatives, in violation of the Fourth Amendment. The Court granted summary judgment on liability. See Dkt. 361. The Defendants are the County of Los Angeles, the Los Angeles County Sheriff's Department, former Los Angeles County Sheriff Leroy Baca, and various individual members of the LASD.

While Defendants continue to dispute the validity of Plaintiffs' allegations, the parties have agreed to enter into this Settlement Agreement to avoid the mutual risks of litigation.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

**I.        PRELIMINARY APPROVAL OF SETTLEMENT**

1.        This Order incorporates by reference the definitions in the Settlement Agreement, a copy of which is attached to this Order as Exhibit A, and also

1

incorporates Exhibits C through E to this Order (which are described above). All terms defined therein shall have the same meaning in this Order.

2.      The Settlement Agreement, as revised, is hereby preliminarily approved, subject to further consideration thereof at the Fairness Hearing provided for below. The Court finds that the non-reversionary class settlement fund of $53,000,000 and its proposed allocation, and the other provisions contained within the Settlement Agreement, are within the range of what would constitute a fair, reasonable, and adequate settlement in the best interests of the Class as a whole, and that the terms of the Settlement Agreement otherwise satisfy the Federal Rules of Civil Procedure 23(e) and due process requirements.

## II.      <u>DEADLINES FOR NOTICE, FILING OBJECTIONS AND OPT-OUTS, AND DATE OF FAIRNESS HEARING</u>

3.      The Court has set the following dates for purposes of this class action:

(a) Final class identifying information, to the extent not already provided, will be provided to Class Administrator JND Legal Administration no later than Monday, December 2, 2019;

(b) Friday, December 6, 2019: Class member website shall be updated to reflect preliminary approval order and to permit class members to submit claims online;

(c) Monday, January 6, 2020 (or earlier): First round of class notice: first-class mail to all class members except those for whom the Claims Administrator has **both** an email address and mobile phone number (in which case the class member will receive notice by mail and text);

(d) Monday, January 6, 2020 (or earlier): summary publication in Prison Legal News (a publication widely distributed to inmates throughout the country) and begin selective social media/online outreach directly targeting class members' Facebook and/or Instagram accounts;

(e) Monday, January 6, 2020 (or earlier): signage posted at CRDF and

2

Twin Towers advising inmates of settlement and how to make a claim; claim forms available to all detainees at these facilities;

(f) Thursday, February 6, 2020: Notice by regular mail to all class members who were initially notified by electronic means only (those who received notice by email and text) and who have not yet submitted claim forms along with the explanation that they were sent such electronic notice but this notice is being sent as well because they did not file a claim or exclude themselves from the settlement;

(g) Thursday, February 6, 2020: The Class Administrator will begin periodically reminding class members through email/text blasts to file claims;

(h) Monday, February 10, 2020: Filing of Plaintiffs' Motion for Award of Attorneys' Fees and Costs;

(i) Thursday, June 4, 2020: Deadline to file Class Members' Objections to any aspect of the Settlement (including Plaintiffs' Motion for Award of Attorneys' Fees and Costs): Must be postmarked or received by that date;

(j) Thursday, June 4, 2020: Deadline to opt-out: Must be postmarked or received by that date;

(k) Thursday, June 4, 2020: Deadline to file class claims: Must be postmarked or received by that date;

(l) Monday, July 6, 2020: Deadline to file Opposition or Reply to Objections (including to objections to award of attorneys' fees and costs);

(m)    Monday, July 6, 2020: Deadline to file proposed final approval order and motion for final approval of settlement;

(n) Monday, July 20, 2020: Final Approval hearing.

4.    In the event that the class notice process does not by January 6, 2020,

3

as provided above, the subsequent dates contained herein will be deferred for the number of additional days before such notice occurs without the need for additional Court approval. However, the Court must approve any change of the date of the Final Approval Hearing.

5.     If the number of Opt Outs amounts to 250 or more, Defendants shall have the option of withdrawing from the settlement.

6.     The Parties have identified exclusively from Los Angeles County Jail records Damages Class Members based on who was housed at CRDF and the times and days they were strip/visual body cavity searched during the damages period. Only persons so identified are Damages Class members.

7.     The "Class Damages Period" refers to the period between March 5, 2008 (two years before the filing of the complaint) and January 1, 2015 (the date scanners or privacy partitions were available for all CRDF strip searches).

## III.    <u>SETTLEMENT TERMS.</u>

8.     In summary, the settlement's basic terms, as they relate to Damages Class Members, are that Defendants will provide payment of a total of Fifty-Three Million dollars ($53,000,000) equally spread over a three-year period into a Class Fund. From that amount, the following awards will be made, subject to court approval:

    a.  Incentive awards to the 9 Named Plaintiffs in the amount of $10,000 each (for a total of $90,000).

    b.  Payment of the third-party class settlement administration costs to the chosen class administrator, JND Legal Administration, estimated at a maximum of approximately $464,000 for a claims rate of up to 33% (which, based on counsel's experience in Jail cases, is substantially higher than the expected claims rate.) However, depending on the response rate to the notice, Plaintiffs' counsel may request that JND do greater outreach, which would increase the cost.

c. Plaintiffs will file a motion for attorney's fees and costs to be approved by the court. The settlement agreement provides that Plaintiffs' counsel may request up to 1/3 of the class fund but not more, plus reimbursement of litigation costs. The final determination of the appropriate attorney's fee will be made by the Court.

d. The remainder of the Class Fund (estimated as a minimum of slightly under $34 Million) shall be distributed to the class members (including Named Plaintiffs/Class Representatives) under a formula contained in ¶¶ 5-13 of the Settlement Agreement (Exhibit A to the proposed Preliminary Approval Order), particularly ¶ 7.

9. The distribution formula awards a certain number of points for each strip/visual body cavity search. The number of points per search ranges between 70 – 100, based on the time period in which the search occurred. The points vary according to time period because the invasiveness of the search conditions varied over time, with the worst conditions occurring prior to July 2011. Each search conducted at a temperature of 70 degrees or less receives an additional 10-points. The per-search points are assigned to each class member, up to their 50th search.[1] This cap is to ensure that outliers who have outsized claims do not distort the meaningfulness of the recovery to the remaining class members. (Such outliers would be entitled to opt out and pursue their own claims if they so chose.)

10. Once the claims period closes, the claims administrator will calculate the total points for each class member and total points for all claiming class members who submitted timely claims. Each class member's recovery will be determined based on that class member's percentage of the total points for all class members.

11. Despite the foregoing, no class member who qualifies for payment will receive less than a total of $200. (This minimum payment amount would

---

[1] The "50-search cap" applies to less than .04% of the class.

apply only in the event of an unexpectedly high claims rate).

12. The Class Fund is non-reversionary. However, to ensure that there is not a windfall to claiming class members in the event of a very low claims rate, there will be a donation to *cy pres* organizations to be agreed on to the extent that the total value of claims is less than the agreed upon "Minimum Remainder" of $31 Million. The value of the claims for purposes of this provision is based on the following chart. The Court has reservations about this provision that will be addressed, if necessary, at the Final Approval Hearing and in the Final Approval Order.

| CY PRES FORMULA | |
|---|---|
| # SEARCHES | AMOUNT |
| 1-3 | $5,000 |
| 4-6 | $10,000 |
| 7-10 | $15,000 |
| 11+ | $20,000 |

**IV.     CLASS ADMINISTRATOR**

13. The Court approves the retention of JND Legal Administration ("JND") as Class Administrator, to administer the distribution of the Class and Settlement Notice and publication of the Class and Settlement Notice, and to distribute the proceeds of the settlement to all eligible Class Members pursuant to the Plan set out in the Settlement Agreement (Exhibit A) should the Court grant final approval. Exhibit E (the Class Administrator bid) includes the qualifications of JND, which establishes to the Court's satisfaction the qualifications of JND to act as the Class Administrator.

14. The Class Administrator shall preserve all written communications from Class Members in response to the Class and Settlement Notice at least until December 31, 2023, or pursuant to further order of the Court. All written communications received by the Class Administrator from Class Members relating to the Settlement Agreement shall be available at all reasonable times for

inspection and copying by Counsel for the Parties, and copies shall be regularly provided to Counsel for the Parties.

15. The Class Administrator shall be compensated from the Class Damages Fund for its services in connection with notice and administration and for the costs of giving mailed and published notice, and the other services it performs, pursuant to such orders as the Court may enter from time to time.

16. Within two weeks after this Preliminary Approval Order is signed by the Court, the County of Los Angeles shall deposit or cause to be deposited into an account designated by the Class Administrator by check sent by overnight mail an amount of same day available funds equal to the amount requested by the Class Administrator to cover the costs of notice as provided herein, and will provide additional funds for its administrative work pursuant to the terms of its accepted bid, a copy of which is attached as Exhibit E. Prior to entry of the Final Order of Approval of Settlement, the Class Administrator will not accrue any costs not itemized in Exhibit E unless agreed to by the Plaintiffs' counsel and approved by the Court. If the Court does not enter the Final Order of Approval and Settlement, then all such funds paid to the Class Administrator, to the extent they are available after payment of all accrued class administration expenses, shall be returned to Defendants.

17. If this settlement does not go through for any reason, a new settlement is not reached, the case goes to trial, and Plaintiffs are not successful in their prosecution of the case, Defendants shall not seek reimbursement from Plaintiffs of class administration funds paid under this settlement.

## V. CLASS COUNSEL

18. Barrett S. Litt and Lindsay Battles of Kaye, McLane, Bednarski & Litt are hereby confirmed as counsel for the Class Representatives and the Class ("Class Counsel").

19. Class Counsel are authorized to act on behalf of the Class with respect

to all acts or consents required by or which may be given pursuant to the Settlement, and such other acts reasonably necessary to consummate the Settlement.

## VI.        CLASS AND SETTLEMENT NOTICE

20.    Class Counsel shall provide the Class and Settlement Notice to the Class Administrator for distribution according to the schedule set forth above. Such notice shall be in substantially the form as proposed in the amended class notice, (Exhibit C to this order) and shall be communicated as provided in ¶ 3(b) and (c) above (providing for both text message, email and regular mail notice); returned mail shall be subject to follow up mailings after appropriate searches of the available databases. No notice by publication shall be required because such notice has not proven effective at reaching class members, and the resources are better spent on attempting to reach class members through electronic email and other means of electronic outreach. See revisions to F.R.Civ.P 23 (c)(2)(B) effective December 2019 (acknowledging that notice "may be by … electronic means, or other appropriate means" in addition to or in lieu of United States mail).

21.    Defendants represent that they have already provided the name, address, social security number, date of birth, driver's license information, and any other identifying information of Damages Class Members, to Plaintiffs' counsel, who will transmit it to the Class Administrator. Such information shall be confidential and may not be disclosed to anyone except counsel of record, the Class Administrator, and designated representatives of Defendants. Should the Defendants discover at any time any additional information containing relevant class information, they shall promptly provide it to Plaintiffs' counsel and the Class Administrator.

22.    At least seven days before the Fairness Hearing, Class Counsel and/or the Class Administrator shall serve and file a sworn statement by the Class

Administrator attesting to compliance with the provisions of this Order governing Class and Settlement Notice. This shall include a list of all people who have opted out of the class.

23.    The Court approves the amended Class and Settlement Notice attached as Exhibit C.

24.    The Court approves the Claim Form attached as Exhibit D.

25.    The Court approves the Class Administrator Bid attached as Exhibit E.

26.    The Court finds that the notice required by the foregoing provisions of this Order is the best notice practicable under the circumstances and shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all Class Members and other persons affected by and/or entitled to participate in the settlement, in full compliance with the notice requirements of Rule 23 Federal Rules of Civil Procedure and due process.

## VII.    <u>THE FAIRNESS HEARING</u>

27.    A Fairness Hearing shall be held on September 30, 2019, to consider: (a) the fairness, reasonableness, and adequacy of the Settlement; (b) whether a Final Order of Approval and Settlement should be entered in its current or some modified form; and (c) the application by Class Counsel for attorneys' fees and expenses (the "Fee Motion").

28.    At least two weeks prior to the Fairness Hearing, Plaintiffs shall submit a proposed Final Approval Order, which shall be approved by Defendants. That proposed order will contain the final provisions the Parties seek the Court to finally approve and the Parties' proposed court orders related to any objections that have been filed. It will not be necessary to file a separate motion for final approval.

29.    The date and time of the Fairness Hearing shall be set forth in the Class and Settlement Notice but shall be subject to adjournment by the Court

without further notice to the Class Members other than that which may be posted at the Court and on the Court's web site.

30.    Any Class Member who objects to the approval of the Settlement Agreement, the Fee Motion, the Named Plaintiffs' incentive awards or the proposed allocation of damages among class members may appear at the Fairness Hearing and show cause why any one of the foregoing should not be approved as fair, reasonable, and adequate, and why the Final Order of Approval and Settlement should not be entered, except that no such Class Member may appear at the Fairness Hearing unless the Class Member, no later than August 21, 2019 [the date to file objections to the Settlement] (a) files with the Clerk of the Court a notice of such person's intention to appear, a statement that indicates the basis and grounds for such person's objection to the Settlement Agreement, the Fee Petition, the Named Plaintiffs' incentive awards or the proposed allocation of damages among class members, and all documentation, papers, or briefs in support of such objection; and by the same date (b) serves upon all Counsel to the Parties (as listed in the Class Notice), either in person or by mail, copies of such notice of intention to appear, statement of objections and all documentation, papers, or briefs that such person files with the Court. The required documentation shall include the information requested on the Claim Form. Final determination of whether any such objector is a Class Member who has standing to object shall be determined solely from the Defendants' records, from which the list of Class Members has been compiled. In the absence of the timely filing and timely service of the notice of intention to appear and all other materials required by this paragraph, any objection shall be deemed untimely and denied.

31.    Pending final approval of the Settlement Agreement, no Class Member shall, either directly, representatively, or in any other capacity, commence, prosecute against any Defendant or participate in any action or proceeding in any court or tribunal asserting any of the matters, claims, or causes

of action that are to be released by the Settlement Agreement upon final approval.

32.   In the event of final approval of the Settlement Agreement, all Damages Class Members (except those who have opted out) shall be forever enjoined and barred from asserting any of the matters, claims or causes of action released by the Settlement Agreement, and all such Class Members shall be deemed to have forever released any and all such matters, claims and causes of action as provided for in the Settlement Agreement.

# VIII.   OTHER PROVISIONS

33.   The Court approves the parties' plan to use text messages to both issue class notice and reminder messages for those class members for whom the Claims Administrator is able to locate mobile phone numbers. In sending notice and reminders via text, recipients shall have the ability to "unsubscribe" themselves from further messages.

34.   To the extent not otherwise specifically addressed in this Order, Defendants and Class Counsel shall comply with the provisions of the Settlement Agreement.

35.   In the event the Settlement is not finally approved or is otherwise terminated in accordance with the provisions of the Settlement Agreement, the Settlement and all proceedings had in connection therewith shall be null and void, except insofar as expressly provided to the contrary in the Settlement Agreement, and without prejudice to the status quo ante rights of Plaintiffs, Defendants, and Class Members.

DATED: _____          _____
                                STEVEN V. WILSON
                                UNITED STATES DISTRICT JUDGE

11

SUBMITTED BY:

**KAYE, McLANE, BEDNARSKI & LITT**
**ACLU FOUNDATION OF SOUTHERN CALIFORNIA**


By:___ /s/ Barrett S. Litt_____
        Barrett S. Litt
        Attorneys for Plaintiffs

**Exhibit A**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY AMADOR, *et al*., | Case No. CV 10-01649 SVW (JEMx) |
| Plaintiffs, | [Honorable Stephen V. Wilson] |
| vs. | **SETTLEMENT AGREEMENT** |
| COUNTY OF LOS ANGELES, *et al*., | |
| Defendants. | |

Plaintiffs Mary Amador, Lora Barranca, Diana Paiz, Diane Vigil, Alisa Battiste, Felice Cholewiak, Evangelina Madrid, Myeshia Williams, and Nancy Briseño (individually and on behalf of the classes previously certified in this case (*see*, Doc. No. 327) (collectively "Plaintiffs") and Defendants County of Los Angeles ("the County"), the Los Angeles Sheriff's Department, its prior Sheriff, Leroy Baca, and Sammy Jones, Timothy Cornell, John H. Clark, Stacey Lee, Dennis Burns, Gerald K. Cooper and Daniel Cruz (collectively "Defendants"), by and through their respective counsel, hereby submit the following Settlement Agreement ("Settlement Agreement").  Plaintiffs and Defendants are referred to collectively herein as "the Parties."

1

# I.   RECITALS

Plaintiffs are former inmates at the Century Regional Detention Facility ("CRDF"), a jail facility operated by the Los Angeles County Sheriff's Department ("LASD"), which houses female convicted inmates and pretrial detainees.

Plaintiffs filed this action in the United States District Court for the Central District of California ("Court") on behalf of themselves and a class of similarly situated inmates on March 5, 2010.

Plaintiffs alleged various violations of the Federal and State Constitutions, of 42 U.S.C. §1983, and California Civil Code §52.1 associated with the LASD's strip/visual body cavity search practices at CRDF during the class period.

The District Court, after multiple hearings and several class certification orders that went through a number of iterations, certified the class on November 18, 2016. *See*, Doc No. 327 (Order Granting Renewed Motion For Class Certification). The certification was for liability only under Fed.R.Civ.P Rule (c)(4).

 On June 6, 2017, the District Court granted summary judgment on liability issues to the Plaintiff class on their claim for *Monell* liability under the Fourth Amendment, and dismissed claims against the individual Defendants, finding qualified immunity applied. . *See*, Doc No. 361. The District Court's liability summary judgment ruling found it unnecessary to address changed conditions at CRDF because the searches violated the Fourth Amendment for the whole Class Damages Period. The changes in conditions are nonetheless factored into this Settlement.

Subsequently, the Parties entered into a protracted arm's length mediation process with the assistance of Retired United States District Judge George King, including three in-person mediation sessions with Judge King and numerous telephonic sessions (both the Parties separately with Judge King and among the Parties and Judge King).

The Parties have reached a proposed Settlement subject to the approval of the Court. It is understood and agreed that this Settlement is the compromise of

2

disputed claims by the Named Plaintiffs and Class Members, and that the payments made are not to be construed as an admission of liability by any of the Defendants. The Defendants deny liability, preserve all defenses they have asserted or could present in these proceedings or any future appeal, and intend merely to avoid the expense of further litigation.

In summary, this Settlement provides for dismissal of this case with prejudice in exchange for a non-reversionary Class Fund of $53 Million, from which costs of administration, litigation costs and attorney's fees will be paid, and the remainder of which would be distributed to Class Members who make viable claims subject to certain requirements for a minimum number of claims made (or a portion of funds would go to *cy pres* distributions as defined herein).

## II.    DEFINITIONS

The listed terms used throughout this Settlement Agreement are intended to have the following meanings:

1.  "Administrator" means the Class Administrator, as agreed upon (or to be agreed upon) by the Parties and appointed by the Court to review and determine the validity and amount of claims submitted by a Settlement Class Member ("SCM") (as defined herein), according to the procedures set forth herein.

2.  The "Bar Date" is the date by which any Class Member who wishes to receive payment pursuant to the Settlement Agreement and therefore is a Settlement Class Member ("SCM") as defined below must file his/her Proof of Claim and Release Form, file objections to this Settlement Agreement, or request to be excluded from the class (opt-out). The Bar Date shall be calculated as the close of business on the 150th day after the last day of mailing of the Class Notice (or, for those whose initial notice is by email and text message, the day that they were to be sent such electronic notice in lieu of regular mail, as provided in Section X), which is up to occur within

two consecutive business days from beginning to end, as is addressed in ¶ 39, i.e., the Administrator must mail all notices within a two day period).

3. "Class Counsel" herein refers to Barrett S. Litt and Lindsay Battles of KAYE, McLANE, BEDNARSKI & LITT.

4. "Class Counsel Attorney's Fees" refers to the amount awarded by the Court as Class Counsel's attorney's fees in this case, to be approved by the Court upon motion by Class Counsel.

5. "Class Counsel Litigation Costs" refers to the amount of costs awarded by the Court upon motion by Class Counsel.

6. The "Class Fund" refers to the amount of $53 Million as damages compensation to the Class, to be paid by Defendants to the Administrator, and out of which the costs of Administration, Plaintiffs' counsel expert/consulting, litigation and mediation fees, incentive awards and compensation to Class Members will be paid.

7. The "Class Damages Period" refers to the period between March 5, 2008 (two years before the filing of the complaint) and January 1, 2015 (the date scanners or privacy partitions were available for all CRDF strip searches).

8. A "Class Member" means any member of the certified Damages Classes. Although the Court certified two damages classes, one from March 2008 through June 30, 2011, and one from July 1, 2011 through January 1, 2015 (because scanners were then being used for all strip searches unless the inmate requested a strip search in its place), for purposes of this settlement and because summary judgment was granted to both classes, the Damages Class is defined for settlement purposes as "any female inmate at CRDF inmate who, upon their admission or return to CRDF, were visual body cavity searched in groups, without individual privacy between March 5 2008 (two years before the filing of the complaint) and January 1, 2015."

9. The "Class Notice" means the notice to be sent to Class Members regarding this Settlement, in a form substantially similar to that attached hereto as

4

Exhibit B, or as otherwise approved by the Court, and such other summary notice to be published in accordance with the terms of this Settlement Agreement.

10. The "Class Member List" is a list of Class Members.  It is based solely on the records of the LASD. Only persons appearing on that list qualify as Class Members.

11. The "Database" is the information provided in electronic form to the Administrator which information has been compiled from the electronic records of the LASD, as filtered to identify those meeting the class definition by the Parties' experts.

12. The "Defendants" are the County of Los Angeles, the Los Angeles Sheriff's Department, its prior Sheriff Leroy Baca, Sammy Jones, Timothy Cornell, John H. Clark, Stacey Lee, Dennis Burns, Gerald K. Cooper and Daniel Cruz.

13. The "Effective Date" is the date on which the District Court issues an Order granting final approval of the Settlement Agreement, except that if any objections to the settlement were submitted to the Court, the Effective Date is the date of the final resolution of any appeal of the Final Approval of this Settlement Agreement, or if no such appeal is filed, the expiration of the deadline for filing a Notice of Appeal.

14. The "Fairness Hearing" is the hearing on the fairness of this Settlement, which date will be set by the Court.

15. The "Final Order of Approval and Settlement" is the Order finally approving the settlement, entered by the Court (which may also be referred to herein as "Final Order").

16. The "Lawsuit" refers to the action styled *Amador et al. v. Baca et al.*, Case No. CV 10-01649 SVW (JEMx)..

17. The "Motion for Attorney's Fees and Costs" is Class Counsel's application for Attorneys' Fees and Costs.

5

18. The "Named Plaintiffs" or "Class Representatives" refers to the plaintiffs named in the Fourth Amended Complaint to this suit, who are Mary Amador, Lora Barranca, Alisa Battiste, Nancy Briseño, Felice Cholewiak (Vargas), Evangelina Madrid, Diana Paiz, Diane Vigil and Myeshia Williams. While Lora Barranca, Diana Paiz and Diane Vigil were named solely as injunctive relief plaintiffs under §1983, they were damages plaintiffs under state law and Class Members. For purposes of this Settlement, no distinction is made between or among the Named Plaintiffs.

19. "Preliminary Approval" is the Court's determination that the Settlement is within the range of possible approval and therefore that Class Notice should be sent to Class Members and a Fairness Hearing should be set by the Court.

20. The "Preliminary Approval Order" is an order entered by the Court preliminarily approving the Settlement, after which Class Notice, the opportunity to object and Opt Out, and entry of a Final Order of Approval and Settlement would occur.

21. An "Opt-Out" is any Class Member who files a timely request for exclusion, pursuant to the terms of this Settlement Agreement, to be excluded from the Settlement Class. (If used as a verb, it refers to the process of filing such exclusion.)

22. The "Proof of Claim Form" means the Proof of Claim and Release Form required to be used in order to make a claim for payment under this Settlement. A copy of the proposed Proof of Claim Form is attached as Exhibit C. The pre-prepared Claim forms shall be bar coded to link with the Class Member's Database information and shall contain the damages to which the Class Member is entitled if s/he were to receive the full damages provided for in this agreement.

23. "Released Person" means the Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with all past, present and

6

future officials, employees, representatives, attorneys, outside counsel, and/or agents of Los Angeles County. "Released Person" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons.

24. "Remainder" refers to the amount in the Class Fund after payment of Class Counsel's Attorney Fees, Class Counsel's Litigation Costs, and mediation costs. The "Minimum Remainder" is a figure used for purposes of determining whether *cy pres* payments are made and is based on the estimate of the maximum fees to be sought (1/3 of the $53 Million Fund), and estimated litigation and class administration costs ($1.5 Million),; thus the Minimum Remainder is estimated to amount to $33,883,000, which the Parties agree to round up to $34,000,000.

25. The "Settlement" refers to this agreement.

26. A "Settlement Class Member" ("SCM") means any Class Member as defined above (whether or not she files a Timely Claim form), including representatives, successors and assigns, who does not file a valid and timely Request for Exclusion as provided for in this Settlement Agreement.

27. The "Settlement Fund" is the fund established by the Administrator with funds transferred from Defendants from which the damages to the Class Representatives and Class Members will be paid. The Defendants will pay all moneys they are obligated to pay under the Preliminary Approval Order, and the settlement approved by the Court, if any, into the Settlement Fund.

28. "Strip Search" means a search conducted by LASD personnel on a Class Member (as defined above) in which the person was required to remove her clothing, including underwear, in the presence of a corrections officer and/or expose her breasts, genitals or body cavities for a visual inspection. All persons appearing on the Class Member List were subjected to a strip search as defined herein.

29. A "Timely Claim" is one filed a) within the 150-day window provided by the notice to be sent to the class, and b) to the extent the Court approves, late claims (i.e., claims filed after the Class Notice period) that are filed prior to the Final Approval Hearing.

## III.   DISCLAIMER OF LIABILITY

1.      The Parties acknowledge and agree that all undertakings and agreements contained in this Settlement Agreement have been agreed to solely for the purpose of finally compromising all questions, disputes and issues between them relating to the litigation. This Settlement Agreement and any proceedings taken pursuant hereto shall not in any event be construed as, interpreted as, or deemed to be evidence of an admission or concession by either party for any purpose, or deemed to constitute a waiver of any legal position or any defenses or other rights which the Parties might otherwise assert in any context. Neither this Settlement Agreement nor any provision contained therein, nor any documents related hereto, nor any negotiations, statements or testimony taken in connection herewith may be offered or received as evidence, or used for any other purpose, or in any suit, action or legal proceeding which either of them have or in the future may have with any other person, as an admission or concession of liability or wrongdoing on the part of either party, except in connection with any action or legal proceeding to enforce this Settlement Agreement. The Parties have reached this Settlement through arms-length negotiations and to avoid the costs and delays of further disputes, litigation and negotiations among them and after extensive negotiations with an independent mediator, subject to approval by the Court. This Settlement Agreement has been entered into without any concession of liability or non-liability whatsoever and has no precedential or evidentiary value whatsoever.

## IV.   FINANCIAL TERMS OF SETTLEMENT AGREEMENT AND CLASS DAMAGES ALLOCATION FORMULA

2.      The Class Fund is the amount of $53,000,000. The class administration costs shall be paid out of that fund, as will any incentive awards to the Class

Representatives as approved by the Court. (Class Counsel's Litigation Costs will be addressed in Class Counsel's Motion for Attorney's Fees and Costs.) The Remainder of the Class Fund shall be distributed to the Class Members (including Named Plaintiffs/Class Representatives) under the formula terms provided in this Agreement.

       3.     Subject to approval of the Court at the hearing regarding the Final Order of Approval and Settlement, the following incentive awards shall be paid to the Named Plaintiffs (in addition to the share of the Class Fund to which they are entitled as Class Members). Class Counsel represent that they have no prior agreement with any Named Plaintiff to seek such awards, nor do they have any commitment to propose them. They are proposed at the initiative of Class Counsel and are intended to reflect Named Plaintiffs' commitment to, and active assistance in advancing, this Lawsuit since it was filed in 2010:

| NAME | INCENTIVE AWARD |
| --- | --- |
| Mary Amador | $10,000 |
| Lora Barranca | $10,000 |
| Alisa Battiste | $10,000 |
| Nancy Briseño | $10,000 |
| Felice (Cholewiak) Vargas | $10,000 |
| Evangelina Madrid | $10,000 |
| Diana Paiz | $10,000 |
| Diane Vigil | $10,000 |
| Myeshia Williams | $10,000 |
| **TOTAL** | **$90,000** |

       4.     It is not currently possible to determine the amount of the Remainder before the hearing regarding the Final Order of Approval and Settlement, where the final amount of Class Counsel's Attorney's Fees and Costs awards, and class administration costs  will be determined.

       5.     The formula for distribution of the Remainder has been developed by Class Counsel and, if approved by the Court, will be summarized in the Class

Notice to be sent to Class Members. The formula is designed to account for the fact that the alleged severity of challenged conditions varied depending on the time period the Strip Search occurred (with the most intrusive conditions before July 2011 and least intrusive conditions after February 2014 when the bus bay became enclosed and had heating), the number of Strip Searches an inmate experienced and the weather conditions when the Strip Search occurred.

6.      To briefly summarize, Class Counsel's assessment of these variations in conditions, which are factored into the class damages allocation formula, are as follows:

| **TIME PERIOD** | **CONDITIONS** |
|---|---|
| **2/26/2014 – 1/31/2015**<br><br>**(Core Conditions Applicable to All Class Members Regardless of Time Period)** | **Conditions:**<br><br>(1) female inmates required to participate in group Strip Searches in which the labia lift procedure was used;<br>(2) female inmates required to publicly identify if they were menstruating, remove feminine hygiene products in view of other inmates; and<br>(3) female inmates required to expose their naked body – including bare pubic region and bare breasts – in the presence of a group.<br>(4) inmates searched in groups of 24 inmates (or more, see below). |
| **4/1/2013 – 2/25/2014** | **Conditions:**<br><br>• All above conditions<br>*plus*<br>• Group Strip Searches occurred in a converted bus garage with a chain link fence roof with a tarp on it and no heaters. |
| **7/1/2011 – 3/30/2013[1]** | **Conditions:** |

---

[1] This subclass was because LASD reduced its class sizes to a maximum of 25 and installed tables on which clothes could be placed in April 2013.

| TIME PERIOD | CONDITIONS |
|---|---|
| | • All above conditions<br>*plus*<br>• Inmates searched in groups larger than 24 inmates<br>• Inmates required to put clothing directly on the ground. |
| **3/5/2008 – 6/30/2011** | **Conditions:**<br><br>• All above conditions<br>*plus*<br>• Deputies simultaneously searched both lines of female inmates so that inmates were directly viewing each other during the Strip Search. |

7.     Based on the above considerations, Class Counsel have devised a distribution model in which Class Members are compensated based on the number of Strip Searches they endured, with searches weighted based on the time period in which they occurred (which, in turn, corresponds to the severity of conditions). Each Strip Search is assigned a point-value which will translate to a per-diem dollar value at the time of distribution.  Class Members receive the designated number of points based on the number of Strip Searches in each category.

8.     The chart below shows the categories, conditions associated with each category, and points assigned to each category.

| Time Period | Points Per Strip Search |
|---|---|
| 3/8/2008 – 6/30/2011 | 100 |
| 7/1/2011 – 3/31/2013 | 90 |
| 4/1/2013 – 2/25/2014 | 80 |
| 2/26/2014 – 1/31/2015 | 70 |

9.     The distribution model also provides an additional 10-points for any

Strip Search conducted at a temperature of 70 degrees or less.

10.     The per-search points are assigned to each Class Member, up to their 50th search. The "50-search cap" applies to less than .04% of the Class. This cap is to ensure that outliers who have outsized claims do not distort the meaningfulness of the recovery to the remaining Class Members. (Such outliers would be entitled to opt out and pursue their own claims if they so choose.)

11.     That Class Member's point total is the sum of all their assigned points. The final distribution will be based on the total points for each Class Member who filed claims, divided by individual points assigned to each claiming Class Member. (If, for example, there is a total of 1,000,000 points for the aggregated Timely Claims, and Class Member "X" had a total of 200 points, Class Member "X" would receive .02% (or .0002) of the Remainder; if the Remainder is the Minimum Remainder of $31 Million, that Class Members would receive $6,200). These figures are purely hypothetical and should not be considered as reflective of any likely award. Because it is anticipated that not all Class Members will make Timely Claims, and this is a non-reversionary fund (except as provided in Section VI, below, for *cy pres* payments in the event of a low claim rate, which the Parties do not anticipate), a claiming Class Member's share of the Remainder will be determined based on that Class Member's share of the total points for Class Members who made Timely Claims.

12.     No Class Member who filed a Timely Claim will receive less than $200 (the minimum will be at least $200 but may be adjusted upwards) subject to the limit of the Class Funds available in the Remainder. The minimum provision is designed to ensure that all Class Members who submit Timely Claims receive some recovery.

13.     None of the Class Fund shall revert to the County. Accordingly, as explained above, the money per Class Member making a Timely Claim will increase proportionately to the extent that fewer Class Members make a claim.

14.     Class Counsel intend to submit a separate Motion for Attorney's Fees

12

and Costs to be heard at the hearing regarding a Final Order of Approval and Settlement, to be analyzed under the standards for an award of fees and costs to a prevailing plaintiff under the percentage of the fund doctrine. While the motion will seek a percentage of the Class Fund as a fee award, subsumed within that request will be any statutory attorney's fee to which Class Counsel would be entitled under 42 U.S.C. § 1988 or Cal. Civil Code § 52.1(h). The Class Notice will advise Class Members of Motion for Attorney's Fees and Costs and their right to object to it.

15. The LASD represents that to the best of its knowledge, it has provided all the electronic data in its possession, which it is legally authorized to produce, regarding Class Members necessary to both identify and contact Class Members. The LASD shall provide to the Administrator, to the extent that such information has not already been provided, any such additional information in its possession which it is legally authorized to produce. Such information shall include date of birth, social security number (SSN), driver's license/state ID number, and most recent contact information (address, phone and any other available contact information). In addition, LASD shall provide to the Administrator and Class Counsel the data from the Automated Justice Information System ("AJIS") Released-to-Agency field indicating whether a Class Member was released to the custody of another law enforcement agency. This information may only be used to reach out to Class Members to ensure they receive the Class Notice and are aware of how to file a claim pursuant to this Agreement.  LASD will make a written request to the California Department of Corrections and Rehabilitation ("CDCR"), which request will include a list of Class Members who were transferred to CDCR from LASD custody, and request that CDCR:  (1) advise the Administrator of where and how the Class Notice to those Class Members still in CDCR physical custody should be sent; and (2) provide the Administrator with the most recent contact information in CDCR's records (including records in the Division of Adult Parole Operations, where applicable) for each Class Members who is no longer in CDCR physical custody. When making the foregoing request to CDCR, LASD will

13

provide to CDCR any individualized identifying information in its possession that it is legally authorized to include that could assist CDCR in identifying Class Members.

If CDCR provides a response, LASD will then advise Class Counsel of CDCR's response, and if CDCR either fails to respond or refuses to provide assistance, Class Counsel may seek Court assistance in securing the cooperation of CDCR to effectuate service of the Class Notice and to obtain the most up to date contact information for Class Members. Neither the County nor the LASD will have any further obligation with respect to efforts to obtain contact information for Class Members from CDCR beyond the efforts described above, except that it will engage in any reasonable follow-up requested by CDCR. LASD will likewise have no further obligation to assist with securing cooperation regarding the provision of Class Notice to Class Members still in CDCR custody.

Nothing in this agreement precludes Plaintiffs from seeking a court order authorizing the LASD to provide CII and FBI numbers directly to CDCR as part of efforts to identify Class Members and provide Class Notice to individuals who were previously transferred to CDCR. Should Plaintiffs file such a motion, they will serve the Attorney General of the State of California and the Federal Bureau of Investigation with the motion in order to provide each with the opportunity to be heard. Plaintiffs will not seek access to such records for themselves or for the Administrator.

## V.   RELEASES AND OTHER SETTLEMENT TERMS

16.   The Parties enter into this Agreement solely for the purposes of this Settlement and implementation of the Settlement. If the Settlement fails to be approved or otherwise fails consummation, then this Settlement Agreement is hereby withdrawn.

17.   An SCM who complies with the requirements set forth in this Settlement Agreement and files a Timely Claim form will be paid specified sums determined by the distribution process set forth above, which payment shall be in

14

full satisfaction of all claims of that SCM.

18.    The Settlement Agreement, as of the Effective Date, resolves in full all claims against the Released Persons by all of the SCMs, including the Named Plaintiffs, involving violations of law or constitutional rights, including, without limitation, their equal protection rights under federal and California law, their rights under 42 U.S.C. § 1983 and California Civil Code § 52.1, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which arise from the class-wide factual allegations alleged in the Fourth Amended Complaint, which is the operative pleading in this matter ( "Covered Claims").

19.    When the Settlement Agreement is final, as of the Effective Date, all SCMs, including the Named Plaintiffs, waive all rights to any and all claims relating to damages or reimbursement of any kind for the Covered Claims. This waiver and release shall include a full release and waiver of unknown rights regarding the Covered Claims that may exist as of the Effective Date.

20.    As of the Effective Date, the SCMs, including the Named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by the Released Persons with respect to the Covered Claims during the class period; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code § 1542, which provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

21.    This Settlement Agreement, together with its exhibits, contains all the terms and conditions agreed upon by the Parties regarding the subject matter of the instant proceeding, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Settlement Agreement shall be

15

deemed to exist, or to bind the Parties, or to vary the terms and conditions contained herein, except as expressly provided herein.

22.     Each SCM shall be deemed to have submitted to the jurisdiction of the Court.

23.     This Settlement Agreement is subject to and conditioned on entry by the Court of a Final Order of Approval and Settlement and the issuance of the final order of dismissal by the Court, providing the specified relief as set forth below, which relief shall be pursuant to the terms and conditions of this Settlement Agreement and the Parties' performance of their continuing rights and obligations hereunder. The Final Order of Approval and Settlement shall be deemed final on the Effective Date. Such Final Order of Approval and Settlement shall:

a.  Dismiss with prejudice all claims in the action as to the Released Persons including all claims for monetary damages, declaratory relief and injunctive relief, each side to bear its own costs and fees except as otherwise provided for in this Settlement Agreement;

b.  Order that all SCMs are enjoined from asserting against any Released Person any and all claims that any SCM had, has or may have in the future based on the Covered Claims;

c.  Release each Released Person from the claims that any SCM has, had or may have in the future against such Released Person arising out of the Covered Claims;

d.  Determine that this Settlement Agreement is entered into in good faith, is reasonable, fair and adequate, and in the best interest of the Class; and

e.  Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Settlement Agreement, including Defendants and SCMs, to administer, supervise, construe and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of all Parties.

24.     The Parties will take all necessary and appropriate steps to obtain preliminary and final approvals of the Settlement Agreement, and dismissal of the

16

action with prejudice, all Parties bearing their own fees and costs unless otherwise set forth in this Settlement Agreement. If the Court gives final approval of this Settlement Agreement, and if there is an appeal from such decision, the Parties will defend the Settlement Agreement.

## VI.   CY PRES DISTRIBUTION IN THE EVENT OF A LOW CLAIM RATE

25.    In order to ensure that Class Members do not receive a windfall because there are relatively few claims filed, the Parties agree that, if the total claims do not amount to the Minimum Remainder based on the following formula, the difference between those aggregated claims and Minimum Remainder will go to the organizations identified in ¶ 30. The formula to determine whether such *cy pres* payments are to be made (referred to as the "*Cy Pres* Formula" shall be as follows:

| CY PRES FORMULA | |
|---|---|
| # SEARCHES | AMOUNT |
| 1-3 | $5,000 |
| 4-6 | $10,000 |
| 7-10 | $15,000 |
| 11+ | $20,000 |

26.    Thus, by way of example only, if the Minimum Remainder is $31 Million, 4000 Class Members filed claims (which the Parties agree is likely a low claim rate), and the average of their claims based on the *Cy Pres* Formula amounted to $9000 per claimant, the total would be $36,000,000, and no *cy pres* distribution would apply. In contrast, if 3000 people filed claims based on the same average $9000 per claimant and same $31 Million Minimum Remainder, then $4,000,000 (the difference between the $31 Million Minimum Remainder and the $27,000,000 claimed amount based on the *Cy Pres* Formula), would go to the *Cy Pres Fund.*

27.    The foregoing formula only applies in the event that the total claims do not amount to the Minimum Remainder based on the *Cy Pres* Formula. Otherwise, the allocation formula set out in Section IV, above, applies.

28.    The *Cy Pres* funds will not be returned to the County's general fund

but will instead be provided to non-profit organizations or programs which provide gender-responsive services to female inmates in LASD custody.  At the time that it is determined that any *Cy Pres* funds are to be distributed, counsel for the Parties in this case and the LA County Board of Supervisors will work in good faith to identify the organizations or programs to receive those funds.  If they cannot agree, the Parties will separately brief the Court, and the Court will determine the organizations and/or programs to which the *Cy Pres* funds will be paid.

## VII.   RESOLUTION AND PAYMENT OF CLAIMS

29.    Defendants agree to the division of funds between Incentive Awards and the Remainder as proposed by Class Counsel subject to the approval of the Court.

## VIII.  CLASS COUNSEL FEES

30.    Class Counsel will file a Motion for Attorney's Fees and Costs on a percentage of the fund basis, and the payment of said fees and costs is subject to Court approval. Class Counsel will not seek more than 1/3 of the $53 Million Class Fund as the amount of attorney's fees requested; Class Counsel may seek less but may not seek more. (This 1/3 cap is separate from Class Counsel's costs, i.e., Class Counsel may request up to 1/3 of the Class Fund plus costs.)

## IX.   CLASS ADMINISTRATOR

31.    Counsel for the Parties will jointly agree on the selection of the Class Administrator and, if they cannot so agree, will submit their suggestions to the Court and the Court will determine the Administrator.  The Parties understand the importance of a rapid process for choosing the Class Administrator and are committed to reaching a joint selection as soon as practicable.

32.    The Administrator shall be responsible for taking any steps deemed appropriate and necessary by Class Counsel to notify the Class Members of their rights to file claims, and to assist them in doing so. Class Notice shall be issued electronically by email and text message (for all Class Members whose email addresses and mobile phone numbers can be and have been obtained) by the date

18

set in the Preliminary Approval Order for the initial mailing of Class Notice. On
that same date, Class Notice shall be provided by regular mail for all Class
Members for whom an email address and mobile phone number have not been
obtained, for all incarcerated Class Members.

33.     For those Class Members whose initial Class Notice was sent by the
combination of email and text message who have not responded by filing either a
claim or an Opt Out within 30 days, they will be sent by regular mail the Class
Notice previously provided to the other Class Members whose Class Notice was
sent by regular mail, along with a statement that they were sent by email and text
message a Class Notice as well, and this is being sent to ensure that they have seen
the Class Notice. (*See,* ¶ 40 for elaboration.)

34.     The Administrator's duty shall include the use of normal and
customary means to search for a Class Member's email addresses, mobile phone
numbers and last known mailing addresses, including the use of a postal database
and other specialized databases, when mail is returned. As indicated above, the
Administrator shall initially send electronic copies of the Class Notice to any
inmates for whom email addresses and mobile telephone numbers are ascertainable
and at the same time send a hardcopy version and claim form to any Class Member
whose email and mobile phone numbers are not ascertainable, as well as any Class
Members who are currently incarcerated in California State prisons. (The
Administrator is responsible for making reasonable efforts to determine Class
Members who are now incarcerated in California state prisons). The Administrator
will also propose economically viable and likely productive forms of notice through
the use of social media and online advertising.

35.     Beginning when it is first retained after the Court approves its
appointment, the Administrator will begin to obtain as many Class Member email
addresses and mobile phone numbers as reasonably possible. Before the filing of
the Motion for Preliminary Approval, the Administrator will advise the Parties and
the Court of when the Administrator believes it can reasonably obtain available

19

Class Member email addresses, phone numbers and mailing addresses, and the date
for mailing the Class Notice shall be set with that time in mind.

36.    Notice shall proceed as follows:

1) Initial Class Notice shall commence with email **and** text notices
for all Class Members whose email addresses and/or mobile
phone numbers are ascertainable (assuming both are
ascertainable, Class Members will receive two forms of
electronic notice; if either the email address or mobile phone
number cannot be obtained, the notice will be sent via the
available means).

2) On the same day, notice by regular mail shall be sent to all Class
Members for whom *either* an email address or mobile phone
number or both could not be ascertained. This means that all
Class Members will receive the Class Notice by either (1) email
and text; or (2) regular mail *plus either* email or text (assuming
one of the two is available); or (3) regular mail only (for those
whose email and mobile phone numbers cannot be located).

3) Thirty days after the initial issuance of Class Notice, the
Administrator will send notice by regular mail to all Class
Members who were initially notified only by electronic means
only (those who received notice by email and text) and who have
not yet submitted claim forms along with the explanation that
they were sent such electronic notice but this notice is being sent
as well because they did not file a claim or exclude themselves
from the settlement.

4) Throughout the notice period, the Administrator shall continue
to send email and text notice if and when it learns additional
email addresses/phone numbers for Class Members.

5) Where Class Notice is sent by email or text, the Class

20

Administrator will periodically remind Class Members through email/text blasts to file claims. (If possible, procedures shall be implemented to remove Class Members from email/text blasts who have submitted claims).

37.     The Administrator shall complete the initial Class Notice within two consecutive business days. The second day of such mailing is the first day of the period for calculating the "Bar Date" (defined previously). That mailing shall occur as soon as practicable after the settlement has been Preliminarily Approved and no later than the date set by the Court.

38.     The Class Notice shall describe the particulars of the case, provide the class definition, provide information for claimants to contact the Administrator for a claim form, notify Class Members of establishment of a case website, and contain other usual and customary information. The proposed Class Notice is attached to this Settlement Agreement as Exhibit B.

39.     The Administrator will include in its bid a line item for the cost of obtaining from CDCR the identities of Class Members in CDCR custody to whom Class Notice should be sent at their CDCR housing location.

40.     The Parties discussed and presently do not intend to publish Class Notice in local newspapers because experience has shown that such notice is of little value in notifying Class Members. Instead, mail, email and text notice will be supplemented through summary publication in Prison Legal News (a publication widely distributed to inmates throughout the country); and through selective social media/online outreach directly targeting Class Members' Facebook and/or Instagram accounts.

41.     If specifically requested by Plaintiffs' counsel, the Defendants will seek to obtain the cooperation of CDCR (subject to the limitations set forth in Paragraph 15), and the Los Angeles County Probation Department to assist in locating Class Members, including, where Defendants believe legally permissible, providing more recent contact information for Class Members. The LASD will

21

advise on its website of the existence of this Settlement and place a link on the website to connect viewers to the Administrator's website. The LASD will also post physical copies of the Class Notice (Exhibit "B") in CRDF Reception and Day Rooms.

42. The request for bid to potential Administrators included requests for all such potential activities as well as suggestions for other ways of reaching potential Class Members. That request for bid also requested economically viable proposals for means by which Class Members can receive payment through electronic means rather than by check. There will also be requests to nonprofits that address criminal justice reform, reentry or programs for former inmates to provide notice on their websites and to their mailing lists.

## X.   CLASS ADMINISTRATION FOR PROOF OF CLAIM FORMS AND PAYMENT SCHEDULE

43. The Administrator shall be responsible for providing and receiving Proof of Claim Forms in paper and electronic format. The Administrator shall determine Class Membership and the amount of monies due each timely claiming Class Member based on the formula contained in Section IV.

44. A Proof of Claim Form shall be deemed timely submitted under subsection (a) of Definition # 29 (Timely Claim) when received by the Administrator, or postmarked, on or before the Bar Date. Facsimile or electronic mail filings are acceptable and timely so long as they clearly indicate the case on which the claim is filed and are received on or before the Bar Date.

45. If a Class Member submits a Claim Form that is deficient in some respect, the Administrator shall provide written notice by First Class Mail and a 30-day time limit to provide a proper Claim Form, which notice shall inform the Class Member of what she must do in order to submit a proper claim. Failure to cure the deficiency within the 30-day time limit will bar any further rights for consideration of eligibility to make a valid claim. So long as the original claim is received on or before the Bar Date, it shall be considered timely under sub-section (a) of

Definition # 30 (Timely Claim) if any deficiency is cured within 30 days of the mailing of a notice of deficiency.

46.     Claim Forms received after the Bar Date shall be rejected. The Administrator will notify claimants of the rejection of untimely Claims.

47.     The $53 Million payment shall be made in three equal installments, the first of which shall be made 30 days after the Effective Date, the second of which shall be made twelve months after the first payment, and the third of which shall be made twelve months after the second payment.

48.     The costs of Class Administration through the Final Order of Approval and Settlement and the first round of distribution of checks will be taken from the first payment.

49.     For each payment, 1/3 of the total Attorney's Fees and Costs awarded by the Court to Class Counsel shall be paid into the KMBL Client Trust Account and the remaining funds shall be paid to the Class Administrator for distribution under the terms of this Agreement.

50.     The Class Administrator shall take its accrued and reasonably projected costs of administration for that round from the second and third round of payments.

51.     In addition to the first round of payment to qualifying Class Members, the Administrator will advise them of the estimated time of payments to be made in the second and third rounds and advise Class Members to keep them apprised of any address changes.

52.     The Administrator shall make the first round of payments to SCMs who have filed Timely Claims as ultimately determined by the Court in accordance with this Settlement Agreement within a reasonable time not to exceed 90 days after the Effective Date.

53.     If a check to an SCM is not cashed within three months of its mailing, the Administrator shall hold the funds for nine additional months, during which time it shall make reasonable efforts to contact the person to whom the uncashed

23

check was written to make arrangements for its cashing or reissuance. The Administrator shall not make any payment to any SCM until all claims have been submitted to the Administrator pursuant to the terms of this Settlement Agreement.

54.     Any SCM funds not cashed within one year of a check's initial mailing shall be voided, and those funds ("Uncashed Funds") shall held for the next round of payments. Where an SCM's check was not cashed within that one year period, that SCM shall be eliminated as a qualifying Class Member, and that SCM's past and future funds shall become part of the fund for future distribution to Class Members, and allocated to the remaining SCM's during the next round of payments according to the Class Damages Allocation Formula contained in Section IV.

55.     Uncashed funds remaining in the Class Fund one year after the third round of payments shall be given as a donation to the *Cy Pres Fund* (see ¶ 30)*, to be allocated equally among the qualifying organizations/ programs.

## XI.     EXCLUSION FROM SETTLEMENT CLASS—OPT OUTS

56.     Any Class Member who wishes to be excluded from this Settlement must submit a request to be excluded from the class, a process defined herein as "Opt-Out." The request for exclusion must be delivered to the Administrator, or postmarked, on or before the Bar Date or as the Court may otherwise direct.

57.     Although Named Plaintiffs are entitled to Opt-Out of the Settlement, Plaintiffs' counsel has conferred with each of them, and they all approve of and support the settlement, and have advised that they do not intend to Opt-Out.

58.     Each Class Member who chooses to Opt-Out from or object to this Settlement shall be deemed to have submitted to the jurisdiction of the Court with respect to his/her claim.

59.     Any Class Member who does not Opt-Out as set forth in this Settlement Agreement, shall be deemed conclusively to have become an SCM and to be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments herein, regardless of whether s/he files a claim form.

60.     Any Class Member who exercises an Opt-Out shall not share in any

24

monetary benefits provided by this Settlement Agreement.

61.     The Administrator will periodically report to Defendants' counsel and Class Counsel regarding all Opt-Outs received and will determine and report to counsel the total number of Opt-Outs no later than 10 days after the Bar Date.

62.     If the total number of Opt-Outs exceeds 250 individuals, Defendants, in their sole discretion, may rescind this Settlement Agreement. In exercising this right of rescission, Defendants shall provide the Administrator and Class Counsel with written notice of rescission within 20 days after receipt of the Administrator's report providing the total number of Opt-Outs. In the event Defendants exercise the right of rescission in accordance with this paragraph, any funds paid or deposited pursuant to this Settlement Agreement shall be returned to Defendants within 10 days of the rescission, less any expenses, fees and costs incurred by the Administrator.  Rescission shall return the Case to active litigation status.

## XII.   APPROVALS REQUIRED

63.     The Los Angeles County Board of Supervisors has approved the terms of this Settlement although, after Final Approval, it will have to finally approve the Final Order of Approval and Settlement.

## XIII.  DISPUTE RESOLUTION

64.     In the event of any disputes regarding implementation of the Settlement Agreement as set forth herein, they shall be resolved by the Court.

## XIV.  INTEGRATION

65.     This Settlement Agreement supersedes all prior communications regarding the matters contained herein between the Parties or their representatives. This Settlement Agreement is an integrated agreement and contains the entire agreement regarding the matters herein between the Parties, and no representations, warranties or promises have been made or relied on by any party hereto other than as set forth herein. This Settlement Agreement was drafted by counsel for the Parties hereto, and there shall be no presumption or construction against any party.

## XV.  FAIRNESS HEARING AND FINAL ORDER OF APPROVAL

66.     Before this Settlement Agreement becomes final and binding on the Parties, the Court shall hold a Fairness Hearing to determine whether to enter the Final Order of Approval and Settlement. A proposed Final Order of Approval and Settlement shall be submitted to the Court incorporating the terms of this Settlement Agreement and addressing related information such as Objections and Opt-Outs.

## XVI.  NO THIRD PARTY BENEFICIARIES INTENDED

67.     This Settlement Agreement does not and is not intended to create any rights with respect to any third Parties, except as otherwise provided herein.

## XVII. COUNTERPARTS

68.     This Settlement Agreement may be signed in counterparts.


DATED: __October 30, 2019__          KAYE, MCLANE, BEDNARSKI & LITT

By: _____
          Barrett S. Litt

By: _____
          Lindsay Battles
       Attorneys for Plaintiffs


DATED: __October 30, 2019__          GLASER WEIL

By: _____
          Andrew Baum
       Attorneys for Defendants


26

## LIST OF EXHIBITS TO SETTLEMENT AGREEMENT

Exhibit B          Class Notice

Exhibit C          Proof of Claim and Release Form

**Exhibit B**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MARY AMADOR, *et al*.,

        Plaintiffs,

    vs.

COUNTY OF LOS ANGELES, *et al*.,

        Defendants.

Case No. CV 10-01649 SVW (JEMx)

[Honorable Stephen V. Wilson]

**SETTLEMENT AGREEMENT**

      Plaintiffs Mary Amador, Lora Barranca, Diana Paiz, Diane Vigil, Alisa Battiste, Felice Cholewiak, Evangelina Madrid, Myeshia Williams, and Nancy Briseño (individually and on behalf of the classes previously certified in this case (*see*, Doc. No. 327) (collectively "Plaintiffs") and Defendants County of Los Angeles ("the County"), the Los Angeles Sheriff's Department, its prior Sheriff, Leroy Baca, and Sammy Jones, Timothy Cornell, John H. Clark, Stacey Lee, Dennis Burns, Gerald K. Cooper and Daniel Cruz (collectively "Defendants"), by and through their respective counsel, hereby submit the following Settlement Agreement ("Settlement Agreement").  Plaintiffs and Defendants are referred to collectively herein as "the Parties."

1

# I.    RECITALS

Plaintiffs are former inmates at the Century Regional Detention Facility ("CRDF"), a jail facility operated by the Los Angeles County Sheriff's Department ("LASD"), which houses female convicted inmates and pretrial detainees.

Plaintiffs filed this action in the United States District Court for the Central District of California ("Court") on behalf of themselves and a class of similarly situated inmates on March 5, 2010.

Plaintiffs alleged various violations of the Federal and State Constitutions, of 42 U.S.C. §1983, and California Civil Code §52.1 associated with the LASD's strip/visual body cavity search practices at CRDF during the class period.

The District Court, after multiple hearings and several class certification orders that went through a number of iterations, certified the class on November 18, 2016. *See*, Doc No. 327 (Order Granting Renewed Motion For Class Certification). The certification was for liability only under Fed.R.Civ.P Rule (c)(4).

On June 6, 2017, the District Court granted summary judgment on liability issues to the Plaintiff class on their claim for *Monell* liability under the Fourth Amendment, and dismissed claims against the individual Defendants, finding qualified immunity applied. . *See*, Doc No. 361. The District Court's liability summary judgment ruling found it unnecessary to address changed conditions at CRDF because the searches violated the Fourth Amendment for the whole Class Damages Period. The changes in conditions are nonetheless factored into this Settlement.

Subsequently, the Parties entered into a protracted arm's length mediation process with the assistance of Retired United States District Judge George King, including three in-person mediation sessions with Judge King and numerous telephonic sessions (both the Parties separately with Judge King and among the Parties and Judge King).

The Parties have reached a proposed Settlement subject to the approval of the Court. It is understood and agreed that this Settlement is the compromise of

2

disputed claims by the Named Plaintiffs and Class Members, and that the payments made are not to be construed as an admission of liability by any of the Defendants. The Defendants deny liability, preserve all defenses they have asserted or could present in these proceedings or any future appeal, and intend merely to avoid the expense of further litigation.

In summary, this Settlement provides for dismissal of this case with prejudice in exchange for a non-reversionary Class Fund of $53 Million, from which costs of administration, litigation costs and attorney's fees will be paid, and the remainder of which would be distributed to Class Members who make viable claims subject to certain requirements for a minimum number of claims made (or a portion of funds would go to *cy pres* distributions as defined herein).

As a form of indirect compensation to absent Class Members, up to $3 million of the Class Fund will be used to fund contracts between the County of Los Angeles, on the one hand, the Moss Group and the Center for Gender and Justice ("CGJ"), on the other hand (the "Moss/CGJ Contracts"). Both organizations have significant experience in assisting local, state, and national correctional agencies in the development of gender-responsive and trauma-informed practices, programming, and services. The purpose of the contracts shall be to help develop a strengthened model of gender-responsive policy and operational practice at all LASD facilities that house female inmates (including CRDF and Twin Towers), while enhancing the culture of safety and respect for both staff and the inmate population. The contracts will include preliminary assessment/evaluation, and may also include the provision of expertise, leadership, technical assistance, and services in the following areas: system analysis/operations, policy review and development, strategic planning, program development/inmate services, training/culture, and ongoing assessment. The Moss/CGJ contracts shall be secured in furtherance of the Los Angeles County Board of Supervisors' effort to facilitate the design and implementation of gender-responsive systems within the Los Angeles County criminal justice system, as reflected in the Board of Supervisors' February 2019

3

~~motion titled "Building a Gender-Responsive Criminal Justice System."~~

## II.    DEFINITIONS

The listed terms used throughout this Settlement Agreement are intended to have the following meanings:

1. "Administrator" means the Class Administrator, as agreed upon (or to be agreed upon) by the Parties and appointed by the Court to review and determine the validity and amount of claims submitted by a Settlement Class Member ("SCM") (as defined herein), according to the procedures set forth herein.

2. The "Bar Date" is the date by which any Class Member who wishes to receive payment pursuant to the Settlement Agreement and therefore is a Settlement Class Member ("SCM") as defined below must file his/her Proof of Claim and Release Form, file objections to this Settlement Agreement, or request to be excluded from the class (opt-out). The Bar Date shall be calculated as the close of business on the 150th day after the last day of mailing of the Class Notice (or, for those whose initial notice is by email and text message, the day that they were to be sent such electronic notice in lieu of regular mail, as provided in Section X), which is up to occur within two consecutive business days from beginning to end, as is addressed in ¶ 39, i.e., the Administrator must mail all notices within a two day period).

3. "Class Counsel" herein refers to Barrett S. Litt and Lindsay Battles of KAYE, McLANE, BEDNARSKI & LITT.

4. "Class Counsel Attorney's Fees" refers to the amount awarded by the Court as Class Counsel's attorney's fees in this case, to be approved by the Court upon motion by Class Counsel.

5. "Class Counsel Litigation Costs" refers to the amount of costs awarded by the Court upon motion by Class Counsel.

6. The "Class Fund" refers to the amount of $53 Million as damages compensation to the Class, to be paid by Defendants to the Administrator,

4

and out of which the costs of Administration, Plaintiffs' counsel expert/consulting, litigation and mediation fees, incentive awards and compensation to Class Members will be paid.

7.   The "Class Damages Period" refers to the period between March 5, 2008 (two years before the filing of the complaint) and January 1, 2015 (the date scanners or privacy partitions were available for all CRDF strip searches).

8.   A "Class Member" means any member of the certified Damages Classes. Although the Court certified two damages classes, one from March 2008 through June 30, 2011, and one from July 1, 2011 through January 1, 2015 (because scanners were then being used for all strip searches unless the inmate requested a strip search in its place), for purposes of this settlement and because summary judgment was granted to both classes, the Damages Class is defined for settlement purposes as "any female inmate at CRDF inmate who, upon their admission or return to CRDF, were visual body cavity searched in groups, without individual privacy between March 5 2008 (two years before the filing of the complaint) and January 1, 2015."

9.   The "Class Notice" means the notice to be sent to Class Members regarding this Settlement, in a form substantially similar to that attached hereto as Exhibit B, or as otherwise approved by the Court, and such other summary notice to be published in accordance with the terms of this Settlement Agreement.

10.  The "Class Member List" is a list of Class Members.  It is based solely on the records of the LASD. Only persons appearing on that list qualify as Class Members.

11.  The "Database" is the information provided in electronic form to the Administrator which information has been compiled from the electronic records of the LASD, as filtered to identify those meeting the class definition by the Parties' experts.

5

12. The "Defendants" are the County of Los Angeles, the Los Angeles Sheriff's Department, its prior Sheriff Leroy Baca, Sammy Jones, Timothy Cornell, John H. Clark, Stacey Lee, Dennis Burns, Gerald K. Cooper and Daniel Cruz.

13. The "Effective Date" is the date on which the District Court issues an Order granting final approval of the Settlement Agreement, except that if any objections to the settlement were submitted to the Court, the Effective Date is the date of the final resolution of any appeal of the Final Approval of this Settlement Agreement, or if no such appeal is filed, the expiration of the deadline for filing a Notice of Appeal.

14. The "Fairness Hearing" is the hearing on the fairness of this Settlement, which date will be set by the Court.

15. The "Final Order of Approval and Settlement" is the Order finally approving the settlement, entered by the Court (which may also be referred to herein as "Final Order").

16. The "Lawsuit" refers to the action styled *Amador et al. v. Baca et al.*, Case No. CV 10-01649 SVW (JEMx)..

17. The "Motion for Attorney's Fees and Costs" is Class Counsel's application for Attorneys' Fees and Costs.

18. The "Named Plaintiffs" or "Class Representatives" refers to the plaintiffs named in the Fourth Amended Complaint to this suit, who are Mary Amador, Lora Barranca, Alisa Battiste, Nancy Briseño, Felice Cholewiak (Vargas), Evangelina Madrid, Diana Paiz, Diane Vigil and Myeshia Williams. While Lora Barranca, Diana Paiz and Diane Vigil were named solely as injunctive relief plaintiffs under §1983, they were damages plaintiffs under state law and Class Members. For purposes of this Settlement, no distinction is made between or among the Named Plaintiffs.

19. "Preliminary Approval" is the Court's determination that the Settlement is within the range of possible approval and therefore that Class Notice should

6

be sent to Class Members and a Fairness Hearing should be set by the Court.

20. The "Preliminary Approval Order" is an order entered by the Court preliminarily approving the Settlement, after which Class Notice, the opportunity to object and Opt Out, and entry of a Final Order of Approval and Settlement would occur.

21. An "Opt-Out" is any Class Member who files a timely request for exclusion, pursuant to the terms of this Settlement Agreement, to be excluded from the Settlement Class. (If used as a verb, it refers to the process of filing such exclusion.)

22. The "Proof of Claim Form" means the Proof of Claim and Release Form required to be used in order to make a claim for payment under this Settlement. A copy of the proposed Proof of Claim Form is attached as Exhibit C. The pre-prepared Claim forms shall be bar coded to link with the Class Member's Database information and shall contain the damages to which the Class Member is entitled if s/he were to receive the full damages provided for in this agreement.

23. "Released Person" means the Defendants and their affiliates, subsidiaries, predecessors, successors, and/or assigns, together with all past, present and future officials, employees, representatives, attorneys, outside counsel, and/or agents of Los Angeles County. "Released Person" also includes any and all insurance carriers, and/or their representatives and attorneys, for the Released Persons.

24. "Remainder" refers to the amount in the Class Fund after payment of Class Counsel's Attorney Fees, Class Counsel's Litigation Costs, and mediation costs, and the Moss/CGJ Contracts. The "Minimum Remainder" is a figure used for purposes of determining whether *cy pres* payments are made and is based on the estimate of the maximum fees to be sought (1/3 of the $53 Million Fund), and estimated litigation and class administration costs ($1.5

7

Million), ~~and the Moss/CGJ Contracts (maximum $3 Million)~~; thus the Minimum Remainder is estimated to amount to $3~~3~~0,883,000, which the Parties agree to round up to $3~~4~~1,000,000.

25. The "Settlement" refers to this agreement.

26. A "Settlement Class Member" ("SCM") means any Class Member as defined above (whether or not she files a Timely Claim form), including representatives, successors and assigns, who does not file a valid and timely Request for Exclusion as provided for in this Settlement Agreement.

27. The "Settlement Fund" is the fund established by the Administrator with funds transferred from Defendants from which the damages to the Class Representatives and Class Members will be paid. The Defendants will pay all moneys they are obligated to pay under the Preliminary Approval Order, and the settlement approved by the Court, if any, into the Settlement Fund.

28. "Strip Search" means a search conducted by LASD personnel on a Class Member (as defined above) in which the person was required to remove her clothing, including underwear, in the presence of a corrections officer and/or expose her breasts, genitals or body cavities for a visual inspection. All persons appearing on the Class Member List were subjected to a strip search as defined herein.

29. A "Timely Claim" is one filed a) within the 150-day window provided by the notice to be sent to the class, and b) to the extent the Court approves, late claims (i.e., claims filed after the Class Notice period) that are filed prior to the Final Approval Hearing.

### III.   DISCLAIMER OF LIABILITY

1.     The Parties acknowledge and agree that all undertakings and agreements contained in this Settlement Agreement have been agreed to solely for the purpose of finally compromising all questions, disputes and issues between them relating to the litigation. This Settlement Agreement and any proceedings taken pursuant hereto shall not in any event be construed as, interpreted as, or

8

deemed to be evidence of an admission or concession by either party for any purpose, or deemed to constitute a waiver of any legal position or any defenses or other rights which the Parties might otherwise assert in any context. Neither this Settlement Agreement nor any provision contained therein, nor any documents related hereto, nor any negotiations, statements or testimony taken in connection herewith may be offered or received as evidence, or used for any other purpose, or in any suit, action or legal proceeding which either of them have or in the future may have with any other person, as an admission or concession of liability or wrongdoing on the part of either party, except in connection with any action or legal proceeding to enforce this Settlement Agreement. The Parties have reached this Settlement through arms-length negotiations and to avoid the costs and delays of further disputes, litigation and negotiations among them and after extensive negotiations with an independent mediator, subject to approval by the Court. This Settlement Agreement has been entered into without any concession of liability or non-liability whatsoever and has no precedential or evidentiary value whatsoever.

## IV.   FINANCIAL TERMS OF SETTLEMENT AGREEMENT AND CLASS DAMAGES ALLOCATION FORMULA

2.      The Class Fund is the amount of $53,000,000. The class administration costs shall be paid out of that fund, as will any incentive awards to the Class Representatives as approved by the Court. (Class Counsel's Litigation Costs will be addressed in Class Counsel's Motion for Attorney's Fees and Costs.) The Remainder of the Class Fund shall be distributed to the Class Members (including Named Plaintiffs/Class Representatives) under the formula terms provided in this Agreement.

3.      Subject to approval of the Court at the hearing regarding the Final Order of Approval and Settlement, the following incentive awards shall be paid to the Named Plaintiffs (in addition to the share of the Class Fund to which they are entitled as Class Members). Class Counsel represent that they have no prior agreement with any Named Plaintiff to seek such awards, nor do they have any

commitment to propose them. They are proposed at the initiative of Class Counsel
and are intended to reflect Named Plaintiffs' commitment to, and active assistance
in advancing, this Lawsuit since it was filed in 2010:

| NAME | INCENTIVE AWARD |
|---|---|
| Mary Amador | $10,000 |
| Lora Barranca | $10,000 |
| Alisa Battiste | $10,000 |
| Nancy Briseño | $10,000 |
| Felice (Cholewiak) Vargas | $10,000 |
| Evangelina Madrid | $10,000 |
| Diana Paiz | $10,000 |
| Diane Vigil | $10,000 |
| Myeshia Williams | $10,000 |
| **TOTAL** | **$90,000** |

4.      It is not currently possible to determine the amount of the Remainder
before the hearing regarding the Final Order of Approval and Settlement, where the
final amount of Class Counsel's Attorney's Fees and Costs awards, and class
administration costs , and the Moss/CGJ Contracts will be determined.

5.      The formula for distribution of the Remainder has been developed by
Class Counsel and, if approved by the Court, will be summarized in the Class
Notice to be sent to Class Members. The formula is designed to account for the fact
that the alleged severity of challenged conditions varied depending on the time
period the Strip Search occurred (with the most intrusive conditions before July
2011 and least intrusive conditions after February 2014 when the bus bay became
enclosed and had heating), the number of Strip Searches an inmate experienced and
the weather conditions when the Strip Search occurred.

6.      To briefly summarize, Class Counsel's assessment of these variations
in conditions, which are factored into the class damages allocation formula, are as
follows:

| TIME PERIOD | CONDITIONS |
|---|---|
| **2/26/2014 – 1/31/2015**<br><br>**(Core Conditions Applicable to All Class Members Regardless of Time Period)** | **Conditions:**<br><br>(1) female inmates required to participate in group Strip Searches in which the labia lift procedure was used;<br>(2) female inmates required to publicly identify if they were menstruating, remove feminine hygiene products in view of other inmates; and<br>(3) female inmates required to expose their naked body – including bare pubic region and bare breasts – in the presence of a group.<br>(4) inmates searched in groups of 24 inmates (or more, see below). |
| **4/1/2013 – 2/25/2014** | **Conditions:**<br><br>• All above conditions<br>*plus*<br>• Group Strip Searches occurred in a converted bus garage with a chain link fence roof with a tarp on it and no heaters. |
| **7/1/2011 – 3/30/2013[1]** | **Conditions:**<br><br>• All above conditions<br>*plus*<br>• Inmates searched in groups larger than 24 inmates<br>• Inmates required to put clothing directly on the ground. |
| **3/5/2008 – 6/30/2011** | **Conditions:**<br><br>• All above conditions<br>*plus*<br>• Deputies simultaneously searched both lines of female inmates so that inmates were directly viewing each other during the Strip |

---

[1] This subclass was because LASD reduced its class sizes to a maximum of 25 and installed tables on which clothes could be placed in April 2013.

11

| TIME PERIOD | CONDITIONS |
|---|---|
|  | Search. |

7.　　Based on the above considerations, Class Counsel have devised a distribution model in which Class Members are compensated based on the number of Strip Searches they endured, with searches weighted based on the time period in which they occurred (which, in turn, corresponds to the severity of conditions). Each Strip Search is assigned a point-value which will translate to a per-diem dollar value at the time of distribution. Class Members receive the designated number of points based on the number of Strip Searches in each category.

8.　　The chart below shows the categories, conditions associated with each category, and points assigned to each category.

| Time Period | Points Per Strip Search |
|---|---|
| 3/8/2008 – 6/30/2011 | 100 |
| 7/1/2011 – 3/31/2013 | 90 |
| 4/1/2013 – 2/25/2014 | 80 |
| 2/26/2014 – 1/31/2015 | 70 |

9.　　The distribution model also provides an additional 10-points for any Strip Search conducted at a temperature of 70 degrees or less.

10.　　The per-search points are assigned to each Class Member, up to their 50th search. The "50-search cap" applies to less than .04% of the Class. This cap is to ensure that outliers who have outsized claims do not distort the meaningfulness of the recovery to the remaining Class Members. (Such outliers would be entitled to opt out and pursue their own claims if they so choose.)

11.　　That Class Member's point total is the sum of all their assigned points. The final distribution will be based on the total points for each Class Member who filed claims, divided by individual points assigned to each claiming Class Member.

(If, for example, there is a total of 1,000,000 points for the aggregated Timely Claims, and Class Member "X" had a total of 200 points, Class Member "X" would receive .02% (or .0002) of the Remainder; if the Remainder is the Minimum Remainder of $31 Million, that Class Members would receive $6,200). These figures are purely hypothetical and should not be considered as reflective of any likely award. Because it is anticipated that not all Class Members will make Timely Claims, and this is a non-reversionary fund (except as provided in Section VI, below, for *cy pres* payments in the event of a low claim rate, which the Parties do not anticipate), a claiming Class Member's share of the Remainder will be determined based on that Class Member's share of the total points for Class Members who made Timely Claims.

12. No Class Member who filed a Timely Claim will receive less than $200 (the minimum will be at least $200 but may be adjusted upwards) subject to the limit of the Class Funds available in the Remainder. The minimum provision is designed to ensure that all Class Members who submit Timely Claims receive some recovery.

13. None of the Class Fund shall revert to the County. Accordingly, as explained above, the money per Class Member making a Timely Claim will increase proportionately to the extent that fewer Class Members make a claim.

14. Class Counsel intend to submit a separate Motion for Attorney's Fees and Costs to be heard at the hearing regarding a Final Order of Approval and Settlement, to be analyzed under the standards for an award of fees and costs to a prevailing plaintiff under the percentage of the fund doctrine. While the motion will seek a percentage of the Class Fund as a fee award, subsumed within that request will be any statutory attorney's fee to which Class Counsel would be entitled under 42 U.S.C. § 1988 or Cal. Civil Code § 52.1(h). The Class Notice will advise Class Members of Motion for Attorney's Fees and Costs and their right to object to it.

15. The LASD represents that to the best of its knowledge, it has provided all the electronic data in its possession, which it is legally authorized to produce,

13

regarding Class Members necessary to both identify and contact Class Members. The LASD shall provide to the Administrator, to the extent that such information has not already been provided, any such additional information in its possession which it is legally authorized to produce. Such information shall include date of birth, social security number (SSN), driver's license/state ID number, and most recent contact information (address, phone and any other available contact information). In addition, LASD shall provide to the Administrator and Class Counsel the data from the Automated Justice Information System ("AJIS") Released-to-Agency field indicating whether a Class Member was released to the custody of another law enforcement agency. This information may only be used to reach out to Class Members to ensure they receive the Class Notice and are aware of how to file a claim pursuant to this Agreement.  LASD will make a written request to the California Department of Corrections and Rehabilitation ("CDCR"), which request will include a list of Class Members who were transferred to CDCR from LASD custody, and request that CDCR:  (1) advise the Administrator of where and how the Class Notice to those Class Members still in CDCR physical custody should be sent; and (2) provide the Administrator with the most recent contact information in CDCR's records (including records in the Division of Adult Parole Operations, where applicable) for each Class Members who is no longer in CDCR physical custody. When making the foregoing request to CDCR, LASD will provide to CDCR any individualized identifying information in its possession that it is legally authorized to include that could assist CDCR in identifying Class Members.

    If CDCR provides a response, LASD will then advise Class Counsel of CDCR's response, and if CDCR either fails to respond or refuses to provide assistance, Class Counsel may seek Court assistance in securing the cooperation of CDCR to effectuate service of the Class Notice and to obtain the most up to date contact information for Class Members.  Neither the County nor the LASD will have any further obligation with respect to efforts to obtain contact information for

Class Members from CDCR beyond the efforts described above, except that it will engage in any reasonable follow-up requested by CDCR.  LASD will likewise have no further obligation to assist with securing cooperation regarding the provision of Class Notice to Class Members still in CDCR custody.

Nothing in this agreement precludes Plaintiffs from seeking a court order authorizing the LASD to provide CII and FBI numbers directly to CDCR as part of efforts to identify Class Members and provide Class Notice to individuals who were previously transferred to CDCR. Should Plaintiffs file such a motion, they will serve the Attorney General of the State of California and the Federal Bureau of Investigation with the motion in order to provide each with the opportunity to be heard. Plaintiffs will not seek access to such records for themselves or for the Administrator.

## V.     RELEASES AND OTHER SETTLEMENT TERMS

16.     The Parties enter into this Agreement solely for the purposes of this Settlement and implementation of the Settlement. If the Settlement fails to be approved or otherwise fails consummation, then this Settlement Agreement is hereby withdrawn.

17.     An SCM who complies with the requirements set forth in this Settlement Agreement and files a Timely Claim form will be paid specified sums determined by the distribution process set forth above, which payment shall be in full satisfaction of all claims of that SCM.

18.     The Settlement Agreement, as of the Effective Date, resolves in full all claims against the Released Persons by all of the SCMs, including the Named Plaintiffs, involving violations of law or constitutional rights, including, without limitation, their equal protection rights under federal and California law, their rights under 42 U.S.C. § 1983 and California Civil Code § 52.1, any other rights under any other federal, state or local law, regulation, duty, or obligation, or any other legal theory, action or cause of action, which arise from the class-wide factual allegations alleged in the Fourth Amended Complaint, which is the operative

15

pleading in this matter ( "Covered Claims").

19.     When the Settlement Agreement is final, as of the Effective Date, all SCMs, including the Named Plaintiffs, waive all rights to any and all claims relating to damages or reimbursement of any kind for the Covered Claims. This waiver and release shall include a full release and waiver of unknown rights regarding the Covered Claims that may exist as of the Effective Date.

20.     As of the Effective Date, the SCMs, including the Named Plaintiffs, hereby waive any and all rights to pursue, initiate, prosecute, or commence any action or proceeding before any court, administrative agency or other tribunal, or to file any complaint regarding acts or omissions by the Released Persons with respect to the Covered Claims during the class period; and further, as it relates to this waiver or Release, expressly waive the provisions of California Civil Code § 1542, which provides that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

21.     This Settlement Agreement, together with its exhibits, contains all the terms and conditions agreed upon by the Parties regarding the subject matter of the instant proceeding, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Settlement Agreement shall be deemed to exist, or to bind the Parties, or to vary the terms and conditions contained herein, except as expressly provided herein.

22.     Each SCM shall be deemed to have submitted to the jurisdiction of the Court.

23.     This Settlement Agreement is subject to and conditioned on entry by the Court of a Final Order of Approval and Settlement and the issuance of the final order of dismissal by the Court, providing the specified relief as set forth below, which relief shall be pursuant to the terms and conditions of this Settlement Agreement and the Parties' performance of their continuing rights and obligations

hereunder. The Final Order of Approval and Settlement shall be deemed final on the Effective Date. Such Final Order of Approval and Settlement shall:

    a. Dismiss with prejudice all claims in the action as to the Released Persons including all claims for monetary damages, declaratory relief and injunctive relief, each side to bear its own costs and fees except as otherwise provided for in this Settlement Agreement;

    b. Order that all SCMs are enjoined from asserting against any Released Person any and all claims that any SCM had, has or may have in the future based on the Covered Claims;

    c. Release each Released Person from the claims that any SCM has, had or may have in the future against such Released Person arising out of the Covered Claims;

    d. Determine that this Settlement Agreement is entered into in good faith, is reasonable, fair and adequate, and in the best interest of the Class; and

    e. Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Settlement Agreement, including Defendants and SCMs, to administer, supervise, construe and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of all Parties.

24.    The Parties will take all necessary and appropriate steps to obtain preliminary and final approvals of the Settlement Agreement, and dismissal of the action with prejudice, all Parties bearing their own fees and costs unless otherwise set forth in this Settlement Agreement. If the Court gives final approval of this Settlement Agreement, and if there is an appeal from such decision, the Parties will defend the Settlement Agreement.

## VI.   CY PRES DISTRIBUTION IN THE EVENT OF A LOW CLAIM RATE

25.    In order to ensure that Class Members do not receive a windfall because there are relatively few claims filed, the Parties agree that, if the total claims do not amount to the Minimum Remainder based on the following formula, the difference between those aggregated claims and Minimum Remainder will go to

the organizations identified in ¶ 30. The formula to determine whether such *cy pres*
payments are to be made (referred to as the "*Cy Pres* Formula" shall be as follows:

| CY PRES FORMULA | |
|---|---|
| # SEARCHES | AMOUNT |
| 1-3 | $5,000 |
| 4-6 | $10,000 |
| 7-10 | $15,000 |
| 11+ | $20,000 |

26.     Thus, by way of example only, if the Minimum Remainder is $31
Million, 4000 Class Members filed claims (which the Parties agree is likely a low
claim rate), and the average of their claims based on the *Cy Pres* Formula amounted
to $9000 per claimant, the total would be $36,000,000, and no *cy* pres distribution
would apply. In contrast, if 3000 people filed claims based on the same average
$9000 per claimant and same $31 Million Minimum Remainder, then $4,000,000
(the difference between the $31 Million Minimum Remainder and the $27,000,000
claimed amount based on the *Cy Pres* Formula), would go to the *Cy Pres Fund.*

27.     The foregoing formula only applies in the event that the total claims do
not amount to the Minimum Remainder based on the *Cy Pres* Formula. Otherwise,
the allocation formula set out in Section IV, above, applies.

28.     The *Cy Pres* funds will not be returned to the County's general fund
but will instead be provided to non-profit organizations or programs which provide
gender-responsive services to female inmates in LASD custody.  At the time that it
is determined that any *Cy Pres* funds are to be distributed, counsel for the Parties in
this case and the LA County Board of Supervisors will work in good faith to
identify the organizations or programs to receive those funds.  If they cannot agree,
the Parties will separately brief the Court, and the Court will determine the
organizations and/or programs to which the *Cy Pres* funds will be paid.

## VII.   RESOLUTION AND PAYMENT OF CLAIMS

29.     Defendants agree to the division of funds between Incentive Awards

and the Remainder as proposed by Class Counsel subject to the approval of the Court.

## VIII.  CLASS COUNSEL FEES

30.     Class Counsel will file a Motion for Attorney's Fees and Costs on a percentage of the fund basis, and the payment of said fees and costs is subject to Court approval. Class Counsel will not seek more than 1/3 of the $53 Million Class Fund as the amount of attorney's fees requested; Class Counsel may seek less but may not seek more. (This 1/3 cap is separate from Class Counsel's costs, i.e., Class Counsel may request up to 1/3 of the Class Fund plus costs.)

## IX.    CLASS ADMINISTRATOR

31.     Counsel for the Parties will jointly agree on the selection of the Class Administrator and, if they cannot so agree, will submit their suggestions to the Court and the Court will determine the Administrator.  The Parties understand the importance of a rapid process for choosing the Class Administrator and are committed to reaching a joint selection as soon as practicable.

32.     The Administrator shall be responsible for taking any steps deemed appropriate and necessary by Class Counsel to notify the Class Members of their rights to file claims, and to assist them in doing so. Class Notice shall be issued electronically by email and text message (for all Class Members whose email addresses and mobile phone numbers can be and have been obtained) by the date set in the Preliminary Approval Order for the initial mailing of Class Notice. On that same date, Class Notice shall be provided by regular mail for all Class Members for whom an email address and mobile phone number have not been obtained, for all incarcerated Class Members.

33.     For those Class Members whose initial Class Notice was sent by the combination of email and text message who have not responded by filing either a claim or an Opt Out within 30 days, they will be sent by regular mail the Class Notice previously provided to the other Class Members whose Class Notice was sent by regular mail, along with a statement that they were sent by email and text

19

message a Class Notice as well, and this is being sent to ensure that they have seen the Class Notice. (*See,* ¶ 40 for elaboration.)

34.     The Administrator's duty shall include the use of normal and customary means to search for a Class Member's email addresses, mobile phone numbers and last known mailing addresses, including the use of a postal database and other specialized databases, when mail is returned. As indicated above, the Administrator shall initially send electronic copies of the Class Notice to any inmates for whom email addresses and mobile telephone numbers are ascertainable and at the same time send a hardcopy version and claim form to any Class Member whose email and mobile phone numbers are not ascertainable, as well as any Class Members who are currently incarcerated in California State prisons. (The Administrator is responsible for making reasonable efforts to determine Class Members who are now incarcerated in California state prisons). The Administrator will also propose economically viable and likely productive forms of notice through the use of social media and online advertising.

35.     Beginning when it is first retained after the Court approves its appointment, the Administrator will begin to obtain as many Class Member email addresses and mobile phone numbers as reasonably possible. Before the filing of the Motion for Preliminary Approval, the Administrator will advise the Parties and the Court of when the Administrator believes it can reasonably obtain available Class Member email addresses, phone numbers and mailing addresses, and the date for mailing the Class Notice shall be set with that time in mind.

36.     Notice shall proceed as follows:

> 1) Initial Class Notice shall commence with email **and** text notices for all Class Members whose email addresses and/or mobile phone numbers are ascertainable (assuming both are ascertainable, Class Members will receive two forms of electronic notice; if either the email address or mobile phone number cannot be obtained, the notice will be sent via the

available means).

2) On the same day, notice by regular mail shall be sent to all Class Members for whom *either* an email address or mobile phone number or both could not be ascertained. This means that all Class Members will receive the Class Notice by either (1) email <u>and</u> text; or (2) regular mail *plus either* email or text (assuming one of the two is available); or (3) regular mail only (for those whose email and mobile phone numbers cannot be located).

3) Thirty days after the initial issuance of Class Notice, the Administrator will send notice by regular mail to all Class Members who were initially notified only by electronic means only (those who received notice by email and text) and who have not yet submitted claim forms along with the explanation that they were sent such electronic notice but this notice is being sent as well because they did not file a claim or exclude themselves from the settlement.

4) Throughout the notice period, the Administrator shall continue to send email and text notice if and when it learns additional email addresses/phone numbers for Class Members.

5) Where Class Notice is sent by email or text, the Class Administrator will periodically remind Class Members through email/text blasts to file claims. (If possible, procedures shall be implemented to remove Class Members from email/text blasts who have submitted claims).

37.    The Administrator shall complete the initial Class Notice within two consecutive business days. The second day of such mailing is the first day of the period for calculating the "Bar Date" (defined previously). That mailing shall occur as soon as practicable after the settlement has been Preliminarily Approved and no later than the date set by the Court.

21

38.     The Class Notice shall describe the particulars of the case, provide the class definition, provide information for claimants to contact the Administrator for a claim form, notify Class Members of establishment of a case website, and contain other usual and customary information. The proposed Class Notice is attached to this Settlement Agreement as Exhibit B.

39.     The Administrator will include in its bid a line item for the cost of obtaining from CDCR the identities of Class Members in CDCR custody to whom Class Notice should be sent at their CDCR housing location.

40.     The Parties discussed and presently do not intend to publish Class Notice in local newspapers because experience has shown that such notice is of little value in notifying Class Members. Instead, mail, email and text notice will be supplemented through summary publication in Prison Legal News (a publication widely distributed to inmates throughout the country); and through selective social media/online outreach directly targeting Class Members' Facebook and/or Instagram accounts.

41.     If specifically requested by Plaintiffs' counsel, the Defendants will seek to obtain the cooperation of CDCR (subject to the limitations set forth in Paragraph 15), and the Los Angeles County Probation Department to assist in locating Class Members, including, where Defendants believe legally permissible, providing more recent contact information for Class Members. The LASD will advise on its website of the existence of this Settlement and place a link on the website to connect viewers to the Administrator's website. The LASD will also post physical copies of the Class Notice (Exhibit "B") in CRDF Reception and Day Rooms.

42.     The request for bid to potential Administrators included requests for all such potential activities as well as suggestions for other ways of reaching potential Class Members. That request for bid also requested economically viable proposals for means by which Class Members can receive payment through electronic means rather than by check. There will also be requests to nonprofits that

22

address criminal justice reform, reentry or programs for former inmates to provide notice on their websites and to their mailing lists.

## X.   CLASS ADMINISTRATION FOR PROOF OF CLAIM FORMS AND PAYMENT SCHEDULE

43.    The Administrator shall be responsible for providing and receiving Proof of Claim Forms in paper and electronic format. The Administrator shall determine Class Membership and the amount of monies due each timely claiming Class Member based on the formula contained in Section IV.

44.    A Proof of Claim Form shall be deemed timely submitted under subsection (a) of Definition # 29 (Timely Claim) when received by the Administrator, or postmarked, on or before the Bar Date. Facsimile or electronic mail filings are acceptable and timely so long as they clearly indicate the case on which the claim is filed and are received on or before the Bar Date.

45.    If a Class Member submits a Claim Form that is deficient in some respect, the Administrator shall provide written notice by First Class Mail and a 30-day time limit to provide a proper Claim Form, which notice shall inform the Class Member of what she must do in order to submit a proper claim. Failure to cure the deficiency within the 30-day time limit will bar any further rights for consideration of eligibility to make a valid claim. So long as the original claim is received on or before the Bar Date, it shall be considered timely under sub-section (a) of Definition # 30 (Timely Claim) if any deficiency is cured within 30 days of the mailing of a notice of deficiency.

46.    Claim Forms received after the Bar Date shall be rejected. The Administrator will notify claimants of the rejection of untimely Claims.

47.    The $53 Million payment shall be made in three equal installments, the first of which shall be made 30 days after the Effective Date, the second of which shall be made twelve months after the first payment, and the third of which shall be made twelve months after the second payment.

48.    The costs of Class Administration through the Final Order of Approval

and Settlement and the first round of distribution of checks will be taken from the first payment; 1/3 of the costs of the Moss/CGJ Contracts shall be taken (or held for that purpose by the Administrator) from each payment.

49.     For each payment, 1/3 of the total Attorney's Fees and Costs awarded by the Court to Class Counsel shall be paid into the KMBL Client Trust Account and the remaining funds shall be paid to the Class Administrator for distribution under the terms of this Agreement.

50.     The Class Administrator shall take its accrued and reasonably projected costs of administration for that round from the second and third round of payments.

51.     In addition to the first round of payment to qualifying Class Members, the Administrator will advise them of the estimated time of payments to be made in the second and third rounds and advise Class Members to keep them apprised of any address changes.

52.     The Administrator shall make the first round of payments to SCMs who have filed Timely Claims as ultimately determined by the Court in accordance with this Settlement Agreement within a reasonable time not to exceed 90 days after the Effective Date.

53.     If a check to an SCM is not cashed within three months of its mailing, the Administrator shall hold the funds for nine additional months, during which time it shall make reasonable efforts to contact the person to whom the uncashed check was written to make arrangements for its cashing or reissuance. The Administrator shall not make any payment to any SCM until all claims have been submitted to the Administrator pursuant to the terms of this Settlement Agreement.

54.     Any SCM funds not cashed within one year of a check's initial mailing shall be voided, and those funds ("Uncashed Funds") shall held for the next round of payments. Where an SCM's check was not cashed within that one year period, that SCM shall be eliminated as a qualifying Class Member, and that SCM's past and future funds shall become part of the fund for future distribution to Class

Members, and allocated to the remaining SCM's during the next round of payments according to the Class Damages Allocation Formula contained in Section IV.

55.     Uncashed funds remaining in the Class Fund one year after the third round of payments shall be given as a donation to the *Cy Pres Fund* (see ¶ 30)*,* to be allocated equally among the qualifying organizations/ programs.

## XI.        EXCLUSION FROM SETTLEMENT CLASS—OPT OUTS

56.     Any Class Member who wishes to be excluded from this Settlement must submit a request to be excluded from the class, a process defined herein as "Opt-Out." The request for exclusion must be delivered to the Administrator, or postmarked, on or before the Bar Date or as the Court may otherwise direct.

57.     Although Named Plaintiffs are entitled to Opt-Out of the Settlement, Plaintiffs' counsel has conferred with each of them, and they all approve of and support the settlement, and have advised that they do not intend to Opt-Out.

58.     Each Class Member who chooses to Opt-Out from or object to this Settlement shall be deemed to have submitted to the jurisdiction of the Court with respect to his/her claim.

59.     Any Class Member who does not Opt-Out as set forth in this Settlement Agreement, shall be deemed conclusively to have become an SCM and to be bound by the Settlement Agreement and all subsequent proceedings, orders and judgments herein, regardless of whether s/he files a claim form.

60.     Any Class Member who exercises an Opt-Out shall not share in any monetary benefits provided by this Settlement Agreement.

61.     The Administrator will periodically report to Defendants' counsel and Class Counsel regarding all Opt-Outs received and will determine and report to counsel the total number of Opt-Outs no later than 10 days after the Bar Date.

62.     If the total number of Opt-Outs exceeds 250 individuals, Defendants, in their sole discretion, may rescind this Settlement Agreement. In exercising this right of rescission, Defendants shall provide the Administrator and Class Counsel with written notice of rescission within 20 days after receipt of the Administrator's

report providing the total number of Opt-Outs. In the event Defendants exercise the right of rescission in accordance with this paragraph, any funds paid or deposited pursuant to this Settlement Agreement shall be returned to Defendants within 10 days of the rescission, less any expenses, fees and costs incurred by the Administrator. Rescission shall return the Case to active litigation status.

## XII. APPROVALS REQUIRED

63. The Los Angeles County Board of Supervisors has approved the terms of this Settlement although, after Final Approval, it will have to finally approve the Final Order of Approval and Settlement.

## XIII. DISPUTE RESOLUTION

64. In the event of any disputes regarding implementation of the Settlement Agreement as set forth herein, they shall be resolved by the Court.

## XIV. THE MOSS/CGJ CONTRACTS

65. Plaintiffs and Class Counsel agree that the Moss/CGJ Contracts constitute Subsequent Remedial Measures in response to the events underlying this litigation pursuant to Rule 407 of the Federal Rules of Evidence (and similar statue statutes like California Evidence Code § 1151). Plaintiffs and Class Counsel also agree that any reports generated by the Moss Group or CGJ pursuant to contracts entered into under the terms of this Settlement Agreement are statements of those entities and do not constitute party statements of Los Angeles County or the LASD within the meaning of Rule 801 of the Federal Rules of Evidence (and similar statue statutes like California Evidence Code § 1220).

66. The initial reports prepared by the Moss Group or CGJ paid for by funds provided under this Settlement Agreement will be provided to the Board of Supervisors and to Class Counsel. Class Counsel will also receive copies of the non-privileged portions of follow up reports back to the Board about the Moss Group/CGJ Reports or Contracts by any County agencies. All such reports provided to Class Counsel shall be confidential and will not be publicized or disclosed to any other party, except to the extent they have been made public by the Board.

26

67.    Any reports prepared by the Moss Group or CGJ are their analyses and recommendations. Nothing in this Agreement requires that they be accepted or implemented by Defendants, who reserve the right to decline to implement any recommendation made in the Moss/CGJ Contracts for any reasons.

## XV.XIV.    INTEGRATION

68.65. This Settlement Agreement supersedes all prior communications regarding the matters contained herein between the Parties or their representatives. This Settlement Agreement is an integrated agreement and contains the entire agreement regarding the matters herein between the Parties, and no representations, warranties or promises have been made or relied on by any party hereto other than as set forth herein. This Settlement Agreement was drafted by counsel for the Parties hereto, and there shall be no presumption or construction against any party.

## XVI.XV.    FAIRNESS HEARING AND FINAL ORDER OF APPROVAL

69.66. Before this Settlement Agreement becomes final and binding on the Parties, the Court shall hold a Fairness Hearing to determine whether to enter the Final Order of Approval and Settlement. A proposed Final Order of Approval and Settlement shall be submitted to the Court incorporating the terms of this Settlement Agreement and addressing related information such as Objections and Opt-Outs.

## XVII.XVI.  NO THIRD PARTY BENEFICIARIES INTENDED

70.67. This Settlement Agreement does not and is not intended to create any rights with respect to any third Parties, except as otherwise provided herein.

## XVIII.XVII.    COUNTERPARTS

71.68. This Settlement Agreement may be signed in counterparts.

DATED: _____                  KAYE, MCLANE, BEDNARSKI & LITT

By: _____
                Barrett S. Litt


By: _____
                Lindsay Battles
            Attorneys for Plaintiffs

DATED: _____        GLASER WEIL

By: _____
                Andrew Baum
            Attorneys for Defendants

LIST OF EXHIBITS TO SETTLEMENT AGREEMENT

Exhibit B          Class Notice

Exhibit C          Proof of Claim and Release Form

**Exhibit C**

**(Class Action Lawsuit Against LASD for Strip Searches at CRDF)**
*Amador v. Baca* - CV 10-01649 SVW

## Class Action Settlement Notice

*Amador v. Baca* is a class action lawsuit against the Los Angeles County Sheriff's Department ("LASD" or "County"). It challenges the way LASD performed strip searches at the Century Regional Detention Facility ("CRDF"), located in Lynwood, CA.  In 2017, the court found the LASD's search practices were unconstitutional. The parties have now reached a settlement. If the Court approves the settlement, class members will receive money.

You are a class member and may be entitled to money if you were searched in a group, upon entering or returning to CRDF, between March 5, 2008, and January 31, 2015. Class members *could be entitled to several hundred dollars per search, and thousands of dollars for those searched many times.* Anyone who qualifies and files will get at least $200.

You may be entitled to receive **MONEY**, but only if you **FILE** a **CLAIM** no later than [date]. **DON'T DELAY.**

There are three ways to file a claim:

    (1)    Go to [website]
    (2)    Email a copy of the enclosed claim form [email]
    (3)    Mail a copy of the enclosed claim form [address]

**If you do not submit a claim, you will receive no money.**

If you have questions, email or call 1-_____. The following pages provide more information and answer common questions.

**Esta Notificación de arreglo colectivo está disponible en español. Llame sin cargo: 1-_____o visite el siguiente sitio web: www._____.com.**

1

**Questions:**

### 1.  Who is part of this case?

You are a class member (part of this case) if you were strip searched in a group, outside in the bus garage, while entering or returning to the Lynwood Jail ("CRDF"). The case covers such searches for the period March 5, 2008 to January 31, 2015. Only LASD records will be used to decide who is a class member.

### 2.  Who is the judge presiding over the case?

This case was filed in United States District Court. The Judge is United States District Court Judge Stephen Wilson. Judge Wilson will decide whether the settlement is fair to class members.

### 3.  Why am I receiving this notice?

The court is sending this notice to everyone who may qualify as a class member. If you are a class member, the settlement will affect your rights. You have a right to know about the settlement and your choices.

### 4.  Who are the lawyers representing class members?

The Court has approved a team of lawyers (called "Class Counsel") to collectively represent you. These lawyers have been working on this case since 2010. You don't have to pay your own money for the work these attorneys have done. Instead, the lawyers will ask to be paid from the total settlement fund. You can hire your own lawyer to advise you if you want but don't need to.

### 5.  How much money will the LASD pay and how will it be distributed?

The settlement provides for payment of a total of $53 million dollars. Here's how the money will be divided:

   a.  Between approximately $34 million to $39 million will be divided among class members who file claims. (How much depends on certain decisions the Court makes.)

   b.  The attorneys will be paid fees not to exceed one-third (33.33%) of the total fund, plus case expenses, which could be up to approximately $18,000,000 if plaintiffs' counsel requests 1/3. The Court may pay the attorneys less than 33% but not more.

c.  Payment of $10,000 to each of the 9 class representatives for their role in starting and supporting the case.

d.  Additional payments to a court appointed class administrator to notify the class and distribute the money.

## 6.  How much money will I receive?

Each class member who submits a claim will receive a share of the settlement based on the total number of claimants (people who submit claims). The money will be divided among the claimants based on several things: the number of searches each person had, the weather when the search happened, and how bad the lack of privacy was during the search (the earlier searches were generally worse). Each person will receive a certain number of points based on these issues, and the settlement will be divided based on each person's points.

If you don't file a claim on time, you will get no points and no money. It is divided only to those who file on time.

No class member who files a claim will receive less than $200 (for one search under the least bad conditions). Persons with the highest number of searches – up to 50 will count for points – will likely receive thousands of dollars.

## 7.  How much will the lawyers be paid?

The court will decide how much they will be paid. The lawyers may ask the Court for a fee of up to one-third (33.33%) of the total available class fund (one-third of 53 million), plus case expenses, which could be up to $18,000,000 if plaintiffs' counsel requests the full 1/3. The Court can award less than that, but not more.

You will not personally pay any attorneys' fees that the court awards to the attorneys.

## 8.  If I do not like the settlement – or some part of it – how do I tell the Court?

You can stay a class member and object to all or part of the settlement . If you object, you must tell the court specifically what you think is unfair about the settlement or request for fees.

To do this, mail a written statement with the case name and number at the top of the page (*Amador v. Baca*, Case No. CV 10-01649 SVW). Include your name,

your address, your telephone number, signature and the reason why you object. (If you previously used a different name, include any names you have used.)

Your objections must be mailed and postmarked no later than [date]. You must send your objection and copies to all the people in the chart below.

| Clerk of the District Court | Kaye, McLane, Bednarski & Litt<br><br>Attn: Julia White<br>975 E. Green Street<br>Pasadena, CA 91106<br><br>[counsel for Plaintiffs] | Glaser Weil<br><br>Attn: _____<br>10250 Constellation Blvd #19<br>Los Angeles, CA 90067<br><br>[counsel for LASD] |
|---|---|---|

The Court will consider your objection and decide whether to overrule it or change the settlement agreement. You will only be allowed to appear at the hearing and argue your objection to the court if your objection states you wish to do so.

If the court accepts or rejects your objection, you remain a member of the class and will be bound by the settlement agreement, and will get your share of the settlement. (This means you're giving up claims against the LASD for strip searches covered by this case.)

## 9.    Can I exclude myself from the settlement?

If you do not want to be a member of the class at all, or if you want to be able to file your own lawsuit, or be part of a different lawsuit, then you must take steps to exclude yourself.  This is sometimes is referred to as "opting out" of the class.

To do this, mail a written statement with the case name and number at the top of the page (*Amador v. Baca*, Case No. CV 10-01649 SVW). Include your name, your address, your telephone number, signature and a statement that you wish to exclude yourself or similar words. (If you previously used a different name, include any names you have used). You don't need to explain why you are excluding yourself.

You must mail your Exclusion Request, postmarked no later than [date], to:

*Amador v. Baca* Settlement Administrator
_____
_____

4

**10.     What is the difference between objecting and excluding yourself?**

Objecting is telling the Court that you do not like something about the settlement but staying in the case.  Excluding yourself or "opting out" is telling the Court that you do not want to be part of the case.  If you exclude yourself, you cannot object because you are no longer part of the case, and it doesn't affect you.

**11.     What if I do nothing?**

If you do nothing, you will receive no money from the settlement **and** you will be giving up your rights against the County. **Be sure to file a claim form unless you exclude yourself.**

**12.     Am I giving up any rights?**

People who submit claims, object or do nothing, give up their right to sue the LASD (or its employees) for claims covered by this case. This means that you will not be able to sue the LASD for strip searches that occurred when entering or returning to CRDF between March 5, 2008 and January 31, 2015. You are not giving up claims against the LASD unrelated to this case.

People who exclude themselves ("opt out") do *not* give up claims because they are no longer part of the case.

**13.     When will the judge decide whether to approve the settlement?**

The Court has scheduled a hearing for [date/time] to decide if the settlement is fair. If the Court decides it is, it will approve the settlement and will determine the attorneys' fees and costs to be awarded.  The hearing date may change. There will not be a new notice if it does.

[hearing location]

You can come to the hearing, but you do not have to. The attorneys handling the case will answer any questions the Court may have.

If you submitted an objection and indicated that you wanted to speak at the hearing, the Court *may* permit you to speak.

**14.     When will I receive money from the settlement?**

The Court has set the last day to submit a claim for [date].

**If you do not submit a claim by then, you get no money. So file early.**

After final court approval, it will take at least two to three months, and possibly more, to process claims and calculate the amount due to each class member, and begin payments.

Because of the large size of the fund, the County will pay the claims (and attorney's fees and costs) in three payments, a year apart. Class members will be paid in one, two or three payments, depending on how large their claim is. You will be notified with the first payment of whether and when you will receive additional payments.

After you file a claim, check the website for this case about the status of court approval and when payment mailings are expected. Or contact the class administrator by calling: 1-855-233-1237 or via the website www.lynwoodstripsearch.com.

### 15.   Where can I learn more?

For more details, go to the website titled www.lynwoodstripsearch.com. The website has links to the complete settlement documents in this case, as well as the motion for attorneys' fees.  If you still have questions, you may call 1-855-233-1237

**Exhibit D**

Amador v. Baca
c/o JND Legal Administration
P.O. Box XXXX
Seattle, WA 98111

## CLASS ACTION CLAIM FORM

In order to receive money from the Settlement, please complete and return this Claim Form to the Settlement Administrator at the above address (postmarked by **DATE**).  **DO NOT DELAY**.

|||||||||||||||||||||||||||||  Claim #:

First Last (pre-print)
c/o (pre-print)
Address (pre-print)
City, ST Zip (pre-print)

Name/Address Changes (if any)

_____    _____
First Name              Last Name

_____
Address

Email address: _____

_____, _____  _____
City                        State    Zip

Mobile Phone Number

Alternate Phone (if any)

(_____) _____
Area Code

(_____) _____
Area Code

Date of Birth: _____ / _____ / _____
Month      Day        Year

Last 4 Digits of Social Security Number: ____ ____ ____ ____

Other Names I Have Used: _____

**By signing this form, I am confirming under penalty of perjury:**

1. I am the person identified above.
2. Between March 5, 2008 and January 31, 2015, I was strip-searched in a group, in an outdoor area at the Century Regional Detention Facility ("CRDF" or "Lynwood").
3. I understand I will be limited to the formula for damages approved by the Court and that determinations of the number of times I was searched and dates of my searches will be based exclusively on the records of the Los Angeles Sheriff's Department (the "LASD").

**Date:** _____    **Signature:** _____
(mm/dd/yyyy)

**You must keep the Settlement Administrator apprised of your contact information at all times**. If you move, please immediately update the settlement administrator by mail at the address above or by e-mail at info@lynwoodstripsearch.com.

Questions? Visit www.LynwoodStripSearch.com or call toll-free at 1-855-223-1237.

**Exhibit E**



PROPOSAL FOR

# Amador v. Baca

SEPTEMBER 19, 2018

CLAIMS RATE - 15%



*Confidential*
Jennifer Keough – CEO
(206) 919-5768
jennifer.keough@jndla.com

**Barrett S. Litt, Esq.| Kaye, McLane, Bednarski & Litt, LLP | blitt@kmbllaw.com**
**Lindsay Battles, Esq.| Kaye, McLane, Bednarski & Litt, LLP | lbattles@kmbllaw.com**
**Julia White, Esq.| Kaye, McLane, Bednarski & Litt, LLP | jwhite@kmbllaw.com**
*Amador v. Baca*

**Assumptions and Notes:**
1. Assumes class size of 94,000
2. Publication of notice in *Prison Legal News* and publication through social media
3. Research and identify class members in custody of California Department of Corrections and Rehabilitation or county agencies (assumes 10% of class)
4. Perform searches with TransUnion to find current addresses, email addresses, and mobile phone numbers for each class member (assumes 60% hit rate)
5. Notice packet mailing via USPS to estimated 100% of class members (assumes 6-page Notice and 1-page Claim Form with BRM envelope)
6. TransUnion search performed for undeliverable mail without forwarding address (assumes 60% hit rate)
7. Email notice campaign to estimated 60% of class members
8. Disseminate notice via text message to class members when mobile number is known and Court approved (assumes 60% of class members)
9. Translation of notice and claim form into Spanish
10. Undeliverable mail (assumes 33% rate) with forwarding address will be remailed and skip-tracing for the remainder
11. Mail notices to those who were initially notified via email or text message if they have not filed a claim or opted-out within 30 days
12. Includes regular email or text communication to class members regarding importance of filing a claim and cut-off date for consideration
13. Toll-free number staffed with CSRs to respond to claimant questions (assumes 5% call rate and 5 min. per call)
14. Interactive settlement website designed with mobile phone accessibility and online claim form submission capability
15. Receive and process opt-outs
16. Receive and process claims (assumes 15% filing rate or 14,100 claims filed)
17. Payments will be issued in installments over 3 years, with a total of 40,000 checks issued
18. Payments will be issued via check or electronic payment option (assumes 40,000 checks/electronic payments)
19. Handle uncashed checks and check reissues
20. Includes reporting to Counsel
21. Assumes project duration of 42 months

|  |  |  | **Cost Estimate** |
|---|---|---|---:|
| **Project Management** |  |  |  |
| Interaction with counsel, status reports, supervision of project team, resolution of issues, court report |  |  |  |
| *Estimated Months:* | 42 |  |  |
|  |  | $ | 50,300 |
| **Case-Specific Website with Online Filing** |  |  |  |
| Develop and host pre-existing dedicated website with online claim filing capability |  |  |  |
|  |  | $ | 5,000 |
| **Publish Notice** |  |  |  |
| Finalize notice content, coordinate placement |  | $ | 500 |
| Publish in *Prison Legal News* ; Facebook |  | **TBD** |  |
|  |  | $ | 500 |
| **Call Center** |  |  |  |
| Set up toll-free number and IVR menu, answer and document calls; monthly and per-minute charges |  |  |  |
| *Estimated Calls:* | 4,700 |  |  |
|  |  | $ | 36,750 |
| **Research Current Addresses, Email Addresses, and Mobile Phone Numbers** |  |  |  |
| Perform TransUnion search to identify current addresses, email addresses, and mobile numbers |  |  |  |
| Total Searches Performed | 94,000 |  |  |
| Per Search Charge (Returning Multiple Data Points) | $ 0.07 |  |  |
|  |  | $ 6,345 |  |
|  |  | $ | 6,345 |
| **Identify & Contact Class Members in Current Custody** |  |  |  |
| Identify and contact class members in custody of California Department of Corrections and Rehabilitation |  |  |  |
| Estimated number of class members currently in custody (10%) | 9,400 |  |  |
| Number of Searches | 500 |  |  |
| Number of Minutes per Search | 1 |  |  |
| Hourly Rate for Searches | $ 55 |  |  |
| Estimated Total for Searches | $ 460 |  |  |
|  |  | $ 460 |  |
|  |  | $ | 460 |
| **Database Management** |  |  |  |
| Class list clean-up; create mailing list |  | $ | 1,750 |
| Electronic Data Storage |  | $ | 3,750 |
| Create project specific database; develop processing procedures |  | $ | 1,400 |
|  |  | $ | 6,900 |

*Continued on Next Page*

**Text Message Notice & Follow-up**
Perform notice via text message for initial notice and follow-up

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Estimated Number of Class Members Receiving Text Messages (60%) | | 56,400 | | | | | |
| Estimated Number of Texts per Class Member over Course of Project | | 5 | | | | | |
| Estimated Total Number of Texts (over entire project) | | 282,000 | | | | | |
| Set-up | $ | 150 | $ | 150 | | | |
| Monthly Charge | $ | 50 | $ | 2,100 | | | |
| Per Text Charge | $ | 0.025 | $ | 7,050 | | | |
| | | | | | $ | 9,300 | |
| | | | | | | | $ 9,300 |

**Email Notice**
Create list for email, finalize content, implement email notice (60% of class)

*Estimated Emails:* **56,400**

| | |
|---|---|
| | $ 1,600 |

**Mail Notice**

| | | | | | | |
|---|---|---|---|---|---|---|
| Format/quality review notice | | | | $ | 700 | |
| Print and mail notice | | | | | | |
| Estimated items mailed | | 94,000 | | | | |
| Printing/Materials/Mailing Services | $ | 0.24 | $ | 22,560 | | |
| | | | | $ | 22,560 | |
| Spanish translation of notice and claim form | | | $ | 1,800 | | |
| Track undeliverables; remail forwards | | | $ | 2,750 | | |
| Research undeliverables (skip-trace); remail | | | $ | 12,250 | | |
| | | | | $ | 16,800 | |
| | | | | | | $ 40,060 |

**Follow-up Notice**

| | |
|---|---|
| Regularly provide follow-up notice to class members via email | $ 1,600 |
| Regularly provide follow-up notice to class members via text message | |
| *Included in Text Message Notice & Follow-up, above* | |

**Process Forms***

| | | | | | |
|---|---|---|---|---|---|
| Process mailed forms | Estimated forms received | 14,100 | | | |
| | Cost per form | $ 2.95 | | | |
| | | | $ | 41,595 | |
| Validate forms; final review; identify and resolve issues | | | $ | 5,950 | |
| *Online claim form processing will be $0.75 per claim* | | | | | $ 47,545 |

**Process Opt Outs**

| | |
|---|---|
| Process mailed opt-outs; validate forms; final review; identify and resolve issues | |
| | $ 250 |

**Distribute Benefits via Mailed Check**

| | | | | | | |
|---|---|---|---|---|---|---|
| Calculate, review, and implement individual benefits | | | $ | 2,100 | | |
| Establish QSF/Tax ID; account setup and management; reconciliation | | | $ | 3,500 | | |
| Create check language; design, format checks; manage mailing | | | $ | 700 | | |
| Printing and mailing costs | | | | | | |
| Estimated Items Mailed (over 3 Installments) | | 40,000 | | | | |
| Printing/Materials/Mailing Services | $ | 0.33 | $ | 13,200 | | |
| Bank Processing | $ | 0.20 | $ | 8,000 | | |
| | | | | $ | 21,200 | |
| Research undeliverables (skip-trace); remail; reissue checks | | | $ | 5,000 | | |
| | | | | | | $ 32,500 |

**Distribute Benefits via Electronic Payment**

| | |
|---|---|
| PayPal Payment | 2% of funds sent |
| Visa Prepaid CheckCard | TBD |

| | |
|---|---|
| **Sub-Total Fees** | **$   239,110** |

**Expenses**
Expenses included but not limited to postage, P.O. Box, NCOA, BRM processing charge, etc.
Postage is estimated and JND will obtain best possible presort discounted rate.

| | |
|---|---|
| | $ 76,444 |
| **Sub-Total Expenses** | **$   76,444** |
| **Total Fees & Expenses** | **$   315,554** |
| **PriceLock^SM** | **$   363,000** |

**CLAIMS RATE - 25%**



*Confidential*
Jennifer Keough - CEO
(206) 919-5768
jennifer.keough@jndla.com

**Barrett S. Litt, Esq.| Kaye, McLane, Bednarski & Litt, LLP | blitt@kmbllaw.com**
**Lindsay Battles, Esq.| Kaye, McLane, Bednarski & Litt, LLP | lbattles@kmbllaw.com**
**Julia White, Esq.| Kaye, McLane, Bednarski & Litt, LLP | jwhite@kmbllaw.com**
*Amador v. Baca*

**Assumptions and Notes:**
1. Assumes class size of 94,000
2. Publication of notice in *Prison Legal News* and publication through social media
3. Research and identify class members in custody of California Department of Corrections and Rehabilitation or county agencies (assumes 10% of class)
4. Perform searches with TransUnion to find current addresses, email addresses, and mobile phone numbers for each class member (assumes 60% hit rate)
5. Notice packet mailing via USPS to estimated 100% of class members (assumes 6-page Notice and 1-page Claim Form with BRM envelope)
6. TransUnion search performed for undeliverable mail without forwarding address (assumes 60% hit rate)
7. Email notice campaign to estimated 60% of class members
8. Disseminate notice via text message to class members when mobile number is known and  Court approved (assumes 60% of class members)
9. Translation of notice and claim form into Spanish
10. Undeliverable mail (assumes 33% rate) with forwarding address will be remailed and skip-tracing for the remainder
11. Mail notices to those who were initially notified via email or text message if they have not filed a claim or opted-out within 30 days
12. Includes regular email or text communication to class members regarding importance of filing a claim and cut-off date for consideration
13. Toll-free number staffed with CSRs to respond to claimant questions (assumes 5% call rate and 5 min. per call)
14. Interactive settlement website designed with mobile phone accessibility and online claim form submission capability
15. Receive and process opt-outs
16. Receive and process claims (assumes 25% filing rate or 23,500 claims filed)
17. Payments will be issued in installments over 3 years, with a total of 40,000 checks issued
18 Payments will be issued via check or electronic payment option (assumes 40,000 checks/electronic payments)
19 Handle uncashed checks and check reissues
20 Includes reporting to Counsel
21 Assumes project duration of 42 months

|  |  |  |  |  | Cost Estimate |  |
|---|---|---|---|---|---|---|
| **Project Management** |  |  |  |  |  |  |
| Interaction with counsel, status reports, supervision of project team, resolution of issues, court report |  |  |  |  |  |  |
| *Estimated Months:* | *42* |  |  |  |  |  |
|  |  |  |  |  | $ | 50,300 |
| **Case-Specific Website with Online Filing** |  |  |  |  |  |  |
| Develop and host pre-existing dedicated website with online claim filing capability |  |  |  |  |  |  |
|  |  |  |  |  | $ | 5,000 |
| **Publish Notice** |  |  |  |  |  |  |
| Finalize notice content, coordinate placement |  |  |  | $ | 500 |  |  |
| Publish in *Prison Legal News* ; Facebook |  |  |  | **TBD** |  |  |  |
|  |  |  |  |  | $ | 500 |
| **Call Center** |  |  |  |  |  |  |
| Set up toll-free number and IVR menu, answer and document calls; monthly and per-minute charges |  |  |  |  |  |  |
| *Estimated Calls:* | *4,700* |  |  |  |  |  |
|  |  |  |  |  | $ | 36,750 |
| **Research Current Addresses, Email Addresses, and Mobile Phone Numbers** |  |  |  |  |  |  |
| Perform TransUnion search to identify current addresses, email addresses, and mobile numbers |  |  |  |  |  |  |
| Total Searches Performed |  | 94,000 |  |  |  |  |
| Per Search Charge (Returning Multiple Data Points) | $ | 0.07 |  |  |  |  |
|  |  |  |  | $ | 6,345 |  |
|  |  |  |  |  | $ | 6,345 |
| **Identify & Contact Class Members in Current Custody** |  |  |  |  |  |  |
| Identify and contact class members in custody of California Department of Corrections and Rehabilitation |  |  |  |  |  |  |
| Estimated number of class members currently in custody (10%) |  | 9,400 |  |  |  |  |
| Number of Searches |  | 500 |  |  |  |  |
| Number of Minutes per Search |  | 1 |  |  |  |  |
| Hourly Rate for Searches | $ | 55 |  |  |  |  |
| Estimated Total for Searches | $ | 460 |  |  |  |  |
|  |  |  |  | $ | 460 |  |
|  |  |  |  |  | $ | 460 |
| **Database Management** |  |  |  |  |  |  |
| Class list clean-up; create mailing list |  |  |  | $ | 1,750 |  |  |
| Electronic Data Storage |  |  |  | $ | 6,000 |  |  |
| Create project specific database; develop processing procedures |  |  |  | $ | 1,400 |  |  |
|  |  |  |  |  | $ | 9,150 |

*Continued on Next Page*

**Text Message Notice & Follow-up**

Perform notice via text message for initial notice and follow-up

| | | | | | |
|---|---|---|---|---|---|
| Estimated Number of Class Members Receiving Text Messages (60%) | 56,400 | | | | |
| Estimated Number of Texts per Class Member over Course of Project | 5 | | | | |
| Estimated Total Number of Texts (over entire project) | 282,000 | | | | |
| Set-up | | $ 150 | $ 150 | | |
| Monthly Charge | | $ 50 | $ 2,100 | | |
| Per Text Charge | | $ 0.025 | $ 7,050 | | |
| | | | | $ 9,300 | |
| | | | | | $ 9,300 |

**Email Notice**

Create list for email, finalize content, implement email notice (60% of class)

| | | |
|---|---|---|
| *Estimated Emails:* | *56,400* | |
| | | $ 1,600 |

**Mail Notice**

| | | | |
|---|---|---|---|
| Format/quality review notice | | $ 700 | |
| Print and mail notice | | | |
| Estimated items mailed | 94,000 | | |
| Printing/Materials/Mailing Services | $ 0.24 | $ 22,560 | |
| | | $ 22,560 | |
| Spanish translation of notice and claim form | | $ 1,800 | |
| Track undeliverables; remail forwards | | $ 2,750 | |
| Research undeliverables (skip-trace); remail | | $ 12,250 | |
| | | $ 16,800 | |
| | | | $ 40,060 |

**Follow-up Notice**

| | |
|---|---|
| Regularly provide follow-up notice to class members via email | $ 1,600 |
| Regularly provide follow-up notice to class members via text message | |
| *Included in Text Message Notice & Follow-up, above* | |

**Process Forms\***

| | | | | |
|---|---|---|---|---|
| Process mailed forms | Estimated forms received | 23,500 | | |
| | Cost per form | $ 2.95 | | |
| | | | $ 69,325 | |
| Validate forms; final review; identify and resolve issues | | | $ 8,750 | |
| *\*Online claim form processing will be $0.75 per claim* | | | | $ 78,075 |

**Process Opt Outs**

| | |
|---|---|
| Process mailed opt-outs; validate forms; final review; identify and resolve issues | |
| | $ 250 |

**Distribute Benefits via Mailed Check**

| | | | | |
|---|---|---|---|---|
| Calculate, review, and implement individual benefits | | | $ 2,100 | |
| Establish QSF/Tax ID; account setup and management; reconciliation | | | $ 3,500 | |
| Create check language; design, format checks; manage mailing | | | $ 700 | |
| Printing and mailing costs | | | | |
| Estimated Items Mailed (over 3 Installments) | 40,000 | | | |
| Printing/Materials/Mailing Services | $ 0.33 | $ 13,200 | | |
| Bank Processing | $ 0.20 | $ 8,000 | | |
| | | | $ 21,200 | |
| Research undeliverables (skip-trace); remail; reissue checks | | $ 5,000 | | |
| | | | | $ 32,500 |

**Distribute Benefits via Electronic Payment**

| | |
|---|---|
| PayPal Payment | 2% of funds sent |
| Visa Prepaid CheckCard | TBD |

| | |
|---|---|
| **Sub-Total Fees** | **$ 271,890** |

**Expenses**

Expenses included but not limited to postage, P.O. Box, NCOA, BRM processing charge, etc.
Postage is estimated and JND will obtain best possible presort discounted rate.

| | |
|---|---|
| | $ 87,066 |
| **Sub-Total Expenses** | **$ 87,066** |
| **Total Fees & Expenses** | **$ 358,956** |
| 🔒 **PriceLock℠** | **$ 413,000** |

CLAIMS RATE - 35%



*Confidential*
Jennifer Keough - CEO
(206) 919-5768
jennifer.keough@jndla.com

**Barrett S. Litt, Esq.| Kaye, McLane, Bednarski & Litt, LLP | blitt@kmbllaw.com**
**Lindsay Battles, Esq.| Kaye, McLane, Bednarski & Litt, LLP | lbattles@kmbllaw.com**
**Julia White, Esq.| Kaye, McLane, Bednarski & Litt, LLP | jwhite@kmbllaw.com**
*Amador v. Baca*

**Assumptions and Notes:**
1. Assumes class size of 94,000
2. Publication of notice in *Prison Legal News*  and publication through social media
3. Research and identify class members in custody of California Department of Corrections and Rehabilitation or county agencies (assumes 10% of class)
4. Perform searches with TransUnion to find current addresses, email addresses, and mobile phone numbers for each class member (assumes 60% hit rate)
5. Notice packet mailing via USPS to estimated 100% of class members (assumes 6-page Notice and 1-page Claim Form with BRM envelope)
6. TransUnion search performed for undeliverable mail without forwarding address (assumes 60% hit rate)
7. Email notice campaign to estimated 60% of class members
8. Disseminate notice via text message to class members when mobile number is known and  Court approved (assumes 60% of class members)
9. Translation of notice and claim form into Spanish
10. Undeliverable mail (assumes 33% rate) with forwarding address will be remailed and skip-tracing for the remainder
11. Mail notices to those who were initially notified via email or text message if they have not filed a claim or opted-out within 30 days
12. Includes regular email or text communication to class members regarding importance of filing a claim and cut-off date for consideration
13. Toll-free number staffed with CSRs to respond to claimant questions (assumes 5% call rate and 5 min. per call)
14. Interactive settlement website designed with mobile phone accessibility and online claim form submission capability
15. Receive and process opt-outs
16. Receive and process claims (assumes 35% filing rate or 32,900 claims filed)
17. Payments will be issued in installments over 3 years, with a total of 40,000 checks issued
18. Payments will be issued via check or electronic payment option (assumes 40,000 checks/electronic payments)
19. Handle uncashed checks and check reissues
20. Includes reporting to Counsel
21. Assumes project duration of 42 months

|  |  |  |  | Cost Estimate |
|---|---|---|---|---|
| **Project Management** |  |  |  |  |
| Interaction with counsel, status reports, supervision of project team, resolution of issues, court report |  |  |  |  |
| *Estimated Months:* | 42 |  |  |  |
|  |  |  | $ | 50,300 |
| **Case-Specific Website with Online Filing** |  |  |  |  |
| Develop and host pre-existing dedicated website with online claim filing capability |  |  |  |  |
|  |  |  | $ | 5,000 |
| **Publish Notice** |  |  |  |  |
| Finalize notice content, coordinate placement |  | $ | 500 |  |
| Publish in *Prison Legal News* ; Facebook |  |  | **TBD** |  |
|  |  |  | $ | 500 |
| **Call Center** |  |  |  |  |
| Set up toll-free number and IVR menu, answer and document calls; monthly and per-minute charges |  |  |  |  |
| *Estimated Calls:* | 4,700 |  |  |  |
|  |  |  | $ | 36,750 |
| **Research Current Addresses, Email Addresses, and Mobile Phone Numbers** |  |  |  |  |
| Perform TransUnion search to identify current addresses, email addresses, and mobile numbers |  |  |  |  |
| Total Searches Performed |  | 94,000 |  |  |
| Per Search Charge (Returning Multiple Data Points) | $ | 0.07 |  |  |
|  |  |  | $ | 6,345 |
|  |  |  | $ | 6,345 |
| **Identify & Contact Class Members in Current Custody** |  |  |  |  |
| Identify and contact class members in custody of California Department of Corrections and Rehabilitation |  |  |  |  |
| Estimated number of class members currently in custody (10%) |  | 9,400 |  |  |
| Number of Searches |  | 500 |  |  |
| Number of Minutes per Search |  | 1 |  |  |
| Hourly Rate for Searches | $ | 55 |  |  |
| Estimated Total for Searches | $ | 460 |  |  |
|  |  | $ | 460 |  |
|  |  |  | $ | 460 |
| **Database Management** |  |  |  |  |
| Class list clean-up; create mailing list |  | $ | 1,750 |  |
| Electronic Data Storage |  | $ | 8,500 |  |
| Create project specific database; develop processing procedures |  | $ | 1,400 |  |
|  |  |  | $ | 11,650 |

*Continued on Next Page*

**Text Message Notice & Follow-up**

Perform notice via text message for initial notice and follow-up

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Estimated Number of Class Members Receiving Text Messages (60%) | | | 56,400 | | | | |
| Estimated Number of Texts per Class Member over Course of Project | | | 5 | | | | |
| Estimated Total Number of Texts (over entire project) | | | 282,000 | | | | |
| Set-up | $ | 150 | | $ | 150 | | |
| Monthly Charge | $ | 50 | | $ | 2,100 | | |
| Per Text Charge | $ | 0.025 | | $ | 7,050 | | |
| | | | | | | $ 9,300 | |
| | | | | | | | $ 9,300 |

**Email Notice**

Create list for email, finalize content, implement email notice (60% of class)

| | | | |
|---|---|---|---|
| *Estimated Emails:* | *56,400* | | |
| | | | $ 1,600 |

**Mail Notice**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Format/quality review notice | | | | | | $ 700 | |
| | | | | | | | |
| Print and mail notice | | | | | | | |
| Estimated items mailed | | | 94,000 | | | | |
| Printing/Materials/Mailing Services | $ | 0.24 | | $ | 22,560 | | |
| | | | | | | $ 22,560 | |
| | | | | | | | |
| Spanish translation of notice and claim form | | | | $ | 1,800 | | |
| | | | | | | | |
| Track undeliverables; remail forwards | | | | $ | 2,750 | | |
| | | | | | | | |
| Research undeliverables (skip-trace); remail | | | | $ | 12,250 | | |
| | | | | | | $ 16,800 | |
| | | | | | | | $ 40,060 |

**Follow-up Notice**

| | | |
|---|---|---|
| Regularly provide follow-up notice to class members via email | | $ 1,600 |
| | | |
| Regularly provide follow-up notice to class members via text message | | |
| *Included in Text Message Notice & Follow-up, above* | | |

**Process Forms***

| | | | | | | |
|---|---|---|---|---|---|---|
| Process mailed forms | Estimated forms received | | 32,900 | | | |
| | Cost per form | $ | 2.95 | | | |
| | | | | $ | 97,055 | |
| Validate forms; final review; identify and resolve issues | | | | $ | 11,900 | |
| *Online claim form processing will be $0.75 per claim* | | | | | | $ 108,955 |

**Process Opt Outs**

| | |
|---|---|
| Process mailed opt-outs; validate forms; final review; identify and resolve issues | |
| | $ 250 |

**Distribute Benefits via Mailed Check**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Calculate, review, and implement individual benefits | | | | | | $ 2,100 | |
| Establish QSF/Tax ID; account setup and management; reconciliation | | | | | | $ 3,500 | |
| Create check language; design, format checks; manage mailing | | | | | | $ 700 | |
| | | | | | | | |
| Printing and mailing costs | | | | | | | |
| Estimated Items Mailed (over 3 Installments) | | | 40,000 | | | | |
| Printing/Materials/Mailing Services | $ | 0.33 | | $ | 13,200 | | |
| Bank Processing | $ | 0.20 | | $ | 8,000 | | |
| | | | | | | $ 21,200 | |
| Research undeliverables (skip-trace); remail; reissue checks | | | | $ | 5,000 | | |
| | | | | | | $ 32,500 | |

**Distribute Benefits via Electronic Payment**

| | |
|---|---|
| PayPal Payment | 2% of funds sent |
| | |
| Visa Prepaid CheckCard | TBD |

| | |
|---|---|
| **Sub-Total Fees** | **$ 305,270** |

**Expenses**

Expenses included but not limited to postage, P.O. Box, NCOA, BRM processing charge, etc.

Postage is estimated and JND will obtain best possible presort discounted rate.

| | |
|---|---|
| | $ 97,688 |
| **Sub-Total Expenses** | **$ 97,688** |
| **Total Fees & Expenses** | **$ 402,958** |
| **PriceLock$^{SM}$** | **$ 464,000** |



# NOTICE PLAN

| LOCAL NEWSPAPERS | NO. OF INSERTIONS | AD UNIT SIZE | DIMENSIONS | TOTAL COST |
|---|---|---|---|---|
| *Prison Legal News* | 1 | 2/3 Page | 4.875"w x 9.75"h | $910 |
| | 1 | Half Page | 4.875"w x 7.25"h | $730 |
| | 1 | 1/3 Page | 3.625"w x 6.5"h | $530 |
| **DESCRIPTION:** | | | | |

**Prison Legal News**, a project of the Human Rights Defense Center, is an independent 72-page monthly magazine that provides cutting edge review and analysis of prisoners' rights, court rulings and news concerning criminal justice-related issues.

| INTERNET | TARGET/DESCRIPTION | IMPRESSIONS | TOTAL COST |
|---|---|---|---|
| Google Display Network (GDN) | Geo-targeting Los Angeles market; Targeting Women 21+, with emphasis on African Americans/Hispanics and Household Income <$50K; Impressions served in Newsfeed on Mobile devices for an 8-week effort | 9,690,000 | $38,760 |
| Facebook | Custom List: Estimated 56,400 class member email addresses. Assume nearly half, or 25K, of the emails match with Facebook accounts; 90-day campaign | 250,000 | $5,000 |
| **DESCRIPTION:** | | | |

**Facebook** is the most popular social network with over 200 million users nationwide.  Targeted ads will appear in the News Feed on mobile devices.



# HOURLY BILLING RATES

| POSITION/TITLE | RATE |
| --- | --- |
| Senior Executive | $ 395 |
| Executive | $ 350 |
| Vice President | $ 300 |
| Senior Director | $ 250 |
| Director/Software Engineer | $ 190 |
| Assistant Director | $ 160 |
| Senior Project Manager/Senior Data Analyst | $ 150 |
| Project Manager/Data Analyst/ Helpdesk Administrator | $ 125 |
| Assistant Project Manager/ Junior Data Analyst | $ 95 |
| Senior Associate | $ 85 |
| Associate | $ 60 |
| Clerk | $ 45 |

JND LEGAL ADMINISTRATION

All services to be provided by JND Legal Administration ("JND") are subject to the following terms and conditions:

1. SERVICES: JND agrees to perform all services necessary to complete the tasks outlined in the applicable proposal or other documents or per its understanding about the Client assignment. Such Services do not in any way constitute legal services or advice.

2. PAYMENT: The Client agrees to pay JND for the Services as outlined in the Proposal or other agreement between the parties. Client agrees and understands that fees charged by JND may include mark-ups, commissions, or other arrangements constituting potential profits to JND. Client further agrees that the prices to be charged by JND were negotiated at arm's length and that total fees are estimates and that the actual amount charged may be greater or lesser than the estimated amounts. JND reserves the right to increase its hourly rates annually.

3. EXPENSES: JND shall also bill for all expenses reasonably incurred in connection with the Services. These expenses include but are not limited to postage, FedEx, P.O. Box rental, travel, brokerage fees, accounting fees, electronic storage ($0.006 per image/record), and other items associated with the Services. JND may receive rebates or credits from vendors in connection with volume of work performed for all of its Clients. JND may also receive financial benefits from banks or other institutions based on settlement funds on deposit. These credits/rebates/awards are solely the property of JND.

4. BILLING: JND shall invoice clients every 30 days and expect payment within thirty (30) days of receipt of invoices. Payment for postage and printing is due in advance of mailing.

5. INDEPENDENT CONTRACTOR: JND is performing its Services as an Independent Contractor and neither it nor its employees shall be deemed to be employees of the Client.

6. CONFIDENTIALITY: JND and the Client will each treat as confidential any documents shared by one party with the other. JND does not convey to the Client any right in the programs, systems, or methodologies used or provided by JND in the performance of this assignment.

7. DATA PRIVACY: JND Is committed to taking all reasonable steps to ensure the security of all client and claimant data entrusted to our care. We seek to protect confidential data in all of our engagements, including this one, regardless of the size of the matter or the amount of data at issue. Please see JND's complete Privacy Policy at www.jndla.com/privacy-policy regarding data collection and use.

8. LIMITATION OF DAMAGES: JND is not responsible to the Client for any special, consequential or incidental damages incurred by Client and any liability of JND to the Client shall not exceed the total amount billed to the Client for the particular Services that give rise to any loss.

9. FORCE MAJEURE: If any event out of the reasonable control of JND prevents JND's performance, such performance shall be excused.

10. NOTICE: Any notice required in connection with the Services shall be in writing and sent by registered mail or overnight courier. Such notice is deemed given if mailed five days after the date of deposit in the U.S. mail, or if sent by overnight courier, one business day after delivery to such courier.

11. GOVERNING LAW: This contract will be governed by and construed by the laws of the State of Washington.

12. ASSIGNMENT: This Agreement and the rights and obligations of JND and the Client shall inure to the benefit of their successors and assigns, if any.

13. TERMINATION: This Agreement may be terminated by the Client upon at least 30 days prior written notice to JND. The Client's obligation to pay for services or projects in progress at the time of notice of withdrawal shall continue throughout the 30 day period. JND may terminate this Agreement (i) with 10 days prior written notice if the Client is not current in payment of charges or (ii) in any event, upon at least three months prior written notice to the Client. If Client terminates this Agreement, JND shall have no obligation to release any information or documentation related to the applicable matter until JND has been paid in full.