UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND GRANTING IN PART MOTION FOR
ATTORNEY'S FEES [449] [409]

**Motion for Final Approval of the Class Settlement**

**I.      Introduction**

Before the Court is a motion for final approval of a class action settlement filed by Lead
Plaintiffs Mary Amador et al. in the class action lawsuit listed above. The County of Los Angeles and
the Los Angeles County Sheriff's Department (collectively "Defendants") do not oppose this motion.
For the reasons articulated below, the Court GRANTS the motion for final approval of the class action
settlement.

**II.      Factual and Procedural Background**

Lead Plaintiffs Mary Amador et al. represent a class of female inmates of the Los Angeles
County Sheriff's Department ("LASD") who contend that highly invasive body cavity inspections
conducted during the relevant class period (March 5, 2008 to January 1, 2015) violated their Fourth
Amendment rights. Dkt. 449 at 1. These searches took place at the Century Regional Detention Facility
("CRDF") operated by LASD in Lynwood, California. After certification of several classes and sub-
classes, Dkt. 327, the Court granted Plaintiff's Motion for Summary Judgment on June 7, 2017. Dkt.

|  | : |  |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

361. Following a prolonged period of negotiation and mediation, the parties made a Motion for Preliminary Approval of Class Action Settlement. Dkt. 387. The Court initially denied the motion because it diverted $3 million in settlement funds to contracts between the County of Los Angeles ("the County") and certain for-profit and non-profit entities to develop gender-responsive policies at LASD facilities, which the Court found reduced the amount of funds available to the victims. Dkt. 394. After the parties presented the Court with a revised settlement that eliminated the diversion of $3 million in class funds, the Court granted preliminary approval to the settlement agreement. Dkt. 399.

The revised Settlement Agreement requires LASD to pay a total of $53 million dollars into a settlement fund over a period of three years. Dkt. 395-1[1] ("the Settlement Agreement"). The distribution of funds provided in the Settlement Agreement includes:

- Incentive awards to nine named plaintiffs of $10,000 each.
- Third-party class settlement administration costs by the chosen administrator, JND Legal Administration ("JND"), which are currently $672,185.96 based on incurred and estimated fees associated with administration of settlement claims. *See* Dkt. 451 at 7-8.
- A provision giving Class Counsel the right to apply for attorney's fees of up to one-third of the Class Fund as well as litigation costs, with final approval over any award of attorney's fees at the Court's discretion.
- The remainder of the Class Fund to be distributed to class members under a points-based allocation formula (described in more detail below).

The Class includes a total of 94,857 members, based on the contact information available to the parties and JND from the County's records. Claims made by class members are subject to a points-based distribution formula. *See* Dkt. 395-1 at 10-12. The distribution formula developed in the course of mediation by the parties is premised on the changing conditions and level of privacy across the multi-year class period. *Id.* at 10. It allocates increasing point totals for searches endured under worse conditions during earlier periods in the class. *Id.* at 11. Class members receive proportionate recoveries

---

[1] Plaintiffs cite to the unrevised Settlement Agreement at various points in their motion for final approval of the class settlement. *See* Dkt. 449 at 4-5. Because the revised Settlement Agreement includes relatively simple alterations to the settlement terms, this error does not alter the Court's analysis.

Initials of Preparer

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

based on the total number of searches they have endured, because their recovery is tied to their proportionate share of the total points awarded to the class. *Id.* Class members were also given the opportunity to opt-out of the settlement during the notice period. *Id.* at 24-25. While up to 250 members were permitted to opt-out under the Settlement Agreement's terms before Defendants were able to withdraw from the settlement, only six class members have done so. Dkt. 451 at 6.

On January 6, 2020, JND began to send notices alerting class members to the settlement. The Administrator sent notices via text message to 58,272 mobile phone number representing 39,567 class members. Dkt. 451 at 2. The Administrator also sent 54,903 emails to 33,229 class members. *Id.* Finally, JND sent notices via mail to 71,676 class members. *Id.* JND estimates that 91.5% of the settlement class has received a text, email, or mailing that was not returned as undeliverable. *Id.* at 3. JND also utilized updated contact information provided by the California Department of Corrections and Rehabilitation to send additional notice to class members and locate additional mailing addresses. *Id.* at 4-5. JND purchased internet advertising, set up a settlement website, and provided a toll-free phone number to facilitate submission of claims to the settlement. *Id.* at 5-6. As of July 6, 2020, JND has received almost 40,000 claims, and has approved 25,528. *Id.* at 607. 9,940 claims have deficiencies that JND is currently addressing, and it anticipates that approximately one-half of those claims will ultimately be approved. Dkt. 449 at 9. This means that roughly one-third of class members will receive a distribution from the settlement fund, a figure that Class Counsel (who are specialists in this area of civil rights litigation) assert is an especially high claims rate for this area of class action litigation. *See* Dkt. 450 at 3. Class Counsel estimates that the average claim will be approximately $1000, and that the highest claims in the settlement will be closer to $10,000. However, given the *pro rata* distribution model, until all previously deficient claims are processed and either approved or denied, these figures cannot be calculated with certainty.

### III.    Legal Standard

Approval of a proposed class action settlement is governed by Federal Rule of Civil Procedure 23(e). "[T]he 2018 amendment to Rule 23(e) establishes core factors district courts must consider when evaluating a request to approve a proposed settlement." *Zamora Jordan v. Nationstar Mortg., LLC*, 2019 WL 1966112, at *2 (E.D. Wash. May 2, 2019).

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

Rule 23(e) now provides that the Court may approve a class action settlement only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "Under Rule 23(e), both its prior version and as amended, fairness, reasonableness, and adequacy are the touchstones for approval of a class-action settlement." *Zamora*, 2019 WL 1966112, at *2. "The purpose of the amendment to Rule 23(e)(2) is [to] establish a consistent set of approval factors to be applied uniformly in every circuit, without displacing the various lists of additional approval factors the circuit courts have created over the past several decades." *Id.* Factors that the Ninth Circuit has typically considered include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

"While the Ninth Circuit has yet to address the amendment to Rule 23(e)(2) ... the factors in amended Rule 23(e)(2) generally encompass the list of relevant factors previously identified by the Ninth Circuit." *Zamora*, 2019 WL 1966112, at *2. "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. "Accordingly, the Court applies the framework set forth in Rule

Initials of Preparer       : 

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|----------|----------------------|------|-----------|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let '[t]he sheer number of factors' distract the Court and parties from the 'central concerns' underlying Rule 23(e)(2)." *In re Extreme Networks, Inc. Securities Litigation*, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019); *see also Graves v. United Indus. Corp.*, 2020 WL 953210, at *4 (C.D. Cal. Feb. 24, 2020).

### IV.    Analysis

#### a.   *Class Counsel have adequately represented the Class.*

The Court finds that Class Counsel and the Class Representatives have adequately represented the class during the course of litigation. The Class Representatives were each deposed during this litigation, and Class Counsel prevailed on two motions for class certification and a dispositive motion with regard to liability at summary judgment. Class Counsel conducted extensive discovery into the conditions in which strip searches occurred at CRDF, held a large number of depositions, and hired expert witnesses for multiple discrete issues relevant to establishing liability. *See* Dkt. 410 at 50-52 (summarizing litigation efforts of Class Counsel in table form). Class Counsel, in conjunction with JND, have also facilitated substantial notice and outreach to the relatively disparate and sometimes difficult to contact class of more than 94,000 individuals, which has resulted in a relatively high claims rate of between 33% and 40%, pending final verification of deficient claims forms. Dkt. 451 at 6-7. Their conduct both during litigation and after settlement was reached was adequate in all respects, and supports approval of the Settlement Agreement.

#### b.   *The settlement was negotiated at arm's length.*

The Court finds that this settlement was clearly negotiated at arm's length and is the product of (lengthy) non-collusive negotiation between Class Counsel and Defendants. The parties reached a settlement agreement following three full days of in-person settlement conferences before the Hon. George H. King (Ret.). Dkt. 450 at 1. Settlement negotiations began only after the Court granted summary judgment on liability for Plaintiffs, and lasted more than two years before the parties reached a final agreement. The case was litigated by the parties for approximately six years prior to settlement

|  | : |  |
|--|---|--|
| Initials of Preparer | | |
| | PMC | |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|----------|----------------------|------|-----------|

| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* |
|-------|--------------------------------------------------------------|

negotiations being initiated in earnest. This course of proceeding strongly suggests a non-collusive settlement has been reached.

While not necessary for approval because this class has previously been certified by the Court, Dkt. 327, the Court additionally notes that the settlement agreement does not contain (1) a disproportionate distribution of the settlement to Class Counsel (any fee award is subject to the Court's discretion), (2) a clear sailing arrangement for separate payment of attorney's fees, or (3) a reversion for unclaimed funds to the defendant. *See In re Bluetooth Headset Prod. Liab. Litig.* 654 F.3d 935, 946-47 (9th Cir. 2011) (instructing district courts to scrutinize settlement agreements for "subtle signs" that class counsel have permitted self-interest to "infect" the negotiations).

### c.  *The relief provided for the class is adequate*

To determine whether the relief provided for the class is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, (iii) the terms of any proposed award of attorney's fees, and (iv) any side agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).

The Court finds that each of these factors favors granting final approval to the settlement. The Court granted summary judgment to the class solely on liability— no clear procedure had been developed to present the damages claims to a jury on a classwide basis given the relative circumstances of the different class members across the seven year period. *See* Dkt. 327 at 8 (re-certifying the class solely with regard to liability under Rule 23(c)(4) and noting that individual damages calculations will be necessary to reach a final conclusion of the litigation). The class faced the possibility that no workable arrangement for establishing classwide damages would be developed, as well as the possibility that any final judgment would lead to reversal on appeal. Moreover, the Court finds that this settlement is fair with respect to $53 million figure given the size of the class, an issue discussed in more detail in the Court's accompanying analysis of Class Counsel's motion for attorney's fees. *See infra* Part 2.II.a.i. The Court finds it sufficient to note here that both the total dollar figure of the settlement fund and the average recovery per class member are in line with similar large-scale settlements involving strip searches at detention facilities. *See* Dkt. 410 at 29-36 (summarizing strip search settlements reviewed by the Court).

Initials of Preparer
:

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

The court addresses the method of distributing relief (here monetary claims) in the sections below regarding equitable treatment of class members, and finds it an effective method for distributing relief given the facts of this case. The proposed fee award provided by the Settlement Agreement is subject to the Court's discretion and is addressed at length in the accompanying Order granting Class Counsel attorney's fees. Finally, no side agreements that must be identified under Rule 23(e)(3) have been disclosed by the parties for the Court's consideration. The Court finds that the relief provided by the settlement agreement is adequate for the purposes of Rule 23(e)(2)(C)

**d. *Class members are treated equitably.***

The Court also finds that the settlement agreement treats class members equitably. The Court has previously discussed and approved of the points-based distribution formula as an appropriate manner of approximating the severity of the constitutional injuries suffered by individual class members. *See* Dkt. 394 at 12. The Court finds that this formula appropriately seeks to provide more substantial compensation to class members who experienced more frequent searches, and class members who experienced searches in harsher conditions. Dkt. 395-1 at 10-12. It also ensures that those individuals who were searched very frequently receive the highest awards within the settlement class. The $200 minimum claim size is a reasonable figure to incentivize class members to make the effort to participate and submit claim forms, and ensures that as large a fraction of the class participate in the settlement as possible.

**e. *Other factors not expressly included in Rule 23(e)(2) favor final approval as well.***

The amendments to Rule 23 do "not 'displace any factor' previously announced by the Ninth Circuit, but instead 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Shin v. Plantronics, Inc.*, 2019 WL 2515827, at *4 (N.D. Cal. June 17, 2019); *see* Advisory Committee Notes, Fed. R. Civ. P. 23, subdiv. (e)(2) (2018). While the Court believes that its previous analysis has addressed all the other factors the Ninth Circuit has previously instructed district courts to consider at final approval, it also notes that two additional factors not discussed above also favor final approval. *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026) (citing "the presence of a

| | : |
|---|---|
| Initials of Preparer | |
| | PMC |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

governmental participant and "the reaction of the class members" as relevant factors in analyzing class settlements). First, the County is a party to this settlement, and supports the proposed settlement. Second, the reaction of the class supports approval of the settlement— more than 40,000 claims have been submitted, approximately 30,000 will be approved given JND's projections, and only twelve individuals (setting aside standing issues that may further reduce that number) have expressed objections to the settlement agreement.

### f.   *Incentive payments to class representatives*

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). "Incentive awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

The settlement agreement calls for incentive payments of $10,000 to nine different lead plaintiffs, for a total of $90,000. Dkt. 395-1 at 9. The Court finds these payments, individually and in total, are appropriate given the overall settlement of $53 million. As the parties note, the large number of lead plaintiffs is justifiable given the need for some lead plaintiffs to have been in custody in order to seek the injunctive relief the class previously sought, and to represent different subclasses created at various points in this litigation. Dkt. 449 at 23-24. Lead plaintiffs were also required to disclose intimate details of their experiences to support their claims at their depositions. *Id.* The Court finds these incentive payments to be reasonable and not disproportionate given the expected average claim of approximately $1000 for unnamed class members, and the fact that the $90,000 constitutes a very small fraction of the total settlement amount of $53 million.

### g.   *Objections raised by class members*

Having analyzed the specific factors articulated in Rule 23(e)(2), the Court now addresses objections made by class members. JND received a total of five objections, and the Court and Class

| | : | |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | | Date | 8/11/2020 |
|---|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | | |

Counsel also received letters from individual class members expressing objections as well. *See* Dkt. 450-1 through Dkt. 450-12, excluding Dkt. 450-11 (collecting various objections); *see also* Dkt. 461 (additional letter received by the Court from Tanya Woods).

### i. *Concerns beyond the reach of this Court.*

Because of the widespread publication of the Class Notice in an attempt to ensure that as many class members as possible submit claims, a number of individuals who do not appear to be eligible for participation in the class have lodged objections stating that they were strip searched at CRDF before or after the class period of March 5, 2008 to January 1, 2015. *See* Dkt. 450, Ex. B, C, D; Dkt. 461. At summary judgment, Defendants represented to the Court that strip searches were not being used in any substantial manner after January 2015. The Court relied on this representation in dismissing the claims for classwide injunctive relief. Class Counsel state that while they have heard "occasional complaints" regarding strip searches, they have no information that would suggest any widespread course of strip search use after January 2015. Dkt. 449 at 12-13.

The Court finds that (setting aside the standing issue that the Court will discuss later) these objections cannot be given substantial weight with regard to final approval of the class settlement. The Court previously made a finding based on substantial evidence that the appropriate period for consideration of these constitutional claims on a classwide basis ended in January 2015, and individual objections based on allegedly unconstitutional searches that occurred after the end of the class period are not relevant to whether a settlement addressing claims arising from March 2008 to January 2015 should be approved. Similarly, alleged searches that occurred before the class period began (and are time-barred under California's two-year statute of limitations for § 1983 claims) are not relevant to the Court's decision to approve or deny final approval of the settlement before the Court.

### ii. *Individualized objections to claim recovery.*

Other objectors raise individualized concerns with regard to their personal experiences being strip searched, or argue that because of those circumstances, they deserve a larger portion of the settlement fund than they are entitled to under the points-based distribution formula in the Settlement Agreement. *See* Dkt. 450, Ex. E, F, G, L (Garcia late opt-out and objection). The Court recognizes that

Initials of Preparer

:

PMC

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

individual class members may feel strongly that their individual experiences deserve a higher level of
monetary compensation, but a more detailed, subjective case-by-case assessment, in a class of
approximately 94,000 individuals, would not be feasible and would both erode the settlement fund
through additional administrative fees and delay final distribution of the funds to class members. To the
extent that these individuals feel that this settlement is inadequate, their proper remedy would be to opt-
out, as a small number of other class members have done, an option which is clearly provided in the
email and first-class mail notice distributed by JND. *See* Dkt. 451, Ex. A, B, C, and D. Each form of
notice also clearly states the approximate range of the claim recovery, with a $200 minimum and the
potential for "thousands" of dollars for individuals who endured many searches. *Id.* As discussed above,
the Court finds that the points-based distribution formula is an equitable form of "rough justice,"
intended to approximate the relative severity of the constitutional violations each class member received,
but that it cannot perfectly compensate each class member based on their subjective assessment of the
extent of their injuries. *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
895 F.3d 597, 611 (9th Cir. 2018) (internal citation and quotation marks omitted). These objections do
not alter the Court's view of the Settlement Agreement.

**iii.** _Attorney's fees._

A number of objections were lodged to the size of the attorney's fees proposed in the Settlement
Agreement. *See* Dkt. 450, Ex. H, Ex. I. While only a limited number of such objections have been made,
and some of these objections misinterpret the maximum size of the proposed attorney's fee award
possible under the Settlement Agreement, the Court has considered these objections in conjunction with
its independent duty to assess the reasonableness of any proposed fee award. *See* Fed. R. Civ. P. 23(h).
The fee award structure in the Settlement Agreement is entirely dependent on this Court's approval and
determination of the appropriate award in these circumstances. *See* Dkt. 395-1 at 18. The non-binding
structure of the attorney's fee award provided in the Settlement Agreement does not raise concerns with
respect to whether final approval of the settlement should be granted.

**iv.** _Ms. Shorter's objections._

The Court first notes that it is unclear whether Ms. Shorter, who is a class member but has opted-
out of the settlement to pursue her own individual claims, Dkt. 429, has standing to object to the class

Initials of Preparer

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

settlement. *See* Newberg on Class Actions §13:23 (5th ed.), 13:23 Standing to object—Opt-outs. ("[c]lass members who opt out of the class at certification or at settlement are no longer considered class members, and hence Rule 23 does not give them standing to object to the settlement"); *see also Glass v. UBS Financial Services, Inc.*, 2007 WL 221862, *8 (N.D. Cal. 2007) *aff'd* 331 Fed. Appx. 452 (9th Cir. 2009) (district court held that objector who opted-out lacks standing to object, objector not referenced in Ninth Circuit decision affirming district court). Nevertheless, the Court will construe her objections as equivalent to a amicus brief and address them below.

Ms. Shorter's objections do not raise issues the Court finds compelling. Dkt. 452; Dkt. 429. Her argument that settlement recovery is "miniscule" and her assertion that certain individual class members could instead receive six or seven figure recoveries if they proceeded individually is largely speculative, and does not properly focus on the best result for the class as a whole. Moreover, the Settlement Agreement expressly permitted up to 250 members of the class to opt-out and pursue individual damages— the fact that so few class members have chosen to do so suggests that the settlement represents a reasonable recovery for class members, and that they have little appetite for pursuing these claims individually. The Court also gives substantial weight to Class Counsel's opinion regarding the value of the class claims on this topic, given their specific expertise with this manner of large-scale prisoner litigation and extensive period of negotiation with the County. *See* Dkt. 410 at 3-10, 81-83. The Court also expressly declined to certify a damages class in its prior Orders, and absent a settlement would have required individualized damages determination in order for class members to take these claims to trial.

Ms. Shorter's proposal that JND should instead calculate the points for each individual member prior to the opt-out deadline, and permit class members to go through a second opt-out period after learning their specific point allocation (and resulting monetary recovery) would cause a substantial and unnecessary delay in distribution of funds and incur additional administrative expenses. Her request that independent class counsel be appointed to consult (free of charge) with class members on an individual basis to determine whether they should pursue an alternative course of legal action would erode the funds available to the class and is unsupported by caselaw on Rule 23 regarding circumstances that require appointment of independent counsel. The Court does not find that the issues she has raised regarding the contents of the Class Notice, or the ability of class members to gain access to the full

Initials of Preparer                                   :

                                                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

Settlement Agreement are well-founded and finds that in all aspects Class Counsel's efforts to ensure class members have notice of the settlement and submit claims has been adequate.

    **h.  *Administrative Issues***

        **i.  *Opt-Outs***

    Six individuals have requested to opt-out of the class settlement. One of the opt-out notices was received late. Dkt. 450-12. The Court acts in its discretion pursuant to the Settlement Agreement to permit this late opt-out, and these individuals are listed below:

1. Valerie Rehling
2. Jessica Rivera Hernandez
3. Lyubox V. Shur a.k.a "Luba Shur"
4. Pik Yue
5. Tammy Lynn Dayton
6. Natalie Elizabeth Garcia

        **ii.  *Administrative issues arising from COVID-19 and class member letters to the Court.***

    The Court also makes note of an administrative issue that arose in the course of the settlement approval process. After notice was mailed to the class, a number of class members sent letters to the Court directly, some expressing objections to the settlement and others describing their experiences, sometimes including personal details regarding the conditions they endured at CRDF. The Court's administrative docketing system interpreted these letters as appearances in the lawsuit, and filed a number of these letters on the docket, resulting in documents filed by the parties in this lawsuit being sent to those class members and their letters being made public. Class Counsel filed an *ex parte* motion to correct the record and strike accounts of personal experiences that included personal details and personal identifying information that should not have been disclosed in this manner. Dkt. 426. The Court granted this motion and struck each of the "appearances" that had been erroneously entered based on

Initials of Preparer

: 

PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

these letters, after assessing each one and determining that it could not be plausibly considered an objection to the settlement. Dkt. 436.

In order to prevent future inadvertent disclosure of personal information, the Court instituted additional measures to review any new letters received in this lawsuit prior to filing on the docket. Since March 2020, the Court has reviewed each new letter mailed to the Court *in camera* and if it could plausibly be construed as an objection to the settlement, ordered it filed on the docket. Other letters sharing detailed personal information, seeking to be included in the claims process, or raising concerns related to CRDF recordkeeping relevant only to specific class members were ordered forwarded to Class Counsel to address with JND's assistance. The Central District issued General Order 20-05 regarding COVID-19 shortly after the Court adopted this policy, and many of the Court's administrative staff transitioned to remote work. As a result, the Court learned only upon reviewing briefing in advance of the final approval hearing that certain letters had not been properly filed on the docket as objections, although they had previously been reviewed and sorted by the Court. The Court has since corrected this internal administrative error. *See* Dkt. 459; Dkt. 460; Dkt. 461; *but see* Dkt. 462 (expressing a desire to be notified of future proceedings, which the Court entered as a notice of appearance rather than an objection). All other letters, which cannot reasonably be construed as objections to the settlement and generally seek inclusion in the class or to share personal experiences, have now been delivered to Class Counsel.[2]

### iii. *Late Claims*

Plaintiff state that there have been an additional 129 late claims filed since the June 4 cutoff date in the settlement agreement, and request that these late claims be approved by the Court. Dkt. 449 at 4. Section II ¶ 29 of the revised Settlement Agreement gives the Court the ability approve any late claims that are "filed prior to the Final Approval Hearing." Dkt. 395-1. The Court finds it appropriate given the potential challenges these particular class members (many of whom are currently incarcerated) may

---

[2] The Court also instructs the parties that pursuant to its equitable powers, the Court finds that any individuals who would otherwise have qualified for the settlement recovery but for the delay in notice or approval resulting from the administrative issues described in this subsection should be deemed members of the class regardless of when their claim is ultimately processed, and are therefore entitled to their *pro rata* share of the settlement fund.

Initials of Preparer                    :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|----------|------------------------|------|-----------|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

have faced in receiving timely notice and submitting claims, to exercise this power. The Court approves any additional claims filed prior to the final approval hearing, which was held on July 20, 2020.

## V.   Conclusion

The Court GRANTS final approval to the settlement agreement proposed by the parties. It also adopts by reference the findings and instructions contained in the following sections of the Proposed Order submitted by Plaintiffs: Section IV, Section VI, Section XII, Section XIII, and Section XIV, except to the extent they directly conflict with the terms of this Order. The parties and JND are instructed to proceed with the implementation of the Settlement Agreement as written.

## Motion for Attorney's Fees and Costs

### I.   Legal Standard

In awarding attorney's fees under Federal Rule of Civil Procedure 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d at 941. In the Ninth Circuit, there are two primary methods to calculate attorney's fees: the lodestar method and the percentage of the fund approach. *Id.* at 941–42. Under the percentage of the fund approach, the attorney's fees equal some percentage of the common settlement fund; in the Ninth Circuit, the benchmark percentage is 25%. *Id.* at 942. The lodestar method requires "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* at 941.

A district court has discretion in calculating fees, or approving a fee request, but it "abuses that discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward." *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 992 (9th Cir. 2010) (internal quotation marks omitted). One way that a court may demonstrate that its use of a particular method or the amount awarded is reasonable is by conducting a cross-check using the other method. For example, a crosscheck using the lodestar method "can 'confirm that a percentage of recovery amount does not award counsel

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

an exorbitant hourly rate.'" *In re Bluetooth,* 654 F.3d at 945 (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 n. 40 (3d Cir. 1995)).

Because the relationship between class counsel and class members turns adversarial at the fee-setting stage, district courts assume a fiduciary role that requires close scrutiny of class counsel's requests for fees and expenses from the common fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) ("As a fiduciary for the class, the district court must 'act with a jealous regard to the rights of those who are interested in the fund in determining what a proper fee award is.'" (internal quotation marks omitted) (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994))); Newberg on Class Actions § 13:40 (5th ed. 2012).

## II.   Analysis

As is customary in large-figure class action settlements, the Court acts within its discretion to first analyze the fee request under the percentage of the fund approach, and then cross-check this analysis with reference to the provided lodestar figures submitted by Class Counsel, to ensure the award is reasonable. *See Acosta v. Frito-Lay, Inc.*, 2018 WL 2088278, at *11-12 (N.D. Cal. May 4, 2018); *Smith v. Am. Greetings Corp.*, 2016 WL 362395, at *8-9 (N.D. Cal. Jan. 29, 2016).

### a.   *Percentage of the Fund*

Plaintiffs' motion for attorney's fees seeks 33.33% of the total settlement fund, for a total fee award of $17,490,000.00 to be paid to Class Counsel. Dkt. 409. In the Ninth Circuit, the "benchmark" figure for fee award analysis under the percentage of a common fund approach is 25%. *See In re Bluetooth*, 654 F.3d at 942; *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). However, Class Counsel argues that "nearly all common fund awards range around 30%. Dkt. 409 at 8-9. The Court disagrees and finds that the benchmark for percentage of a common fund in the Ninth Circuit remains 25%. *See In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018) (noting that a disputed fee award fell below the "25% benchmark typically used in our circuit"); *In re Hyundai*, 926 F.3d at 570 (same);

Initials of Preparer

PMC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|----------|------------------------|------|-----------|

| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* |
|-------|---------------------------------------------------------------|

The Ninth Circuit has indicated various factors relevant for consideration of an upwards percentage fee adjustment which include (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis and its duration. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *see also In re Optical Disk Drive Products Antitrust Litigation*, 2020 WL 2507359, at *6 (9th Cir. May 15, 2020).

The Court will generally apply these factors in a manner which it believes effectively addresses the relevant circumstances in this class settlement and litigation. The Court will not address Class Counsel's skill and experience (which it finds are more properly analyzed in justifying the lodestar cross-check by establishing an appropriate rate for services rendered) or the reaction of the class (which the Court finds relevant only to the final approval decision analyzed above). The Court agrees with Class Counsel that the "complexity of the litigation" rather than its "riskiness" for Class Counsel better describes that relevant factor. *See* Dkt. 409 at 3. Because the Ninth Circuit has repeatedly emphasized that these factors are not "exhaustive," the Court also acts within its discretion to consider other factors more unique to this lawsuit. *See In re Optical Disk Drive*, 959 F.3d at 930 ("Ultimately, district courts must ensure their fee awards are supported by findings that take into account all of the circumstances of the case") (quotations omitted).

#### i. *Exceptional Result Achieved*

Class Counsel argues that the result embodied in this settlement is "exceptional," and strongly justifies an upwards adjustment to the 25% benchmark. Dkt. 409 at 9-10. In support of this argument, Class Counsel provides in its supporting declaration a survey of strip search settlements exceeding $25 million, and asserts that the $53 million figure in this settlement is an "exceptional" result. *See* Dkt. 409 at 9; Dkt. 410 at 28-36 (presenting and analyzing similar strip search settlements). Class Counsel also argues that the average claim size (estimated at $1500 at the time the motion was filed, although revised to $1000 by the time of the final approval hearing due to a high claims rate) also shows that this was an exceptional result for class members. Dkt. 409 at 10.

Initials of Preparer _____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

 

The Court agrees that this settlement represents a good result for class members, as evidenced by its prior Order granting final approval of the settlement. However, it does not find that it constitutes such an exceptional result as to justify an upwards adjustment from the 25% benchmark. Class Counsel emphasizes the dollar value of the settlement ($53 million) in comparison with other strip search settlements. But many of these settlements were created more than a decade ago, and as a result, the inflation-adjusted values of those settlements are substantially different from the value of the $53 million in 2020. The Court also notes that Class Counsel is generally conscious of inflation, and in justifying its lodestar figure utilizes a 3% annual adjustment to compare the requested hourly fee rates to historical hourly fee rates granted in similar cases. Dkt. 410 at 76-77. Applying the same 3% adjustment rate to the comparison settlements presented by Class Counsel, the Court reaches the following approximate inflation-adjusted figures:

- *Williams v. Block*, (2001) $47,344,000 in 2020 dollars
- *Tyson v. City of New York* (2001) $87,675,000 in 2020 dollars
- *McBean v. City of New York* (2006) $49,915,000 in 2020 dollars
- *Craft v. County of San Bernardino* (2008) $36,356,000 in 2020 dollars
- *Young v. County of Cook* (2010) $73,915,000 in 2020 dollars

Having adjusted those settlement figures for inflation, the Court finds that the $53 million settlement here is a good result, but not such an exceptional result as to justify an upwards adjustment to the 25% benchmark.

The Court does not find that the average size of class member recovery demonstrates that this settlement constitutes an exceptional result relative to similar settlements, because average recovery figures are often subject to circumstances outside the control of Class Counsel, and the claims rates for a settlement can vary dramatically. For example, at the time Class Counsel filed this motion, they asserted that the average claim was likely to be $1500, but as a result of a high claims rate by class members, the average is now estimated to be closer to $1000 per class member. *Compare* Dkt. 409 at 10 *with* Dkt. 449 at 15. This illustrates the difficulties that arise from attempting to compare these large-dollar settlements with large numbers of class members and unpredictable claims rates based on average claim recovery or

| | : | |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

total class members. The Court does not find that the average size of the class member recovery here favors an upwards adjustment to the 25% benchmark.

### ii.   *Complexity of the Litigation*

The Court does not believe that this factor favors an upwards adjustment to the lodestar. Class Counsel are specialists in this precise intersection of civil rights law and class action litigation, specifically class action prisoner litigation, and many of the complexities of these lawsuits are issues they are highly familiar with and have repeatedly litigated. *See generally* Dkt. 410 at 5-9. Class Counsel cite *Monell* issues as adding substantial complexity to this case, but the dispositive issue that this settlement ultimately arose from was what LASD indisputably acknowledged was a "policy or procedure" of LASD— in this Court's summary judgment Order for Plaintiffs, *Monell* is not even analyzed. *See generally* Dkt. 361. The complexity of the ultimately unsuccessful claims Class Counsel pursued regarding other allegations of constitutional violations (based on verbal abuse, outside viewers present during searches, and cleanliness) is not relevant to analysis of this factor. *See Amador v. Baca,* 299 F.R.D. 618, 626-27 (C.D. Cal. 2014); *Amador v. Baca,* 2014 WL 10044904, at *7 (C.D. Cal. Dec. 18, 2014) (declining to reconsider the class certification analysis relevant to abuse, privacy, and sanitation subclasses).

The Court recognizes that intervening Supreme Court precedent altered the legal standard regarding the presumed constitutionality of body cavity searches in this context. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318 (2012). But it also notes that prior Ninth Circuit precedent was consistent with the outcome of *Florence*. *See Bull v. City & County of San Francisco,* 595 F.3d 964, 975 (9th Cir. 2010). Additionally, while *Florence* clearly held that use of visual body cavity ("VC") searches of inmates entering the general population was permissible without reasonable suspicion, it also acknowledged that "substantial" evidence could show that in practice, such policies may constitute an "unnecessary or unjustified" response to jail security concerns. *Florence*, 566 U.S. at 323, 334; *see also* Dkt. 361 at 7-8 (discussing the standard articulated in *Bull* and *Florence*). Class Counsel's efforts in discovery and in arguing for liability were therefore straightforward, although labor-intensive, but not especially complex. Their core argument was that the manner in which LASD's policy was applied was unreasonable given the circumstances and other feasible options available. *See generally* Dkt. 346 (Plaintiffs' motion for summary judgment). The Court granted summary judgment to

Initials of Preparer

      :

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

Plaintiffs with regard to liability based on a finding that clearly feasible measures to protect class members' privacy during VBC searches were available, that LASD was aware of these measures, and that LASD had no reasonable justification for failing to do so. *See* Dkt. 361.

The Court also finds that some of the asserted complexity of this case was the result of issues Class Counsel could have avoided. The decision to decertify the class made by the Court in July 2016 was made upon discovering while reviewing summary judgment briefing that significant changes had been made to the VBC search procedure during the then-ongoing class period, and that injunctive relief would no longer be appropriate. *See* Dkt. 312 at 5-6. In the briefing on summary judgment, Class Counsel essentially acknowledged that this relief was moot. *Id.* at 4 n.4 (summarizing arguments raised in Plaintiff's supplemental briefing). While the Court did ultimately recertify the class, the fact that these policy changes were not brought to the Court's attention until summary judgment briefing began in December 2015 leads the Court to find that complexities cited by Class Counsel arising from the decertification do not favor a finding that the fee award requires an upwards adjustment. *See* Dkt. 409 at 6 n.3 (arguing that the Court's decertification posed additional challenges for Class Counsel). Similarly, a recurring theme at certain points in this litigation has been Class Counsel's enthusiasm for "attempt[ing[ to re-litigate matters already decided in prior orders." *See* Dkt. 312 n.3 (raising the possibility of sanctions for re-arguing issues regarding commonality of subclasses that had already been decided). Additional effort and motion practice linked to these attempts does not demonstrate complexity supporting an upwards adjustment to the 25% benchmark.

As previously discussed, the contours of the legal analysis here were clearly defined by Ninth Circuit and Supreme Court precedent, and exclusively related to an area where Class Counsel specialize heavily. Class Counsel's litigation efforts did not require comprehensive analysis of disparate state law on specific discrete issues, or a lengthy appeals process prior to settlement. *See In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *13 (N.D. Cal. Aug. 17, 2018) (finding substantial complexity supporting an upwards adjustment to the benchmark when class counsel addressed technical cybersecurity issues while asserting claims under the law of fifty different states); *In re High-Tech Employee Antitrust Litig.*, 2015 WL 5158730, at *10 (N.D. Cal. Sept. 2, 2015) (complexity favored upwards adjustment where class counsel was repeatedly required to defend the action on interlocutory and mandamus appeal). The Court finds that this factor does not support an upwards adjustment to the 25% benchmark.

|  | : |  |
|---|---|---|
| Initials of Preparer | | |
| | PMC | |

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

### iii.  *Burden of Litigating on Class Counsel*

While the litigation of this case lasted approximately ten years, the Court notes that it has not been actively litigated across this entire time period. First, the Court stayed the action for approximately six months pending the Supreme Court's decision in *Florence*. *See* Dkt. 145; Dkt. 152. Following the June 2017 order granting Plaintiffs' motion for summary judgment, the Court moved the case to the inactive calendar pending negotiation of a settlement. Dkt. 364. The case remained on the inactive calendar for approximately 2 years before the parties notified the Court of a tentative settlement agreement. Dkt. 384. The Court acknowledges that Class Counsel expended significant time and energy during this period negotiating the settlement. *See* Dkt. 410 at 64-66 (describing Class Counsel's mediation and settlement efforts). However, it finds that following a grant of summary judgment in a § 1983 case, where attorney's fees are granted as of right to a prevailing plaintiff, 42 U.S.C. § 1988, the risk to Class Counsel based on the contingency nature of its representation of the class was substantially reduced beyond that point. Accordingly, it finds that the relevant period of active litigation for purposes of analyzing the "burden" on Class Counsel is closer to seven years than to ten.

Class Counsel indisputably still experienced a significant burden in the course of litigating this case on a contingency fee basis for a substantial period of time. Class Counsel documents almost 9000 hours of billed time by attorneys, paralegals, and law clerks in the course of this litigation. *See* Dkt. 410 at 84-85 (consolidating billing by Class Counsel and staff). Class Counsel also submits itemized costs of approximately $369,000 incurred during the course of litigation, and not recoverable until settlement. *Id.* at 111-12; Dkt. 410-5 (additional records of costs incurred). Both the costs advanced in this litigation and the substantial investment of hourly work incurred by Class Counsel favor an upwards adjustment to the lodestar.

### iv.  *Benefits Generated Beyond Settlement Fund*

The Court finds that this factor favors Class Counsel's request for an upwards adjustment. After this lawsuit was filed in 2010, LASD made substantial changes to the search policies employed at CRDF after the lawsuit was filed, first in 2011 and then in 2013. LASD ceased to employ strip searches for inmates willing to be scanned by body scanners in 2015. Dkt. 410 at 66-68 (describing LASD policy changes and emails produced in discovery referencing this lawsuit in adopting these changes). These

Initials of Preparer

:

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

changes ultimately mooted the need for continuing injunctive relief in this lawsuit. *See* Dkt. 312 at 5. The settlement agreement does not make any provision for continuing injunctive relief. *See generally* Dkt. 395-1. On this basis the Court finds that Class Counsel has clearly demonstrated that their efforts have generated benefits for the class beyond those contained in the settlement fund.

v.   *Market Rate in this Area of the Law*

The Court determines that the appropriate comparison for assessing the "market rate" in this area of law is settlements of similar size to the $53 million settlement amount here. At slightly more than $50 million, the settlement agreement is at the lower edge of what courts have considered a "megafund," which the Ninth Circuit has not yet clearly defined. *See In re Optical Disk Drive*, 959 F.3d at 932-33 (noting that the Ninth circuit has not "identified a bright-line definition for megafund" but that a $124.5 million fund unquestionably is one); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161 (N.D. Cal. June 5, 2017) (defining megafunds as settlements exceeding $50 million); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (same); *but see* Newberg on Class Actions § 15:81 (5th ed. 2012) (noting that "[m]ost courts define mega-funds as those in excess of $100 million").

Regardless of whether the settlement here should expressly be characterized as a "megafund," the Court follows other district courts in the Ninth Circuit in finding that a $53 million figure is sufficiently large to weigh in favor of a downwards adjustment to the 25% benchmark. *See Rodman v. Safeway Inc.*, 2018 WL 4030558, at *4 (N.D. Cal. Aug. 23, 2018) (citing Theodore Eisenberg, Geoffrey Miller, & Roy Germano, Attorneys' Fees in Class Actions: 2009-2013, 92 N.Y.U. L. Rev. 937 (2017) in support of the conclusion that a $42 million settlement falls in the second-highest decile of class action settlements, and favors a "slight downward adjustment" from the 25% benchmark); *Aichele v. City of Los Angeles*, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) (finding that in settlements between $50-$100 million, "fees more commonly will be under the 25% benchmark"); *Craft*, 624 F. Supp. 2d at 1127 (finding that settlements above $50 million are often adjusted below 25%); *cf. In re Anthem*, 2018 WL 3960068, at *11-16 (N.D. Cal. Aug. 17, 2018) (finding even when multiple factors strongly supported an upwards adjustment to the 25% benchmark, a slight increase to 27% in a megafund case was appropriate). The Court finds that the "market rate" in class action settlements of this size in the Ninth Circuit favors a downwards adjustment from the 25% benchmark.

Initials of Preparer   _____ : _____

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|---|---|---|---|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

      vi.  *Conclusion*

     Having analyzed and weighed each of the factors discussed above, the Court finds that a fee award at the 25% benchmark is appropriate in these circumstances. Accordingly, given the $53 million settlement fund, Class Counsel is entitled to a fee award of $13,250,000.

    **b. Lodestar Cross-check**

     To confirm an award's reasonableness through a lodestar cross-check, a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckhart*, 461 U.S. 424, 33 (1983). "[T]he determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838, (2011) (quoting *Hensley*, 461 U.S. at 437). Rather, the Court seeks to "do rough justice, not to achieve auditing perfection." *Id.* at 838.

     The Court has reviewed the extensive documentation provided by Class Counsel in support of their hours billed, and the hourly rates requested. *See* Dkt. 410 at 81-113. The Court finds that on the whole, the hours billed and rates requested are generally reasonable, but it makes certain adjustments to these figures discussed below.

     First, the Court finds that the lodestar figure submitted by Class Counsel is somewhat inflated by the fact Ms. Battles (one of the lead attorneys in the case for Kaye McLane Bednarski and Litt LLP, and a 2008 law school graduate) seeks an hourly rate of $700/hr for the approximately 3100 hours she incurred in litigating this action. *Id.* at 84. The Court finds that Class Counsel has adequately supported her billing rate given her <u>current</u> level of experience. *See id.* at 99-101. However, based on Ms. Battles' year of graduation from law school, a very substantial fraction of her hourly billings were incurred when she would not have been qualified to bill at a rate remotely close to $700/hr. *See generally* Dkt. 410-3 at 124-271 (substantial fraction Ms. Battles' work done in 2010, 2011, 2012, and 2013). Because her hourly rate for the first couple of years of the litigation would likely have been closer to one-half to two-thirds the rate she now requests, the Court finds that applying a $700/hr rate across all of her billed hours results in an inflated figure for her billings.

                                      :

Initials of Preparer                       PMC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|----------|------------------------|------|-----------|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

Second, the Court notes that the hourly rate requested by Mr. Litt of $1200/hr is higher than the majority of even the "adjusted" rates he presents (which contain a 3% inflation adjustment to prior year fee awards he has received). *Id.* at 89. While upwards adjustments to hourly rates are common in legal practice, none of the submitted fee awards for civil rights lodestars exceed $1150/hr (even for 2018 and 2019 fee awards to Mr. Litt). *Id.* The Court finds that Mr. Litt's requested rate of $1200/hr is not entirely supported by the evidence before the Court.

Finally, the Court notes that Class Counsel seeks $360/hr for work by a senior paralegal, Ms. White, who billed approximately 10% of the total hours in this case. *Id.* at 84. While Class Counsel presents adjusted fee rates based on prior awards to senior paralegals is past years that in some cases are close to $360/hr (and in one case exceed it), most are significantly below that rate. The Court finds that this hourly rate is also not adequately supported by Class Counsel's submitted evidence and the Court's own experience with fee awards to paralegals.

The Court finds that the reasons discussed above justify a moderate "haircut" of 10% to the total hourly billings by Mr. Litt, Ms. Battles, and Ms. White. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (in lodestar calculations, a district court is permitted to impose a 10% "haircut" even without a specific explanation for the reduction). The combined billings of these three individuals, at $4,306,230, are therefore reduced by $430,623. *See* Dkt. 450 at 5-6 (final hourly billings submitted in connection with final approval hearing). After subtracting this sum from the final lodestar provided by Class Counsel of $5,709,924, the Court arrives at a final revised lodestar figure of $5,279,301. *See id.* at 85. Given the Court's determination that a fee award of $13,250,000 is appropriate via the percentage of the fund approach, the Court finds that this award is equivalent to granting a lodestar multiplier of approximately 2.5x the lodestar. The Court finds this to be wholly reasonable, particularly in light of the data provided by Class Counsel's expert, William Rubenstein. *See* Dkt. 413 at 2, 23 (finding an average lodestar multiplier of 2.2 in cases involving a common fund similar in size to this settlement). It is also squarely in the top-half of lodestar multipliers given in large-dollar class action settlements such as this one. *See Vizcaino*, 290 F.3d at 1051 n.6 (finding that in the Ninth Circuit, multipliers generally range from one to four).

The Court finds that a cross-check of the lodestar multiplier against the percentage of the fund award supports the Court's finding that a 25% fee award is reasonable.

Initials of Preparer                                    :

                                                    PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-01649-SVW-JEM | Date | 8/11/2020 |
|----------|----------------------|------|-----------|
| Title | *Mary Amador, et al., v. Sheriff Leroy D. Baca, etc., et al.,* | | |

### c. Costs

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted). To support an expense award, Class Counsel should file an itemized list of their expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Smith v. Am. Greetings Corp.*, 2016 WL 362395, at *9 (N.D. Cal. Jan. 29, 2016) (citations omitted).

Class Counsel has submitted evidence adequately documented litigation costs of $379,839.79 incurred during conduct of this litigation. *See* Dkt. 410 at 111-12; Dkt. 410-5. These expenses are properly categorized and reasonable in light of the course of litigation overall, with the majority of expenses incurred hiring experts to assist in the litigation, and the rest of the costs consistent with standard litigation practice in this area. The Court awards $379,839.79 in costs to Class Counsel.

### III. Conclusion

The Court GRANTS IN PART Class Counsel's motion for attorney's fees, awarding Class Counsel $13,250,000 in attorney's fees. The Court also GRANTS Class Counsel 379,839.79 in costs.

Initials of Preparer :

PMC